## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

---------------------------------------------------------- x

In re

AIO US, INC., *et al.*,

           Debtors.[1]

---------------------------------------------------------- x

:
:
:
:
:
:
:
:
:
:

Chapter 11

Case No. 24–11836 (CTG)

(Jointly Administered)

Re: Docket No. 9, 30 & 58

## SECOND INTERIM ORDER PURSUANT TO
## 11 U.S.C. §§ 105(a), 345, 363, 364, 503, AND 541
## AND FED. R. BANKR. P. 6003 AND 6004 (I) AUTHORIZING DEBTORS TO
## (A) CONTINUE EXISTING CASH MANAGEMENT SYSTEMS, BANK ACCOUNTS,
## AND BUSINESS FORMS, (B) IMPLEMENT ORDINARY COURSE CHANGES
## TO CASH MANAGEMENT SYSTEM, AND (C) HONOR CERTAIN RELATED
## PREPETITION OBLIGATIONS, (II) AUTHORIZING CONTINUATION OF
## INTERCOMPANY TRANSACTIONS AND GRANTING ADMINISTRATIVE
## EXPENSE STATUS FOR POSTPETITION INTERCOMPANY CLAIMS, AND
## (III) WAIVING CERTAIN REQUIREMENTS WITH RESPECT TO THE
## DEBTORS' ACCOUNTS, AND (IV) GRANTING RELATED RELIEF

Upon the motion, dated August 12, 2024 [Docket No. 9] (the "**Motion**")[2] of AIO

US, Inc. and its debtor affiliates, as debtors and debtors in possession (collectively, the "**Debtors**")

in the above-captioned chapter 11 cases, pursuant to sections 105(a), 345, 363, 364, 503, and 541

of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the

Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"), for entry of interim and final

orders (i) authorizing, but not directing, the Debtors to (a) continue using their existing Cash

Management System, including through the continued maintenance of their Bank Accounts at the

---

[1]    The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number are: AIO US, Inc. (9872), Avon Products, Inc. (4597), MI Holdings, Inc. (6450), and Avon Capital Corporation (2219). The Debtors' mailing and service address is 4 International Drive Suite 110, Rye Brook, New York 10573.

[2]    Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to such terms in the Motion.

Banks and existing Business Forms,  (b) make ordinary course changes to the Cash Management System as necessary, such as opening or closing their Bank Accounts, as set forth herein, and (c) honor and pay all prepetition and postpetition Bank Fees payable by the Debtors, (ii) authorizing, but not directing, the Debtors to continue to perform under and honor Intercompany Transactions, whether relating to the prepetition or postpetition period, in the ordinary course of business, and provide administrative expense priority for claims arising from Postpetition Intercompany Transactions among Debtors and among the Debtors and Non-Debtor Affiliates, (iii) granting the Debtors a waiver of certain bank account and related requirements of the U.S. Trustee, and (iv) granting related relief, all as more fully set forth in the Motion; and the Court having jurisdiction to consider the Motion and the relief requested therein pursuant to 28 U.S.C. §§ 157(a)–(b) and § 1334, and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012; and consideration of the Motion and the requested relief being a core proceeding pursuant to 28 U.S.C. § 157(b); and venue being proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and due and proper notice of the Motion having been provided to the Notice Parties; and such notice having been adequate and appropriate under the circumstances; and it appearing that no other or further notice need be provided; and the Court having reviewed the Motion; and the Court having held a hearing to consider the relief requested in the Motion on an interim basis (the "**Hearing**"); and upon the First Day Declaration and the record of the Hearing; and the Court having previously entered an order on August 14, 2024, granting the relief requested in the Motion on an interim basis [Docket No. 58] (the "**First Interim Order**" and, together with this "**Second Interim Order**," the "**Interim Orders**"); and the Debtors having filed this Second Interim Order under certification of counsel; and the Court having determined the legal and factual bases set forth in the Motion

2

establish just cause for the relief granted herein; and it appearing the relief requested in the Motion is in the best interests of the Debtors, their estates, creditors, and all parties in interest; and upon all of the proceedings had before the Court; and after due deliberation and sufficient cause appearing therefor,

## IT IS HEREBY ORDERED THAT:

1.      The Motion is granted on an interim basis to the extent set forth herein.

2.      Subject to the terms set forth herein, the Debtors are authorized, but not directed, pursuant to sections 363(c) and 105(a) of the Bankruptcy Code, to (i) continue to manage their cash pursuant to the Cash Management System maintained prior to the Petition Date, (ii) collect, concentrate, and disburse cash in accordance with the Cash Management System, and (iii) make ordinary course changes to their Cash Management System.

3.      The Debtors are further authorized, on the terms set forth in this Second Interim Order, but not directed, to (i) designate, maintain, and continue to use their existing Bank Accounts, in the names and with the account numbers existing immediately before the Petition Date, (ii) deposit funds in, and withdraw funds from, such Bank Accounts by all usual means, including checks, wire transfers, automated clearing house transfers, and other debits, (iii) pay any Bank Fees or other charges associated with the Bank Accounts, whether arising before or after the Petition Date; *provided that* no Non-Debtor Affiliates shall have any liability for any Bank Fees or other charges associated with the Bank Accounts, (iv) otherwise perform their obligations under the documents governing the Bank Accounts, and (v) treat their prepetition Bank Accounts for all purposes as debtor-in-possession accounts.

4.      Notwithstanding any other provision in this Second Interim Order, should a Bank honor a prepetition check or other item drawn on any account that is the subject of this Second Interim Order (i) at the direction of the Debtors to honor such prepetition check or item or

3

(ii) in good faith belief that the Court has authorized such prepetition check or item to be honored, the Bank shall not be deemed to be nor shall be liable to the Debtors or their estates or otherwise be in violation of this Second Interim Order.  Without limiting the foregoing, the Banks may rely on the representations of the Debtors with respect to whether any check or other payment order drawn or issued by a Debtor prior to the Petition Date should be honored pursuant to this or any other order of the Court and shall not have any liability to any party for relying on such representations by a Debtor as provided for herein.

5.      Each of the Debtors' Banks is authorized to debit the Debtors' Bank Accounts in the ordinary course of business without the need for further order of the Court for: (i) all checks drawn on the Debtors' accounts which are cashed at such Bank's counters or exchanged for cashier's checks by the payees thereof prior to the Petition Date, (ii) all checks or other items deposited in one of Debtors' accounts with such Bank prior to the Petition Date which have been dishonored or returned unpaid for any reason, together with any fees and costs in connection therewith, to the same extent the Debtor was responsible for such items prior to the Petition Date, and (iii) all undisputed prepetition amounts outstanding as of the date hereof, if any, owed to any Bank as service charges for the maintenance of the Cash Management System. Further, the Banks may rely, without a duty of inquiry, upon the failure of the Debtors to issue a stop payment order with respect to any item, whether such item is issued prepetition or postpetition, as a direction by the Debtors that such item will be paid.  To the extent that the Debtors have represented to any of the Banks that a check, draft, wire, or ACH transfer should be dishonored, the Banks are hereby authorized to comply with such representations, either through utilizing the Banks' stop-payment system, or through voiding the check, draft, wire, or ACH transfer using the relevant Banks' internal procedures.

6.      Those certain existing deposit agreements between the Debtors and their existing depository and disbursement Banks shall continue to govern the postpetition cash management relationship between the Debtors and the Banks, and all of the provisions of such agreements, including, without limitation, the termination and fee provisions, shall remain in full force and effect.

7.      The Debtors are authorized to open any new Bank Accounts as they may deem necessary and appropriate in the ordinary course of business, consistent with past practice, subject to the terms of this Second Interim Order; *provided that*, any new Bank Account opened by the Debtors shall be at a bank that has executed a Uniform Depository Agreement with the Office of the United States Trustee for the District of Delaware.  Nothing contained herein shall prevent the Debtors from closing any of their Bank Accounts in the ordinary course of business and in accordance with prepetition practices as they may deem necessary and appropriate.  If the Debtors open or close any Bank Account, such opening or closing shall be timely reflected on the Debtors' next monthly operating report and, the Debtors shall provide notice within fifteen (15) days to the U.S. Trustee and the official committee appointed in these chapter 11 cases (the "**Committee**").  The Banks are authorized to honor the Debtors' requests to open and close such Bank Accounts.

8.      As soon as possible, the Debtors shall (i) contact each Bank, (ii) provide the Bank with each of the Debtors' employer identification numbers, and (iii) identify each of their Bank Accounts held at such Bank as being held by a "Debtor in Possession" and provide the bankruptcy case number.

9.      The Debtors are authorized, but not directed, to continue the Corporate Credit Card Program in the ordinary course, to perform their obligations under the Corporate

Credit Card Program, and to pay outstanding, ordinary course prepetition expenses arising thereunder in an aggregate amount not to exceed $80,000; *provided that* no Non-Debtor Affiliates shall have any liability for any obligations incurred by the Debtors under the Corporate Credit Card Program.

10.     The Debtors are authorized pursuant to sections 363(c) and 364(a) of the Bankruptcy Code to continue to perform under and honor Intercompany Transactions, whether arising under or relating to the prepetition or postpetition period, in the ordinary course of business and pursuant to the terms of the applicable Shared Services Agreements, so long as such Intercompany Transactions are materially consistent with the Debtors' operation of their business in the ordinary course during the prepetition period; *provided that* no settlements, setoffs, or payments made after the Petition Date on account of prepetition Intercompany Transactions shall affect the balances of Intercompany Claims on account of such Intercompany Transactions as of the Petition Date.  Notwithstanding the foregoing, the Debtors shall not make any intercompany loans to any Non-Debtor Affiliate absent further order of the Court.  Intercompany transfers from the Debtors to or for the benefit of Non-Debtor Affiliates prior to the entry of the Final Order on this Motion shall not exceed $5,000,000 in the aggregate; *provided that* the Debtors shall provide two (2) business days prior written notice (email to suffice) to the advisors for each of the Committee and Natura before paying any individual Intercompany Transaction to or for the benefit of any Non-Debtor Affiliates in excess of $3,000,000.

11.     All valid Intercompany Claims against one Debtor held by another Debtor arising after the Petition Date as a result of Intercompany Transactions shall be accorded administrative expense priority status in accordance with section 503(b) and 507(a) of the

RLF1 31483055V.1

Bankruptcy Code, junior in all respects to the administrative expense claims granted pursuant to the DIP Order.[3]

12.     Notwithstanding anything herein to the contrary, no Debtor shall, nor shall any Debtor permit any non-Debtor subsidiary thereof to, contribute to, deposit in, withdraw from, hypothecate, or otherwise transfer cash, cash equivalents, or other assets to any overdraft, treasury, depository, cash pooling, or other cash management accounts of, or shared accounts with, any Non-Debtor Affiliate.

13.     The Debtors shall provide weekly schedules to the advisors for each of Natura and the Committee of all payments made or received on account of Intercompany Transactions by the Debtors pursuant to the Interim Orders and commencing within 30 days of entry of the First Interim Order.

14.     The Debtors shall maintain accurate and detailed records of all transfers within the Cash Management System, including Intercompany Transactions, so that all transfers and transactions shall be adequately and promptly documented in, and readily ascertainable from, their books and records, with prepetition and postpetition transactions distinguished.  Upon reasonable request, the Debtors shall provide the professionals for the Committee and Natura with copies of the records referenced in this paragraph 14.

15.     The Debtors are authorized to use their Business Forms without alteration and without the designation "Debtor in Possession" imprinted upon them; *provided that,* once the Debtors' existing check stock has been used, the Debtors shall, when reordering checks, include the designation "Debtor in Possession" and the jointly administered bankruptcy case number on

---

[3]   The "**DIP Order**" means any order of the Court approving any postpetition debtor-in-possession financing facility and authorizing the use of cash collateral.

such checks; *provided, further, that*, with respect to checks which the Debtors or their agents print themselves, the Debtors shall, when printing checks, include the "Debtor in Possession" legend and the jointly administered bankruptcy case number on such checks.

16.     The Debtors are authorized, but not directed, to issue new postpetition checks, or effect new electronic funds or automated clearing house transfers, on account of Bank Fees, Corporate Expenses, and Postpetition Intercompany Transactions as set forth herein, and to replace any prepetition checks or electronic fund or automated clearing house transfer requests that may be lost or dishonored or rejected as a result of the commencement of the Debtors' chapter 11 cases with respect to any prepetition amounts that are authorized to be paid pursuant to the Interim Orders.

17.     Notwithstanding the Debtors' use of a consolidated cash management system, the Debtors shall calculate their quarterly fees under 28 U.S.C. § 1930(a)(6) based on the disbursements of each Debtor regardless of who pays those disbursements.

18.     The UST Operating Guidelines requiring the Debtors to establish separate bank accounts for cash collateral and/or tax payments are hereby waived except as otherwise required by any applicable agreements between the Debtors and the Banks.

19.     Nothing contained in the Motion or the Interim Orders, nor any payment made pursuant to the authority granted by the Interim Orders, is intended to be or shall be construed as (a) an implication or admission as to the validity, characterization, or amount of any claim of or against the Debtors, (b) a waiver of the Debtors', the Committee's, or any appropriate party in interest's rights to dispute the amount of, basis for, characterization of, or validity of any claim of or against the Debtors, (c) a waiver of any claims or causes of actions of any third-parties, the Non-Debtor affiliates, or the Debtors or their estates, if any, with respect to prepetition or

postpetition Intercompany Transactions or allocation among Debtors or among Debtors and Non-Debtor Affiliates of expenses of shared services or costs, (d) an agreement or obligation to pay any claims, (e) a waiver of any claims or causes of action which may exist against any creditor or interest holder, (f) a waiver of the obligation of any party in interest to file a proof of claim, (g) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code, or (h) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

20.     Notwithstanding entry of this Second Interim Order, nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

21.     Under the circumstances of these chapter 11 cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a) and Local Bankruptcy Rule 9013-1(m).

22.     Notwithstanding Bankruptcy Rule 6004(h), this Second Interim Order shall be immediately effective and enforceable upon its entry.

23.     A hearing to consider entry of an order granting the relief requested in the Motion on a final basis shall be held on **September 26, 2024 at 2:00 p.m. (Eastern Time)** and any objections or responses to the Motion shall be in writing, filed with the Court, and served by no later than **4:00 p.m. (Eastern Time) on September 6, 2024** (the "**Objection Deadline**") (except as the Objection Deadline has been extended for certain parties by agreement of the Debtors).

24.     The Debtors are authorized to take all actions necessary or appropriate to effectuate the relief granted in this Second Interim Order.

RLF1 31483055V.1

25.     The Court shall retain jurisdiction to hear and determine all matters arising from or related to the implementation, interpretation, or enforcement of this Second Interim Order.

**Dated: September 17th, 2024**
**Wilmington, Delaware**

**CRAIG T. GOLDBLATT**
**UNITED STATES BANKRUPTCY JUDGE**

RLF1 31483055V.1