## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

```
------------------------------------------------------- x
In re                                   :  Chapter 11
                                        :
AIO US, INC., et al.,                   :  Case No. 24–11836 (CTG)
                                        :
            Debtors.¹                    :  (Jointly Administered)
------------------------------------------------------- x
```

---

**THIS PLAN HAS NOT YET BEEN APPROVED BY THE BANKRUPTCY COURT. THIS IS NOT AN OFFER OR SOLICITATION OF AN OFFER OR ANY OTHER SOLICITATION WITH RESPECT TO ANY SECURITIES OR A SOLICITATION OF ACCEPTANCES OF A CHAPTER 11 PLAN WITHIN THE MEANING OF SECTIONS 1125 AND 1126 OF THE BANKRUPTCY CODE ACCEPTANCE OR REJECTION OF THE PLAN MAY NOT BE SOLICITED UNTIL A DISCLOSURE STATEMENT HAS BEEN APPROVED BY THE BANKRUPTCY COURT. THE INFORMATION IN THE PLAN IS SUBJECT TO CHANGE.**

---

## JOINT CHAPTER 11 PLAN OF LIQUIDATION
## OF AIO US, INC. AND ITS DEBTOR AFFILIATES

WEIL, GOTSHAL & MANGES LLP
Ronit J. Berkovich (admitted *pro hac vice*)
Matthew P. Goren (admitted *pro hac vice*)
Alejandro Bascoy (admitted *pro hac vice*)
Jiaheng Zhang (admitted *pro hac vice*)
767 Fifth Avenue
New York, New York 10153
Telephone: (212) 310-8000
Facsimile: (212) 310-8007

RICHARDS, LAYTON & FINGER, P.A.
Mark D. Collins (No. 2981)
Michael J. Merchant (No. 3854)
Zachary I. Shapiro (No. 5103)
David T. Queroli (No. 6318)
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Telephone: (302) 651-7700
Facsimile: (302) 651-7701

*Attorneys for the Debtors*
*and Debtors in Possession*

*Attorneys for the Debtors*
*and Debtors in Possession*

Dated: February 28, 2025
       Wilmington, Delaware

---

¹   A complete list of the Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number is available at https://dm.epiq11.com/case/aiousinc/info.  The Debtors' mailing and service address is 4 International Drive, Suite 110, Rye Brook, New York 10573.

Table of Contents

ARTICLE I       DEFINITIONS AND INTERPRETATION. ......................................................1

    1.1      Definitions.............................................................................................................1

    1.2      Interpretation; Application of Definitions; Rules of Construction. ......................18

    1.3      Reference to Monetary Figures..............................................................................19

    1.4      Controlling Document. ..........................................................................................19

ARTICLE II      ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE
                  CLAIMS, AND PRIORITY TAX CLAIMS. ...........................................19

    2.1      Administrative Expense Claims Bar Date. ............................................................19

    2.2      Allowance of Administrative Expense Claims. .....................................................19

    2.3      Payment of Allowed Administrative Expense Claims............................................20

    2.4      Treatment of Professional Fee Claims...................................................................20

    2.5      Treatment of Priority Tax Claims. ........................................................................21

ARTICLE III     CLASSIFICATION OF CLAIMS AND INTERESTS. ...............................21

    3.1      Classification in General. ......................................................................................21

    3.2      Grouping of Debtors for Convenience Only..........................................................22

    3.3      Summary of Classification of Claims and Interests...............................................22

    3.4      Elimination of Vacant Classes. .............................................................................23

    3.5      Voting Classes; Presumed Acceptance by Non-Voting Classes............................23

    3.6      Voting; Presumptions; Solicitation. ......................................................................23

    3.7      Cramdown. .............................................................................................................24

    3.8      No Waiver. ..............................................................................................................24

ARTICLE IV     TREATMENT OF CLAIMS AND INTERESTS. ...........................................24

    4.1      Class 1: Other Priority Claims (All Debtors)........................................................24

    4.2      Class 2: Secured Claims (All Debtors) ..................................................................24

    4.3      Class 3: General Unsecured Claims (All Debtors) ................................................25

    4.4      Class 4: Talc Claims (All Debtors)........................................................................25

    4.5      Class 5: Subordinated Claims (All Debtors)..........................................................26

    4.6      Class 6: Intercompany Claims (All Debtors)..........................................................26

    4.7      Class 7: Intercompany Interests (All Debtors Other than API) .............................26

    4.8      Class 8: Parent Interests (API)...............................................................................26

    4.9      Debtors' Rights with Respect to Unimpaired Claims............................................27

    4.10     Treatment of Vacant Classes. ................................................................................27

ARTICLE V      MEANS FOR IMPLEMENTATION. ...............................................27

    5.1    No Substantive Consolidation...............................................................27

    5.2    Cancellation of Notes, Interests, Instruments, Certificates, and Other Documents. ...........................................................................................27

    5.3    Liquidating Trustee. ...........................................................................28

    5.4    Avon Liquidation Trust.......................................................................29

    5.5    Section 1145 Exemption; Non-Transferability of Rights. ....................34

    5.6    Insurance Provisions. .........................................................................35

    5.7    Indemnification of Liquidating Trustee. .............................................35

    5.8    Cooperation; Privilege; Access to Books and Records.........................35

    5.9    Releases of Liabilities to Holders of Claims ......................................36

    5.10   Available Cash. ..................................................................................37

    5.11   Rabbi Trust Receivable Proceeds. ......................................................37

    5.12   Surplus Reserved Cash. ......................................................................37

    5.13   Charters; By-Laws. .............................................................................37

    5.14   Effectuating Documents; Further Transactions. ..................................38

    5.15   Closing of Chapter 11 Cases. .............................................................39

    5.16   Separability. .......................................................................................39

ARTICLE VI     DISTRIBUTIONS. ...............................................................39

    6.1    Distributions Generally........................................................................39

    6.2    Distributions on Effective Date or as Soon as Reasonably Practicable Thereafter. ........................................................................................39

    6.3    Periodic Distributions from Priority Reserve, GUC Recovery Fund, and ALT Recovery Fund. .........................................................................40

    6.4    Date of Distributions...........................................................................40

    6.5    Disbursing Agent. ...............................................................................40

    6.6    Rights and Powers of Disbursing Agent. .............................................40

    6.7    Expenses of Disbursing Agent.............................................................41

    6.8    Delivery of Distributions in General....................................................41

    6.9    Delivery of Distributions to Unsecured 2043 Noteholders...................41

    6.10   Undeliverable and Unclaimed Distributions........................................42

    6.11   Time Bar to Cash Payments.................................................................42

    6.12   Distribution Record Date. ...................................................................42

6.13    Manner of Payment Under Plan.................................................................42

6.14    Minimum Cash Distributions.....................................................................42

6.15    Setoffs and Recoupment. ..........................................................................43

6.16    Distributions After Effective Date. ...........................................................43

6.17    Interest and Penalties on Claims. ..............................................................43

6.18    Allocation of Distributions Between Principal and Interest. .................43

6.19    No Distribution in Excess of Amount of Allowed Claim.......................43

6.20    Satisfaction of Claims. ...............................................................................44

6.21    Withholding and Reporting Requirements. ..............................................44

ARTICLE VII     PROCEDURES FOR DISPUTED CLAIMS. ...................................45

7.1    Disputed Claims...........................................................................................45

7.2    Claim Objections. .......................................................................................45

7.3    No Distribution Pending Allowance. ........................................................45

7.4    Estimation of Claims...................................................................................45

7.5    Distribution After Allowance. ...................................................................46

7.6    Resolution of Claims...................................................................................46

7.7    Claims Resolution Procedures Cumulative. .............................................46

7.8    Interest..........................................................................................................46

ARTICLE VIII    EXECUTORY CONTRACTS AND UNEXPIRED LEASES.......................46

8.1    Assumption and Rejection of Executory Contracts and Unexpired Leases. .........46

8.2    Determination of Cure Disputes and Deemed Consent. ..........................47

8.3    Payments Related to Assumption of Contracts and Leases. ....................48

8.4    Rejection Damage Claims............................................................................49

8.5    Compensation and Benefit Plans. ..............................................................49

8.6    Insurance Policies. ......................................................................................49

8.7    Reservation of Rights...................................................................................49

ARTICLE IX     CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND OCCURRENCE OF EFFECTIVE DATE. ..........................................................50

9.1    Conditions Precedent to Effective Date. ...................................................50

9.2    Waiver of Conditions Precedent. ..............................................................52

ARTICLE X     EFFECT OF CONFIRMATION. ....................................................................53

10.1    Binding Effect. ...........................................................................................53

10.2    Pre-Confirmation Injunctions and Stays..................................................53

10.3     Injunction Against Interference with Plan. ...........................................................53

10.4     Plan Injunction. ...................................................................................................53

10.5     Insurance Entity Injunction..................................................................................55

10.6     Releases................................................................................................................57

10.7     Exculpation. .........................................................................................................58

10.8     Injunction Related to Releases and Exculpation..................................................59

10.9     Subordinated Claims. ..........................................................................................59

10.10    Preservation of Causes of Action and Reservation of Rights. .............................59

10.11    Ipso Facto and Similar Provisions Ineffective. ...................................................60

10.12    Solicitation of Plan...............................................................................................60

10.13    Corporate Action..................................................................................................60

10.14    No Successor Liability. ........................................................................................61

10.15    Provision Related to Natura Settlement. ..............................................................61

ARTICLE XI      RETENTION OF JURISDICTION. .......................................................61

11.1     Retention of Jurisdiction. .....................................................................................61

ARTICLE XII     MISCELLANEOUS PROVISIONS.......................................................64

12.1     Exemption from Certain Transfer Taxes. .............................................................64

12.2     Dates of Actions to Implement Plan. ...................................................................64

12.3     Amendments. .......................................................................................................64

12.4     Revocation or Withdrawal of Plan.......................................................................64

12.5     Payment of Statutory Fees. ..................................................................................65

12.6     Substantial Consummation. .................................................................................65

12.7     Severability. .........................................................................................................65

12.8     Governing Law. ....................................................................................................66

12.9     Immediate Binding Effect.....................................................................................66

12.10    Successors and Assigns.........................................................................................66

12.11    Entire Agreement. ................................................................................................66

12.12    Computing Time. ..................................................................................................66

12.13    Exhibits to Plan. ...................................................................................................66

12.14    Notices. ................................................................................................................66

12.15    Dissolution of Creditors' Committee....................................................................68

12.16    Reservation of Rights............................................................................................69

iv

Each of the Debtors proposes the following amended joint chapter 11 plan of liquidation pursuant to section 1121(a) of the Bankruptcy Code.  Capitalized terms used herein have the meanings set forth in <u>Section 1.1</u> below.

## ARTICLE I     DEFINITIONS AND INTERPRETATION.

### 1.1    *<u>Definitions</u>*.

The following terms have the respective meanings specified below:

***ACC*** means Avon Capital Corporation.

***Administrative Expense Claim*** means any Claim for costs and expenses of administration of the Chapter 11 Cases pursuant to sections 327, 328, 330, 365, 503(b), 507(a)(2), or 507(b) of the Bankruptcy Code, including (i) the actual and necessary costs and expenses incurred on or after the Petition Date and through the Effective Date of preserving the Estates and operating the Debtors' businesses, (ii) Professional Fee Claims, (iii) all Statutory Fees, (iv) all Allowed Claims that are to be treated as Administrative Expense Claims pursuant to a Final Order of the Bankruptcy Court under section 546(c)(2) of the Bankruptcy Code, and (v) any Cure Claims.

***Administrative Expense Claims Bar Date*** means the applicable deadline for filing requests for payment of Administrative Expense Claims (other than Professional Fee Claims and Statutory Fees) and shall be the date that is sixty (60) calendar days after the Effective Date.

***Affiliate*** has the meaning set forth in section 101(2) of the Bankruptcy Code.

***AIO*** means AIO US, Inc.

***Allowed*** means, with respect to any Claim against or Interest in a Debtor, any Claim or Interest (i) the amount of which has been agreed by, as applicable, the Debtors, the Liquidating Debtors, or the Liquidating Trustee, (ii) that has been determined by Final Order of a court of competent jurisdiction, which may include the Bankruptcy Court, (iii) that is compromised, settled, or otherwise resolved after the Effective Date pursuant to the authority of the Debtors, the Liquidating Debtors, or the Liquidating Trustee, as applicable, (iv) that is listed in the Schedules as liquidated, non-contingent, and undisputed, (v) arising on or before the Effective Date as to which no objection to allowance has been interposed within the time period set forth in the Plan, and (vi) that is expressly allowed hereunder.

***ALT Assets*** means, collectively, all Assets of the Debtors and/or the Liquidating Debtors as of the Effective Date.  For the avoidance of doubt, ALT Assets shall exclude: (i) any Interests held by any Liquidating Debtor in any other Liquidating Debtor and (ii) any Assets transferred, or required to be transferred (whether or not subject to any contingencies that remain to be satisfied), to the Buyer pursuant to the Sale Order and the Stock and Asset Purchase Agreement; *provided*, *however*, that if the Debtors' obligations under the Stock and Asset Purchase Agreement to transfer any such Assets cease following the Effective Date, such Asset shall automatically without further action by any party become ALT Assets.

***ALT Board*** means the governing body of the Avon Liquidation Trust to be appointed in accordance with Section 5.4(viii) of this Plan.

***ALT Documents*** means the ALT Trust Agreement, the Trust Distribution Procedures, and the Trust Transfer Agreement(s). The ALT Documents shall be substantially in the form set forth as exhibits hereto or in the Plan Supplement, as they may be amended or modified from time to time in accordance with their terms and the Plan.

***ALT Operating Expenses*** means any and all costs, expenses, fees, taxes, disbursements, debts, or obligations incurred from the operation and administration of the Avon Liquidation Trust, including in connection with the (i) reconciliation and administration of all Claims not otherwise deemed expunged, released, and/or extinguished as of the Effective Date, (ii) wind-down of the Liquidating Debtors and distribution of the ALT Assets, (iii) prosecution of the Retained Causes of Action, (iv) recovery of Insurance Proceeds, and (v) costs and fees of the Liquidating Trustee, the ALT Board, and any other professionals retained by the Avon Liquidation Trust.

***ALT Operating Reserve*** means the segregated account established to pay ALT Operating Expenses, which shall be initially funded with Effective Date Available Cash in an amount equal to the ALT Operating Reserve Cash Amount pursuant to Section 5.4(v) of this Plan and, thereon or thereafter, (i) funded with the Remaining Rabbi Trust Receivable Proceeds pursuant to Section 5.11 of this Plan and (ii) replenished by the Liquidating Trustee in accordance with Section 5.10 of this Plan.

***ALT Operating Reserve Amount*** means a combination of Cash and Rabbi Trust Receivable Proceeds in the aggregate amount estimated to be necessary, with expected Post-Effective Date Available Cash, to fund the ALT Operating Expenses. The ALT Operating Reserve Amount shall be determined by the Debtors, in their discretion, in consultation with the Creditors' Committee.

***ALT Operating Reserve Cash Amount*** means (i) the ALT Operating Reserve Amount *minus* (ii) the estimated Remaining Rabbi Trust Receivable Proceeds.

***ALT Recovery Fund*** means the segregated fund established to make Distributions on account of Allowed Talc Claims and Allowed Electing General Unsecured Claims, which shall be initially funded on the Effective Date, or as soon as practicable thereafter, with Excess Effective Date Available Cash pursuant to Section 5.10(i) of this Plan, if any, and, thereafter, periodically funded with Post-Effective Date Available Cash pursuant to Section 5.10(ii) of this Plan.

***ALT Termination Date*** means the date on which the Avon Liquidation Trust is terminated, as determined pursuant to the terms of the ALT Trust Agreement and in compliance with Treasury Regulation Section 301.7701-4(d) and Revenue Procedure 94-45, 1994-2 C.B. 684, upon the satisfaction of the purposes for which the Avon Liquidation Trust was established.

***ALT Trust Agreement*** means the trust agreement establishing the Avon Liquidation Trust and delineating the terms and conditions for the management of the Avon Liquidation Trust, as it may be amended from time to time. The ALT Trust Agreement shall be filed with the Plan Supplement.

2

*API* means Avon Products, Inc.

*Asset* means all of the rights, title, and interests of a Debtor or a Liquidating Debtor, as applicable, in and to property of whatever type or nature, including real, personal, mixed, intellectual, tangible, and intangible property, including, for the avoidance of doubt, all Retained Causes of Action whether or not on the Schedule of Retained Causes of Action.

*Assumed and Assigned Contracts* means, collectively, all executory contracts or unexpired leases to be assumed by the Debtors under this Plan pursuant to sections 365(a) and 365(f) of the Bankruptcy Code and assigned to the Avon Liquidation Trust under the Trust Transfer Agreement and this Plan. The Assumed and Assigned Contracts will be identified along with any Cure Amount on the Schedule of Assumed and Assigned Contracts to be filed as part of the Plan Supplement.

*Authorized Acts* means those actions in accordance with Treasury Regulation Section 301.7701-4(d) that the Liquidating Trustee (on behalf of the Avon Liquidation Trust or the Liquidating Debtors) is authorized to perform in accordance with the ALT Documents, including: (i) wind down, dissolve, and liquidate the Liquidating Debtors, their Estates, and the ALT Assets; (ii) prosecute and liquidate Retained Causes of Action; (iii) administer, process, settle, resolve, liquidate, satisfy, and pay (from the designated funds therefor), as applicable, Claims against the Debtors; (iv) maintain, administer, and make Distributions from the Professional Fee Escrow Account to satisfy Allowed Professional Fee Claims; (v) maintain, administer, and make Distributions from the Priority Reserve to satisfy Allowed (a) Administrative Expense Claims (excluding Professional Fee Claims), (b) Secured Claims, and (c) Priority Claims; (vi) maintain, administer, and make Distributions from (a) the GUC Recovery Fund to holders of Allowed Non-Electing General Unsecured Claims and (b) the ALT Recovery Fund to holders of Allowed Talc Claims and Allowed Electing General Unsecured Claims, in each case as set forth in this Plan and the applicable ALT Documents; (vii) maintain, administer, and make distributions from the ALT Operating Reserve to satisfy ALT Operating Expenses; (viii) administer the closing of the Chapter 11 Cases in accordance with the Bankruptcy Code and the Bankruptcy Rules; (ix)(a) to the extent permitted under the Sale Order or the Stock and Asset Purchase Agreement, access and retain the Debtors' and the Liquidating Debtors' documents, books, and records and (b) considering all factors, make determinations with regard to the use of such documents, books, and records; *provided*, *however*, that any such use will be in a manner that reasonably protects against disclosure of personally identifiable information and that complies with all applicable laws, and, in the absence of modification, any confidentiality agreements, protective orders, or other similar obligations regarding the use of the Debtors' and the Liquidating Debtors' documents, books, and records; and (x) carry out the purposes and obligations of the Avon Liquidation Trust as set forth in the ALT Documents.

*Avon Liquidation Trust* means the trust established to, among other things (i) hold and make Distributions from the Professional Fee Escrow Account, the Priority Reserve, the GUC Recovery Fund, and the ALT Recovery Fund, and pay ALT Operating Expenses from the ALT Operating Reserve, (ii) liquidate the ALT Assets, including the Retained Causes of Action, (iii) recover Insurance Proceeds, and (iv) administer Claims, including through allowance and disallowance of such Claims and making Distributions on account thereof, but solely in accordance with this Plan and the applicable ALT Documents.

*Bankruptcy Code* means title 11 of the United States Code, as applicable to the Chapter 11 Cases.

*Bankruptcy Court* means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent any reference made under section 157 of title 28 of the United States Code is withdrawn or the Bankruptcy Court is determined not to have authority to enter a Final Order on an issue, the District Court.

*Bankruptcy Rules* means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, as applicable to the Chapter 11 Cases, and any local rules of the Bankruptcy Court.

*Bar Date Order* means the order of the Bankruptcy Court, dated November 21, 2024 [Docket No. 482], establishing deadlines by which proofs of Claim must be filed with respect to certain Claims.

*Board of Directors* means the board of directors of the Debtors.

*Bond Trustee* means Deutsche Bank Trust Company Americas, solely in its capacity as trustee and each other capacity for which it serves under or in connection with the Unsecured 2043 Notes Documents (as applicable), provided that if the context requires only certain of the foregoing capacities, then only in such capacity(ies), as applicable.

*Business Day* means any day other than a Saturday, a Sunday, or any other day on which banking institutions in Wilmington, Delaware are authorized or required by law or executive order to close.

*Buyer* means Natura &Co UK Holdings Limited, as the buyer under the Stock and Asset Purchase Agreement approved by the Bankruptcy Court pursuant to the Sale Order.

*Cash* means legal tender of the United States of America.

*Cause of Action* means any action, class action, claim, cross-claim, third-party claim, cause of action, controversy, demand, right, Lien, indemnity, contribution, reimbursement, guaranty, suit, obligation, liability, debt, damage, judgment, account, defense, remedy, offset, power, privilege, license, and franchise of any kind or character whatsoever, known or unknown, contingent or non-contingent, matured or unmatured, suspected or unsuspected, liquidated or unliquidated, disputed or undisputed, foreseen or unforeseen, direct or indirect, choate or inchoate, secured or unsecured, assertable directly or derivatively (including under alter ego theories), whether arising before, on, or after the Petition Date, in contract or in tort, at law or in equity, or pursuant to any other theory of law. For the avoidance of doubt, "Cause of Action" shall include: (i) any right of setoff, counterclaim, or recoupment and any claim for breach of contract or for breaches of duties imposed by law or in equity; (ii) the right to object to Claims or Interests; (iii) any claim or cause of action pursuant to section 362 of the Bankruptcy Code or chapter 5 of the Bankruptcy Code; (iv) any claim or defense, including fraud, mistake, duress, and usury and any other defenses set forth in section 558 of the Bankruptcy Code; and (v) any claims under any state or foreign law, including any fraudulent transfer or similar claims.

***Chapter 11 Case*** means, with respect to a Debtor, such Debtor's case under chapter 11 of the Bankruptcy Code commenced on the Petition Date in the Bankruptcy Court, jointly administered with all other Debtors' cases under chapter 11 of the Bankruptcy Code, and styled *In re AIO US, Inc., et al.,* Ch. 11 Case No. 24–11836 (CTG).

***Claim*** means a "claim," as defined in section 101(5) of the Bankruptcy Code.

***Class*** means any group of Claims or Interests classified under this Plan pursuant to section 1122(a) of the Bankruptcy Code.

***Company*** means the Debtors and their non-Debtor subsidiaries.

***Confirmation Date*** means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order.

***Confirmation Hearing*** means the hearing to be held by the Bankruptcy Court regarding confirmation of the Plan, as such hearing may be adjourned or continued from time to time.

***Confirmation Order*** means the order of the Bankruptcy Court confirming this Plan pursuant to section 1129 of the Bankruptcy Code.

***Creditors' Committee*** means the statutory committee of unsecured creditors appointed by the U.S. Trustee on August 27, 2024 pursuant to section 1102(a)(1) of the Bankruptcy Code.

***Cure Amount*** means the payment of Cash or the distribution of other property (as the parties may agree or the Bankruptcy Court may order) as necessary to (i) cure a monetary default by the Debtors in accordance with the terms of an executory contract or unexpired lease of the Debtors and (ii) permit the Debtors to assume such executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

***Cure Claim*** means a Claim for cure in connection with the assumption or assumption and assignment of an executory contract or unexpired lease under section 365(a) of the Bankruptcy Code.

***Cure Dispute*** means an unresolved objection regarding assumption, Cure Amount, "adequate assurance of future performance" (within the meaning of section 365 of the Bankruptcy Code), or other issues related to assumption of an executory contract or unexpired lease.

***Debtor*** means each of the Initial Debtors and the Subsidiary Debtors.

***DIP Documents*** means, collectively, (i) that certain *Superpriority Senior Secured Debtor-in-Possession Credit and Guaranty Agreement*, dated as of August 12, 2024, by and among API, the other borrowers party hereto from time to time, and the DIP Lenders (as defined in the DIP Documents), as amended, supplemented, restated, or otherwise modified from time to time, as approved by the Bankruptcy Court pursuant to the DIP Orders, (ii) the DIP Orders, and (iii) all

other agreements, documents, and instruments delivered or executed in connection therewith, in each case as amended, restated, modified, or supplemented from time to time.

*DIP Orders* means, collectively, the (i) *Interim Order (I) Authorizing Debtors to (A) Obtain Postpetition Financing, (B) Use Cash Collateral, (C) Grant Liens and Provide Superpriority Administrative Expense Status, (D) Grant Adequate Protection, (E) Modify the Automatic Stay, and (F) Schedule a Final Hearing and (II) Granting Related Relief* [Docket No. 56] and the (ii) *Final Order Pursuant to 11 U.S.C. §§ 105(a), 345, 363, 364, 503, and 541 and Fed. R. Bankr. P. 6003 and 6004 (I) Authorizing Debtors to (a) Continue Existing Cash Management Systems, Bank Accounts, and Business Forms, (B) Implement Ordinary Course Changes to Cash Management System, and (C) Honor Certain Related Prepetition Obligations, (II) Authorizing Continuation of Intercompany Transactions and Granting Administrative Expense Status for Postpetition Intercompany Claims, (III) Waiving Certain Requirements with Respect to the Debtors' Accounts, and (IV) Granting Related Relief* [Docket No. 318].

*Disallowed* means, any Claim, or any portion thereof, that (i) has been disallowed under this Plan or by a Final Order, a settlement, or, with respect to Talc Claims, a final determination of the Liquidating Trustee in accordance with the Trust Distribution Procedures or (ii) is not Scheduled, is Scheduled at zero, or is Scheduled as contingent, disputed, or unliquidated and as to which a proof of claim bar date has been established but no proof of claim has been timely filed or deemed timely filed with the Bankruptcy Court pursuant to either the Bankruptcy Code or any Final Order of the Bankruptcy Court, including the Bar Date Order, or otherwise deemed timely filed under applicable law.

*Disbursing Agent* means the Liquidating Trustee acting in its capacity as a disbursing agent under Sections 6.5 and 6.6 hereof to make Distributions pursuant to the Plan.

*Disclosure Statement* means the disclosure statement for the Plan, as may be amended or supplemented from time to time, prepared and distributed in accordance with sections 1125, 1126(b), and 1145 of the Bankruptcy Code, Bankruptcy Rules 3016 and 3018, and other applicable law, and all exhibits, schedules, supplements, modifications, amendments, annexes, and attachments to such disclosure statement.

*Disputed* means, with respect to a Claim, any Claim that is not yet Allowed or Disallowed.

*Dissolution Date* means the date upon which all of the Liquidating Debtors have been dissolved, which is to be no later than ninety (90) calendar days after completion of the acts required of the Debtors or the Liquidating Debtors by Article V of this Plan, or as soon as reasonably practicable thereafter.

*Distribution* means any payment or transfer of consideration to holders of Allowed Claims made under this Plan.

*Distribution Process* has the meaning set forth in Section 6.9 of this Plan.

*Distribution Record Date* means the record date for purposes of making Distributions under the Plan on account of Allowed Claims, which date shall be the Effective Date;

*provided*, *however*, that the Distribution Record Date shall not apply to the Unsecured 2043 Noteholders.

**District Court** means the United States District Court for the District of Delaware.

**DTC** means the Depository Trust Company, a limited-purpose trust company organized under the New York State Banking Law.

**Effective Date** means the date which is the first Business Day on which (i) all conditions precedent to the effectiveness of this Plan as set forth in Section 9.1 of this Plan have been satisfied or waived in accordance with the terms of this Plan and (ii) no stay of the Confirmation Order is in effect.

**Effective Date Available Cash** means Cash held by the Debtors or the Liquidating Debtors, as applicable, on the Effective Date, not including any Rabbi Trust Receivable Proceeds received prior to the Effective Date.

**Electing General Unsecured Claim** means a General Unsecured Claim held by any holder that, pursuant to Section 4.3(ii) of this Plan, elects to receive such holder's share of the ALT Recovery Fund in accordance with the Trust Distribution Procedures as treatment for such Claim instead of a recovery from the GUC Recovery Fund.

**Entity** has the meaning set forth in section 101(15) of the Bankruptcy Code.

**Estate(s)** means, individually or collectively, the estate or estates of the Debtors created under section 541 of the Bankruptcy Code.

**Excess Effective Date Available Cash** means Effective Date Available Cash in excess of the amounts to be used to fund the Professional Fee Escrow Account, the Priority Reserve, the GUC Recovery Fund, the ALT Recovery Fund, and the ALT Operating Reserve, as described in Section 5.10(i) of this Plan.

**Exculpated Parties** means, collectively, solely in their capacities as such: (i) the Debtors; (ii) the Board of Directors and each of its members who served in such capacity on or after the Petition Date; (iii) the Debtors' officers who served in such capacity after the Petition Date; (iv) the Creditors' Committee and each of its members, solely in their capacities as such; (v) the Professional Persons and any ordinary course professional retained by the Debtors pursuant to an order of the Bankruptcy Court; and (vi) the Professional Persons retained by the Creditors' Committee pursuant to an order of the Bankruptcy Court.

**Final Order** means an order or judgment of a court of competent jurisdiction that has been entered on the docket maintained by the clerk of such court and is in full force and effect, which has not been reversed, vacated, or stayed and as to which (i) the time to appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing has expired and as to which no appeal, petition for *certiorari*, or other proceedings for a new trial, reargument, or rehearing shall then be pending, or (ii) if an appeal, writ of *certiorari*, new trial, reargument, or rehearing thereof has been sought, such order or judgment shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied, or a new trial, reargument, or rehearing shall

have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari*, or move for a new trial, reargument, or rehearing shall have expired; *provided*, *however*, that no order or judgment shall fail to be a "Final Order" solely because of the possibility that a motion under Rules 59 or 60 of the Federal Rules of Civil Procedure or any analogous Bankruptcy Rule (or any analogous rules applicable in another court of competent jurisdiction) or sections 502(j) or 1144 of the Bankruptcy Code has been or may be filed with respect to such order or judgment.

**General Unsecured Claim** means any Claim against the Debtors, other than any Talc Claim, Subordinated Claim, or Intercompany Claim, which as of the Petition Date is neither secured by collateral nor entitled to priority under the Bankruptcy Code or any Final Order of the Bankruptcy Court. For the avoidance of doubt, "General Unsecured Claim" (consisting of both Non-Electing General Unsecured Claims and Electing General Unsecured Claims) shall include, but is not limited to, Unsecured 2043 Notes Claims.

**Governmental Unit** means any governmental unit as defined in section 101(27) of the Bankruptcy Code.

**GUC Administration Completion Date** means the date on which each of the following has occurred: (i) all General Unsecured Claims have been finally Allowed or Disallowed and (ii) all Distributions in respect of Allowed Non-Electing General Unsecured Claims have been made pursuant to this Plan from the GUC Recovery Fund.

**GUC Recovery Fund** means the fund established pursuant to this Plan to make Distributions on account of Allowed Non-Electing General Unsecured Claims, which shall be initially funded on the Effective Date, or as soon as practicable thereafter, with Effective Date Available Cash in an amount equal to the GUC Recovery Fund Cash Amount and, thereon and thereafter, funded with Rabbi Trust Receivable Proceeds in the GUC Recovery Fund Receivable Amount pursuant to Section 5.11 of this Plan. The GUC Recovery Fund shall be held by the Avon Liquidation Trust and administered by the Liquidating Trustee in accordance with this Plan.

**GUC Recovery Fund Amount** means $[●]; *provided*, *however*, the GUC Recovery Fund Amount shall be reduced by $[●] for every $[●] by which the aggregate amount of Effective Date Available Cash and the actual or expected value of Rabbi Trust Receivable Proceeds is lower than $[●].

**GUC Recovery Fund Cash Amount** means (i) the GUC Recovery Fund Amount *minus* (ii) the GUC Recovery Fund Receivable Amount.

**GUC Recovery Fund Receivable Amount** means $[●], which shall fund the GUC Recovery Fund on or after the Effective Date pursuant to Section 5.11 of this Plan.

**Impaired** means, with respect to a Claim, Interest, or a Class of Claims or Interests, "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code.

**Initial Debtor** means each of AIO, API, MIH, and ACC, as a debtor and debtor in possession.

***Initial Debtor Petition Date*** means August 12, 2024.

***Insurance Companies*** means all Entities that issued, or that have any actual, potential, demonstrated, or alleged liabilities, duties, or obligations under, or with respect to, any Insurance Policy, and any third party administrator, parent, subsidiary, affiliate, successor, predecessor, or assign of any of the foregoing, solely in their capacity as such with respect to an Insurance Policy.

***Insurance Entity Injunction*** means the injunction described in <u>Section 10.5</u> of this Plan.

***Insurance Policies*** means any insurance policies, insurance contracts, binders, certificates, or reinsurance policies, whether currently known or unknown, issued to or that provides or may provide coverage (whether as the primary or additional insured or otherwise) at any time to any of the Debtors or any of their predecessors or subsidiaries, or under which any of the foregoing have sought or may seek such coverage, including any such policies for directors' and officers' liability, general liability, workers' compensation, any excess or umbrella policies, and all agreements, documents, or instruments relating thereto.

***Insurance Proceeds*** means any proceeds recovered under an Insurance Policy after the "Effective Time" of the Natura Settlement Agreement.

***Insurance Rights*** means any and all rights, titles, privileges, interests, claims, demands, or entitlements of the Debtors to any proceeds, payments, benefits, Causes of Action, choses in action, defense or indemnity arising under, or attributable to, any and all Insurance Policies now existing or hereafter arising, accrued or unaccrued, liquidated or unliquidated, matured or unmatured, disputed or undisputed, fixed or contingent, including: (i) any Insurance Company's failure to provide coverage or otherwise pay under an Insurance Policy; (ii) the refusal of any Insurance Company to compromise and settle any claim or provide defense to any claim; (iii) the interpretation or enforcement of the terms of any Insurance Policy with respect to any Claim; (iv) any conduct by any Insurance Company constituting "bad faith" conduct or that could otherwise give rise to extra-contractual damages, or other wrongful conduct under applicable law; or (v) any right to receive proceeds with respect to any Insurance Policy or a coverage action. For the avoidance of doubt, "Insurance Rights" shall include Insurance Proceeds.

***Insurance Rights Transfer*** means the transfer, assignment, and vesting of the Insurance Rights described in <u>Section 5.4(iv)</u> of this Plan.

***Insurance Settlement Agreement*** means any settlement agreement entered into after the Petition Date, by and among (i) any Insurance Company, on the one hand, and (ii)(a) prior to the Effective Date, the Debtors, [with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld, delayed, or conditioned,] and the approval of the Bankruptcy Court or (b) on or after the Effective Date, the Avon Liquidation Trust, on the other hand, in which an Insurance Policy and/or the Debtors' rights thereunder are released.

***Intercompany Claim*** means a Claim against any Debtor held by another Debtor.

*Intercompany Interest* means an Interest in a Debtor held by another Debtor.  For the avoidance of doubt, Intercompany Interests shall exclude Parent Interests.

*Interest* means any equity security (as defined in section 101(16) of the Bankruptcy Code) in a Debtor, or direct or indirect subsidiary of a Debtor, including all shares, common stock or units, preferred stock or units, or other instrument evidencing any fixed or contingent ownership interest in any Debtor or any direct or indirect subsidiary of a Debtor, including any option, warrant, or other right, contractual or otherwise, to acquire any such interest in a Debtor, or direct or indirect subsidiary of a Debtor, whether or not transferable and whether fully vested or vesting in the future, that existed immediately before the Effective Date.

*Interim Compensation Order* means the *Order Pursuant to 11 U.S.C. §§ 331, 330, and 105(a) and Fed. R. Bankr. P. 2016 (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses of Professionals, and (II) Granting Related Relief* [Docket No. 172].

*Internal Revenue Code* means the Internal Revenue Code of 1986, as amended from time to time.

*IRS* means the United States Internal Revenue Service.

*Lien* has the meaning set forth in section 101(37) of the Bankruptcy Code.

*Liquidating API* means API on and after the Effective Date, to be liquidated and dissolved upon the Dissolution Date.

*Liquidating API's Organizational Documents* means, collectively, the amended and restated organizational documents of Liquidating API, which shall be filed with the Plan Supplement and shall reflect the limited purposes of Liquidating API as set forth in this Plan.

*Liquidating Debtors* means, collectively, all of the Debtors on and after the Effective Date, to be liquidated and dissolved upon the Dissolution Date.

*Liquidating Trustee* means the Person appointed pursuant to this Plan and Confirmation Order to perform the Authorized Acts under and in accordance with this Plan and the ALT Documents.

*MIH* means MI Holdings, Inc.

*Natura* means, collectively, Natura &Co Holding S.A., Natura Cosméticos S.A., Natura &Co UK Holdings Limited, and Natura &Co. Luxembourg Holdings S.à r.l.

*Natura Secured Credit Documents* means, collectively, (i)(a) that certain secured promissory note, dated as of August 8, 2023 (as amended and restated in its entirety by that certain *Secured Credit and Guaranty Agreement*, dated as of December 13, 2023, by and among Avon Cosmetics Limited, as borrower, Natura &Co. Luxembourg Holdings S.à r.l., as lender, and the guarantors party thereto) and (b) any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived or otherwise modified prior to the Petition Date, (ii)(a) that certain *Secured Credit and*

*Guaranty Agreement*, dated as of April 20, 2024 (as amended by that certain *Amendment No. 1 to the Secured Credit and Guaranty Agreement*, dated as of June 17, 2024, that certain *Amendment No. 2 to Secured Credit and Guaranty Agreement*, dated as of July 19, 2024, and as further amended, restated, amended and restated, supplemented or modified from time to time), by and among API and Avon Cosmetics Limited, as borrowers, Natura &Co Holding S.A., Natura Cosméticos S.A., and Natura &Co. Luxembourg Holdings S.à r.l., as lenders, and the guarantors party thereto and (b) any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived or otherwise modified prior to the Petition Date, and (iii)(a) that certain senior secured promissory note, dated as of August 8, 2023 (as amended and restated in its entirety by that certain *Secured Credit and Guaranty Agreement*, dated as of December 13, 2023, by and among API, as borrower, Natura &Co UK Holdings Limited, as lender, and the guarantors party thereto) and (b) any other agreements and documents executed or delivered in connection therewith, each as may be amended, restated, amended and restated, supplemented, waived or otherwise modified prior to the Petition Date.

**Natura Settlement Agreement** means that certain *Settlement Agreement*, dated December 4, 2024, by and among the Debtors and Natura, as may be amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof, as approved by the Bankruptcy Court pursuant to the Natura Settlement Order.

**Natura Settlement Order** means the *Order (I) Approving the Settlement Agreement with Natura &Co Holding S.A. and Certain Affiliates, (II) Authorizing the Debtors to Take Any and All Actions Necessary to Effectuate the Terms Thereof, and (III) Granting Related Relief* [Docket No. 581].

**Natura Unsecured Promissory Note** means, collectively, (i) that certain Promissory Note, dated May 17, 2022, by and among API and Natura &Co UK Holdings Plc, and (ii) any other agreements and documents executed or delivered in connection therewith, each as amended, restated, amended and restated, supplemented, waived or otherwise modified prior to the Petition Date.

**New Parent Interest** means one share of common stock of API, representing one-hundred percent (100%) of the issued and outstanding shares of capital stock thereof, to be issued to the Avon Liquidation Trust on the Effective Date.

**Non-Electing General Unsecured Claim** means a General Unsecured Claim that is not an Electing General Unsecured Claim.

**Non-Settling Insurance Company** means an Insurance Company that has not executed an Insurance Settlement Agreement.

**Other Priority Claim** means any Claim other than an Administrative Expense Claim or a Priority Tax Claim that is entitled to priority of payment as specified in section 507(a) of the Bankruptcy Code.

***Parent Interests*** means all of the issued and outstanding shares of common stock of API and all other issued and outstanding Interests of API as of immediately prior to the Effective Date.

***Person*** means an individual, corporation, partnership, joint venture, association, joint stock company, limited liability company, limited liability partnership, trust, estate, unincorporated organization, Governmental Unit, or other Entity.

***Petition Date*** means the Initial Debtor Petition Date or the Subsidiary Debtor Petition Date, as applicable.

***Plan*** means this joint chapter 11 plan of liquidation for the Debtors, including all appendices, exhibits, schedules, and supplements hereto (including any appendices, schedules, and supplements to this Plan contained in the Plan Supplement), as it may be altered, amended, or modified from time to time in accordance with the Bankruptcy Code, the Bankruptcy Rules, and the terms hereof.

***Plan Document*** means any of the documents of the Debtors, other than this Plan, to be executed, delivered, assumed, or performed in connection with the occurrence of the Effective Date, including documents to be included in the Plan Supplement.

***Plan Injunction*** means the injunctions issued pursuant to Section 10.4 of this Plan.

***Plan Supplement*** means the supplement or supplements to this Plan containing the following documents relevant to the implementation of this Plan: (i) Liquidating API's Organizational Documents; (ii) the ALT Documents (excluding the Trust Distribution Procedures); (iii) the ALT Operating Reserve Amount; (iv) the identity and compensation of the Liquidating Trustee and each member of the ALT Board, if known; (v) the Schedule of Assumed and Assigned Contracts, if any; (vi) the Schedule of Retained Causes of Action; and (vii) information required to be disclosed in accordance with section 1129(a)(5) of the Bankruptcy Code. Through the Effective Date, the Debtors shall have the right to amend any documents contained in, and exhibits to, any Plan Supplement document subject to the requirements of Section 12.3 of this Plan.

***Plan Supplement Filing Deadline*** means the date by which the Debtors are to file the Plan Supplement in accordance with the Solicitation Procedures Order, which shall be seven (7) calendar days before the earlier of (i) the deadline set to file objections to confirmation of this Plan and (ii) the Voting Deadline.

***Post-Effective Date Available Cash*** means the consideration received by the Avon Liquidation Trust after the Effective Date from the ALT Assets, including (i) recovery of Insurance Proceeds, (ii) prosecution of Retained Causes of Action, (iii) any excess Cash in the Professional Fee Escrow Account, (iv) any surplus Cash in the Priority Reserve and the ALT Operating Reserve, to be determined on each six-month (6-month) anniversary of the Effective Date by the Liquidating Trustee in its reasonable discretion as set forth in Section 5.12 of this Plan, (v) upon the GUC Administration Completion Date, any Cash remaining in the GUC Recovery Fund (which, for the avoidance of doubt, shall equal the portion of the GUC Recovery Fund allocable to Allowed Electing General Unsecured Claims on a Pro Rata basis) pursuant to Section 5.4(xi) of

this Plan, (vi) upon dissolution of the Priority Reserve, any Cash remaining in the Priority Reserve pursuant to Section 5.10 of this Plan, or (vii) any other source; *provided*, *however*, that "Post-Effective Date Available Cash" shall not include Rabbi Trust Receivable Proceeds.

*Priority Claim* means any Priority Tax Claim or Other Priority Claim.

*Priority Reserve* means a segregated account, which shall be funded in Cash by the Debtors or the Liquidating Debtors, as applicable, on the Effective Date, or as soon as practicable thereafter, in an amount determined by the Debtors, [with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld, delayed, or conditioned,] to be necessary to pay, if any, (i) Allowed Administrative Expense Claims (excluding Professional Fee Claims), (ii) Allowed Secured Claims, and (iii) Allowed Priority Claims. The Priority Reserve shall be held by the Avon Liquidation Trust and administered by the Liquidating Trustee in accordance with this Plan and the ALT Trust Agreement.

*Priority Tax Claim* means any Claim of a Governmental Unit of the kind entitled to priority in payment under sections 502(i) and 507(a)(8) of the Bankruptcy Code.

*Privilege* means any attorney-client privilege, work-product protection, or other privilege or protection of immunity (i) held by any or all of the Debtors, their Estates, or the Liquidating Debtors, (ii) held by the Board of Directors or any special committee of the Board of Directors of any of the Debtors or the Liquidating Debtors, and (iii) attaching to any documents, communications, or thing (whether written or oral), including all electronic information relating to any Insurance Policies, Insurance Rights, or Causes of Action.

*Pro Rata* means allocated in accordance with the proportion that an Allowed General Unsecured Claim bears to the aggregate amount of Allowed General Unsecured Claims and Disputed General Unsecured Claims (in each case including, for the avoidance of doubt, both Electing General Unsecured Claims and Non-Electing General Unsecured Claims).

*Products* means any and all products developed, designed, manufactured, marketed, or sold, in research or development, or supported by, the Debtors, whether work in progress or in final form.

*Professional Fee Claim* means a Claim for professional services rendered, or costs incurred, on or after the Initial Debtor Petition Date and on or prior to the Effective Date by Professional Persons that is unpaid as of the Effective Date.

*Professional Fee Escrow Account* means an interest-bearing account funded by the Debtors in Cash on or prior to the Effective Date in an amount necessary to satisfy Allowed Professional Fee Claims as set forth in Section 2.4(i) of this Plan.

*Professional Person* means any Person retained by order of the Bankruptcy Court in connection with these Chapter 11 Cases pursuant to sections 327, 328, 330, 331, 363, 503(b), or 1103 of the Bankruptcy Code, excluding any ordinary course professional retained pursuant to an order of the Bankruptcy Court.

**Rabbi Trust Assets** means, collectively, all assets (including Cash and securities and all proceeds from any such assets) relating to (or held by, in or under, including by any trustee thereunder) the Trust Agreement by and between API and Chase Manhattan Bank, N.A. amended and restated as of October 29, 1998, as amended effective as of January 1, 2009 and as assumed by Wells Fargo Bank, National Association as of May 8, 2014.

**Rabbi Trust Receivable Proceeds** means any net Cash proceeds arising from or relating to the liquidation of the Rabbi Trust Assets.

**Related Parties** means, collectively, a Person's or an Entity's predecessors, successors and assigns, parents, subsidiaries, affiliates, managed accounts or funds, and all of their respective current and former officers, directors, principals, shareholders (and any fund managers, fiduciaries, or other agents of shareholders with any involvement related to the Debtors), members, partners, employees, agents, trustees, advisory board members, financial advisors, attorneys, accountants, actuaries, investment bankers, consultants, representatives, management companies, fund advisors and other professionals, and such persons' respective heirs, executors, estates, servants, and nominees; *provided*, *however*, that a Debtor's "Related Party" shall exclude Natura, C-A NA LLC, Cleveland NA Investor LLC, Cleveland Apple Investor L.P. (f/k/a Cleveland Apple Investor LLC), Cerberus Capital Management, L.P., New Avon LLC, LG Household and Health Care Ltd., any other parties to the 2016 spin off transaction of The Avon Company, their respective successors, their professional firms retained in connection therewith, and the current and former non-Debtor Affiliates of the foregoing in their capacities as such.

**Released Parties** means, collectively, (i) each Debtor, (ii) each Debtor's Related Parties, and (iii) the Bond Trustee.

**Releases** means the releases provided for in Section 10.6 of this Plan, including its subsections.

**Remaining Rabbi Trust Receivable Proceeds** means Rabbi Trust Receivable Proceeds in excess of the GUC Recovery Fund Receivable Amount

**Retained Causes of Action** means, collectively, all Causes of Action to be retained by the Liquidating Debtors and the Avon Liquidation Trust; *provided*, *however*, that the Debtors, the Liquidating Debtors, or the Avon Liquidation Trust shall not retain (whether on their own behalf or on behalf of the Estates) any Causes of Action (i) against any Released Party that is released pursuant to Section 10.6 of this Plan, (ii) transferred to the Buyer pursuant to the Sale Order and the Stock and Asset Purchase Agreement, or (iii) settled or released pursuant to the Natura Settlement Order and the Natura Settlement Agreement; *provided*, *further*, that except as provided in Article X of this Plan, all Claims or Causes of Action of the Debtors existing immediately prior to the Effective Date shall be retained by the Avon Liquidation Trust, whether or not any particular Claim or Cause of Action is specifically identified on the Schedule of Retained Causes of Action, without any further action by any party, under Section 10.10 of this Plan.

**Revenue Procedure** means a "Revenue Procedure" (including any successor name to a "Revenue Procedure") published in the Internal Revenue Bulletin (or successor publication).

**Schedule of Assumed and Assigned Contracts** means the schedule of executory contracts and unexpired leases to either be assumed by the applicable Debtor or assumed by the applicable Debtor and assigned to the Avon Liquidation Trust.  The Schedule of Assumed and Assigned Contracts, if any, shall be filed with the Plan Supplement.

**Schedule of Retained Causes of Action** means a schedule of Retained Causes of Action to be filed as part of the Plan Supplement.

**Sale** means the sale of substantially all of the assets of the Debtors to the Buyer pursuant to the Stock and Asset Purchase Agreement, as approved by the Sale Order.

**Sale Order** means the *Order (I) Approving the Sale of Substantially All of the Debtors' Assets Free and Clear of All Non-Assumed Liens, Claims, Encumbrances and Interests, (II) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (III) Granting Related Relief* [Docket No. 582].

**Scheduled** means, with respect to any Claim, the status, priority, and amount, if any, of such Claim as set forth in the Schedules.

**Schedules** means the schedules of assets and liabilities, statements of financial affairs, lists of holders of Claims and Interests and all amendments or supplements thereto filed by the Debtors with the Bankruptcy Court to the extent such filing is not waived pursuant to an order of the Bankruptcy Court.

**Secured Claim** means a Claim to the extent (i) secured by a Lien on property of a Debtor's Estate, the amount of which is equal to or less than the value of such property (a) as set forth in this Plan, (b) as agreed to by the holder of such Claim and the Debtors, or (c) as determined by a Final Order in accordance with section 506(a) of the Bankruptcy Code or (ii) subject to any setoff right of the holder of such Claim under section 553 of the Bankruptcy Code.  For the avoidance of doubt, "Secured Claim" does not include any Claim that meets the definition of "Priority Tax Claim" or "Other Priority Claim."

**Securities Act** means the Securities Act of 1933, as amended.

**Settling Insurance Company** means an Insurance Company that has executed an Insurance Settlement Agreement.

**Solicitation Procedures Order** means an order of the Bankruptcy Code approving the *Motion of Debtors for Entry of an Order (I) Approving Proposed Disclosure Statement and the Form and Manner of Notice of Hearing Thereof, (II) Establishing Solicitation and Voting Procedures with Respect to Debtors' Proposed Chapter 11 Plan, (III) Scheduling Confirmation Hearing, (IV) Establishing Notice and Objection Procedures for Confirmation of Debtors' Proposed Chapter 11 Plan, and (V) Granting Related Relief*, filed contemporaneously herewith.

**Statutory Fees** means all fees and charges assessed against the Estates pursuant to sections 1911 through 1930 of chapter 123 of title 28 of the United States Code, together with the statutory rate of interest set forth in section 3717 of Title 31 of the United States Code, to the extent applicable.

**Stock and Asset Purchase Agreement** means that certain *Stock and Asset Purchase Agreement*, dated as of August 12, 2024, by and among API, the Buyer, and each of the Seller Parties (as defined therein) signatory to that certain *Joinder Agreement*, dated as of August 27, 2024, as amended, restated, supplemented, or otherwise modified from time to time in accordance with the terms thereof, and as approved by the Bankruptcy Court pursuant to the Sale Order.

**Subordinated Claims** means any prepetition Claim against the Debtors that is subject to subordination pursuant to sections 509(c) or 510 of the Bankruptcy Code or otherwise or any Claim for reimbursement, indemnification, or contribution allowed under section 502 of the Bankruptcy Code on account of such Claim.

**Subsidiary Debtor Petition Date** means October 25, 2024.

**Subsidiary Debtors** means Surrey Leasing, Ltd., Avon Americas, Ltd., Avon Component Manufacturing, Inc., Avon, Cosmetics DE, Inc., Avon Holdings LLC, Avon-Lomalinda, Inc., Avon NA Holdings LLC, Avon Overseas Capital Corporation, Avon Pacific, Inc., Avon (Windsor) Limited, California Perfume Company, Inc., Manila Manufacturing Company, Retirement Inns of America, Inc., Silpada Designs LLC, Surrey Products, Inc., and Viva Panama Holdings LLC, as debtors and debtors in possession.

**Talc Claim** means any Claim against one or more of the Debtors, known or unknown, including with respect to any manner of alleged bodily injury, death, sickness, disease, or alleged disease process, emotional distress, fear of cancer, medical monitoring, or any other alleged personal injuries or harms (whether physical, emotional, or otherwise and whether or not diagnosable or manifested before confirmation of the Plan or the close of the Chapter 11 Cases), directly or indirectly arising out of or relating to the presence of or exposure to talc or talc-containing products in connection with the alleged pre-Effective Date acts or omissions of one or more of the Debtors or any other Entity for whose conduct one or more of the Debtors (i) have liability or (ii) are alleged to have liability by reason of a Debtor's direct or indirect ownership or control of, conduct of business, or any transaction with such Entity. Talc Claims shall include any such claims directly or indirectly arising out of or relating to: (a) any products previously processed, milled, manufactured, sold, and/or distributed by a Debtor or by any other Entity for whose conduct a Debtor has liability or is alleged to have liability; (b) any materials present at any premises owned, leased, occupied, or operated by any Entity for whose products, acts, omissions, business, or operations one or more of the Debtors have, or are alleged to have, liability; or (c) any talc in any way connected to a Debtor alleged to contain asbestos or other constituent. Talc Claims include all such claims, whether: (1) in tort, contract, warranty, restitution, conspiracy, contribution, indemnity, guarantee, subrogation, or any other theory of law, equity, or admiralty, whether brought, threatened or pursued in any United States court or court anywhere in the world; (2) seeking compensatory, special, economic, non-economic, punitive, exemplary, administrative, or any other costs, fees, injunctive, or similar relief or any other measure of damages; (3) seeking any legal, equitable, or other relief of any kind whatsoever, including in the nature of alter ego, veil piercing, successor or vicarious liability, mere continuation, fraudulent transfer or conveyance, or conspiracy, and including, for the avoidance of doubt, any claims arising out of or relating to the presence of or exposure to talc or talc-containing products assertable against one or more Debtors; or (4) held by claimants residing within the United States or in a foreign jurisdiction. Talc Claims also include any such claims that have been resolved or are subject to resolution

pursuant to any agreement, or any such claims that are based on a judgment or verdict. "Talc Claim" shall include: (A) all claims, debts, obligations, or liabilities for compensatory damages (such as, without limitation, loss of consortium, medical monitoring, personal or bodily injury, wrongful death, survivorship, proximate, consequential, general, and special damages) and punitive damages and (B) claims of any corporation (as defined in section 101(9) of the Bankruptcy Code), insurer, co-defendant of a Debtor, or predecessor of a Debtor for contribution, reimbursement, subrogation, or indemnity, whether contractual or implied by law (as those terms are defined by applicable non-bankruptcy law of the relevant jurisdiction), and any other derivative Claim of any corporation (as defined in section 101(9) of the Bankruptcy Code), insurer, co-defendant of a Debtor, or predecessor of a Debtor, whether in the nature of or sounding in contract, tort, warranty, or other theory of law. Notwithstanding the foregoing, "Talc Claims" shall not include any claim by any present or former employee of a predecessor or Affiliate of the Debtors for benefits under a policy of workers' compensation insurance or for benefits under any state or federal workers' compensation statute or other statute providing compensation to an employee from an employer.

**Treasury Regulations** means regulations promulgated by the United States Department of the Treasury under the Internal Revenue Code.

**Trust Distribution Procedures** means the *Avon Liquidation Trust Distribution Procedures*, substantially in the form attached hereto as **Exhibit A**.

**Trust Formation Transactions** means one or more transactions pursuant to section 1123(a)(5)(D) of the Bankruptcy Code, including any transactions that may be necessary or appropriate to effectuate the actions described in Sections 5.2 through 5.4 of this Plan, which include (i) the establishment of the Avon Liquidation Trust, (ii) the execution of the Trust Transfer Agreement(s), (iii) the issuance and vesting of the New Parent Interest in the Avon Liquidation Trust, (iv) the assignment and vesting of the ALT Assets in the Avon Liquidation Trust, (v) the creation of the GUC Recovery Fund and the ALT Recovery Fund to make Distributions to holders of Allowed Claims, and (vi) the creation of the ALT Operating Reserve to satisfy and pay ALT Operating Expenses.

**Trust Transfer Agreement(s)** means one or more agreements transferring ALT Assets from the Liquidating Debtors to the Avon Liquidation Trust, which agreements will be entered into between the Liquidating Trustee, on behalf of the Avon Liquidation Trust, and the Liquidating Debtors, on behalf of themselves, and the terms of which shall be consistent with this Plan.

**U.S. Trustee** means the Office of the United States Trustee for the District of Delaware.

**Unimpaired** means, with respect to a Claim, Interest, or Class of Claims or Interests, not "impaired" within the meaning of such term in section 1124 of the Bankruptcy Code.

**Unsecured 2043 Noteholder** means with respect to the Unsecured 2043 Notes Claims, a record holder of, or owners of beneficial interests in, the Unsecured 2043 Notes.

*Unsecured 2043 Notes* means those certain 6.950% Notes due 2043, issued by API under the Unsecured 2043 Notes Indenture.

*Unsecured 2043 Notes Claims* means any Claim on account of, arising under, or relating to, the Unsecured 2043 Notes.

*Unsecured 2043 Notes Documents* means the Unsecured 2043 Notes Indenture, together with all other related documents, instruments, and agreements, in each case as supplemented, amended, restated, or otherwise modified from time to time.

[*Unsecured 2043 Notes Fees and Expenses* means the reasonable, documented fees, expenses, and disbursements of the Bond Trustee (including the reasonable, documented fees, disbursements, and other charges of counsel), incurred in connection with the Unsecured 2043 Notes Documents, the Chapter 11 Cases, or the Plan.][2]

*Unsecured 2043 Notes Indenture* means that certain *Indenture*, dated as of February 27, 2008 (as amended, supplemented, or otherwise modified from time to time), by and between API, as issuer, and Deutsche Bank Trust Company Americas, as trustee.

*Voting Deadline* means the last day for holders of Claims and Interests entitled to vote on the Plan to cast their votes to accept or reject the Plan as may be set by the Bankruptcy Court.

## 1.2    *Interpretation; Application of Definitions; Rules of Construction*.

Unless otherwise specified, all section or exhibit references in this Plan are to the respective section in, or exhibit to, this Plan, as the same may be amended, waived, or modified from time to time in accordance with the terms hereof.  The words "herein," "hereof," or "hereunder," and other words of similar import refer to this Plan as a whole and not to any particular section, subsection, or clause contained therein and have the same meaning as "in this Plan," "of this Plan," and "under this Plan," respectively.  The words "includes" and "including" are not limiting.  The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  For purposes herein: (i) in the appropriate context, each term, whether stated in the singular or plural, shall include both the singular and plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (ii) any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the reference document shall be substantially in that form or substantially on those terms and conditions; (iii) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; and (iv) any term used in capitalized form herein that is not otherwise defined but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.  To the extent that the treatment, allowance, or disallowance of any Claim herein is interpreted as a claim objection, the Plan shall be deemed a Claim objection to such Claim.

---

[2]    Cap on Unsecured 2043 Notes Fees and Expenses to be discussed.

### 1.3 *Reference to Monetary Figures*.

All references in this Plan to monetary figures shall refer to the legal tender of the United States of America unless otherwise expressly provided.

### 1.4 *Controlling Document*.

In the event of an inconsistency between the provisions of this Plan (excluding the Plan Supplement and any other exhibit to this Plan) and the Plan Supplement or any other exhibit to this Plan, the terms of the relevant document in the Plan Supplement or such exhibit shall control unless otherwise specified in such Plan Supplement document or exhibit. In the event of an inconsistency between this Plan and any other instrument or document created or executed pursuant to this Plan, or between this Plan and the Disclosure Statement, this Plan shall control. The provisions of this Plan (excluding the Plan Supplement), the provisions of the Plan Supplement, and the provisions of the Confirmation Order shall be construed in a manner such that provisions of each are consistent with those of the others so as to effectuate the purposes of each to the extent reasonably possible; *provided*, *however*, that if there is determined to be any inconsistency between any provision of this Plan, including any provision of the Plan Supplement, and any provision of the Confirmation Order that cannot be reconciled, then, solely to the extent of such inconsistency, the provisions of the Confirmation Order shall govern, and any such provisions of the Confirmation Order shall be deemed a modification of this Plan and the Plan Supplement, as applicable.

## ARTICLE II    ADMINISTRATIVE EXPENSE CLAIMS, PROFESSIONAL FEE CLAIMS, AND PRIORITY TAX CLAIMS.

### 2.1 *Administrative Expense Claims Bar Date*.

Except as provided for herein or in any order of the Bankruptcy Court, and subject to section 503(b)(1)(D) of the Bankruptcy Code, holders of Administrative Expense Claims (other than Professional Fee Claims and Statutory Fees) must file and serve on the Debtors requests for the payment of such Administrative Expense Claims not already Allowed by a Final Order in accordance with the procedures specified in the Confirmation Order, on or before the Administrative Expense Claims Bar Date or be forever barred, estopped, and enjoined from asserting such Claims against the Debtors or their Assets.

### 2.2 *Allowance of Administrative Expense Claims*.

An Administrative Expense Claim, with respect to which a request for payment has been properly and timely filed pursuant to Section 2.1 of this Plan, shall become an Allowed Administrative Expense Claim if no objection to such request is filed by the Liquidating Trustee with the Bankruptcy Court on or before one-hundred and eighty (180) calendar days after the Effective Date, or on such later date as may be fixed by the Bankruptcy Court. If an objection is timely filed, the Administrative Expense Claim shall become an Allowed Administrative Expense Claim only to the extent Allowed by Final Order or such Claim is settled, compromised, or otherwise resolved by the Liquidating Trustee pursuant to Section 7.6 of this Plan.

### 2.3   *Payment of Allowed Administrative Expense Claims*.

Except to the extent that a holder of an Allowed Administrative Expense Claim (other than a Professional Fee Claim and Statutory Fees) agrees to a different treatment, the holder of such Allowed Administrative Expense Claim shall receive, on account of such Allowed Claim, Cash in an amount equal to the Allowed amount of such Claim from the Priority Reserve within thirty (30) calendar days following the later to occur of (i) the Effective Date and (ii) the date on which such Administrative Expense Claim shall become an Allowed Claim.

### 2.4   *Treatment of Professional Fee Claims*.

(i)     All Professional Persons seeking awards by the Bankruptcy Court for compensation for services rendered or reimbursement of expenses incurred through and including the Effective Date under section 327, 328, 330, 331, 363, 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), or 1103 of the Bankruptcy Code shall file, on or before the date that is forty-five (45) days after the Effective Date, or as soon as reasonably practicable thereafter, their respective applications for final allowances of compensation for services rendered and reimbursement of expenses incurred.  Allowed Professional Fee Claims shall be paid in full, in Cash, from the Professional Fee Escrow Account, in such aggregate amounts as are Allowed by the Bankruptcy Court or authorized to be paid in accordance with the order(s) relating to or allowing any such Professional Fee Claim, (i) upon the later of the Effective Date and the date upon which the order relating to any such Allowed Professional Fee Claim is entered or (ii) upon such other terms and conditions as may be mutually agreed upon between the holder of such an Allowed Professional Fee Claim and the Debtors, the Liquidating Debtors, or the Liquidating Trustee, as applicable.  On or prior to the Effective Date, the Debtors, the Liquidating Debtors, or the Liquidating Trustee, as applicable, shall establish the Professional Fee Escrow Account and, on the Effective Date, fund the Professional Fee Escrow Account with Cash in an amount equal to the sum of each Professional Person's reasonable and good faith estimates of its Professional Fee Claims.  No later than ten (10) calendar days prior to the Effective Date, holders of Professional Fee Claims shall provide a reasonable and good faith estimate of unpaid Professional Fee Claims incurred in rendering services before the Effective Date to the Debtors.  If a holder of a Professional Fee Claim does not provide an estimate, the Debtors, the Liquidating Debtors, or the Liquidating Trustee, as applicable, may estimate the unpaid and unbilled reasonable and necessary fees and out-of-pocket expenses of such holder of a Professional Fee Claim.  The procedures for filing objections to Professional Persons' applications for final allowance of compensation for services rendered and expenses incurred shall be set forth in the Confirmation Order.

(ii)     On the date the Avon Liquidation Trust is established or as soon as reasonably practicable thereafter, the Debtors will cause title to the Professional Fee Escrow Account to be transferred to the Avon Liquidation Trust.  Funds held in the Professional Fee Escrow Account shall not be considered property of the Debtors' Estates, the Liquidating Debtors, or the Avon Liquidation Trust, and shall only be used for payment of Allowed Professional Fee Claims; *provided*, *however*, that after all Professional Fee Claims Allowed by the Bankruptcy Court and other amounts authorized to be paid pursuant to <u>Section 2.4(iii)</u> of this Plan have been irrevocably paid in full and no Professional Person is asserting or entitled to assert additional Professional Fee Claims or such other amounts from the Professional Fee Escrow Account, then any amounts remaining in the Professional Fee Escrow Account shall become Post-Effective Date

Available Cash.  The Professional Fee Escrow Account shall be held in trust for Professional Persons retained by the Debtors and the Creditors' Committee and for no other parties until all Professional Fee Claims Allowed by the Bankruptcy Court have been paid in full and no Professional Person is asserting or entitled to assert additional Professional Fee Claims.  Fees owing to Professional Persons shall be paid in Cash to such Professional Persons from funds held in the Professional Fee Escrow Account when such Claims are Allowed by an order of the Bankruptcy Court, or authorized to be paid under the Interim Compensation Order or other order authorizing the retention of a Professional Person; *provided*, *however*, that the Debtors' and the Liquidating Debtors' obligations with respect to Professional Fee Claims, which shall be assumed by the Avon Liquidation Trust on or as soon as reasonably practicable after the date upon which the Avon Liquidation Trust is established, shall not be limited by, nor deemed limited to, the balance of funds held in the Professional Fee Escrow Account.  To the extent that funds held in the Professional Fee Escrow Account are insufficient to satisfy the amount of accrued Allowed Professional Fee Claims owing to any Professional Person, such Professional Person shall have an Allowed Administrative Expense Claim for any such deficiency, which shall be satisfied in accordance with Section 2.3 of this Plan (but, for the avoidance of doubt, shall not be subject to any Administrative Expense Claims Bar Date).  No Claims, Interests, Liens, other encumbrances, or liabilities of any kind shall encumber the Professional Fee Escrow Account in any way.  Notwithstanding the foregoing, Professional Persons performing services on behalf of the Debtors or the Creditors' Committees following the Effective Date in connection with the preparation of, or objection to, fee applications (or, in the case of the Creditors' Committee, with respect to any services listed in Section 12.15 of this Plan), are entitled to payment of reasonable fees and reimbursement of reasonable expenses related to such work.

(iii)  Solely with respect to the last sentence of Section 2.4(ii) of this Plan, any such Professional Person may, at such Professional Person's option, seek compensation for such fees and expenses either (a) in its final fee application and be paid from the Professional Fee Escrow Account pursuant to a Final Order approving such fee application or (b) by submitting invoices to the Liquidating Trustee for payment, and any undisputed invoices shall be paid in the ordinary course of business and without further order of the Bankruptcy Court.

## 2.5     *Treatment of Priority Tax Claims*.

Except to the extent that a holder of an Allowed Priority Tax Claim agrees to a different treatment, on the Effective Date or as soon as reasonably practicable thereafter, the holder of such Allowed Priority Tax Claim shall receive, on account of such Allowed Priority Tax Claim, either Cash in an amount equal to the Allowed amount of such Claim from the Priority Reserve or such other treatment as may satisfy section 1129(a)(9) of the Bankruptcy Code.

## ARTICLE III     CLASSIFICATION OF CLAIMS AND INTERESTS.

### 3.1     *Classification in General*.

A Claim or Interest is placed in a particular Class for all purposes, including voting, confirmation, and Distributions under this Plan and under sections 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or Interest is classified in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent such Claim or Interest qualifies

within the description of that Class and is classified in other Classes to the extent any portion of the Claim or Interest qualifies within the description of such other Classes. A Claim or Interest is also classified in a particular Class for the purpose of receiving Distributions hereunder only to the extent such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and such Claim or Interest has not been satisfied, released, or otherwise settled prior to the Effective Date. In no event shall any holder of an Allowed Claim be entitled to receive payments under this Plan that, in the aggregate, exceed the Allowed amount of such holder's Claim.

### 3.2      *Grouping of Debtors for Convenience Only*

The Plan groups the Debtors together solely for the purpose of describing treatment under the Plan, confirmation of the Plan, and making distributions in accordance with the Plan in respect of Claims against and Interests in the Debtors under the Plan. Such groupings shall not affect any Debtor's status as a separate legal Entity, result in substantive consolidation of any Estates, change the organizational structure of the Debtors' business enterprise, constitute a change of control of any Debtor for any purpose, cause a merger or consolidation of any legal Entities, or cause the transfer of any assets.

### 3.3      *Summary of Classification of Claims and Interests*.

The following table designates the Classes of Claims against, and Interests in, the Debtors and specifies which Classes are (i) Impaired and Unimpaired under this Plan, (ii) entitled to vote to accept or reject this Plan in accordance with section 1126 of the Bankruptcy Code, and (iii) deemed to accept or reject this Plan. In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Expense Claims and Priority Tax Claims have not been classified. The classification of Claims and Interests set forth herein shall apply separately to each of the Debtors. All of the potential Classes for the Debtors are set forth herein. Certain of the Debtors may not have holders of Claims or Interests in a particular Class or Classes that are Allowed in an amount greater than zero for voting purposes or otherwise included to determine acceptance of the Plan, and such Class(es) shall be treated as set forth in Section 3.4 of this Plan.

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 1 (All Debtors) | Other Priority Claims | Unimpaired | No (Presumed to Accept) |
| Class 2 (All Debtors) | Secured Claims | Unimpaired | No (Presumed to Accept) |
| Class 3 (All Debtors) | General Unsecured Claims | Impaired | Yes |
| Class 4 (API) | Talc Claims | Impaired | Yes |
| Class 5 (All Debtors) | Subordinated Claims | Impaired | No (Deemed to Reject) |
| Class 6 (All Debtors) | Intercompany Claims | Unimpaired / Impaired | No (Presumed to Accept / Deemed to Reject) |

22

| Class | Type of Claim or Interest | Impairment | Entitled to Vote |
|---|---|---|---|
| Class 7<br>(All Debtors Other than API) | Intercompany Interests | Unimpaired | No (Presumed to Accept) |
| Class 8<br>(API) | Parent Interests | Impaired | No (Deemed to Reject) |

### 3.4 *Elimination of Vacant Classes*.

Any Class that, as of the commencement of the Confirmation Hearing, does not have at least one holder of a Claim or Interest, as applicable, that is Allowed in an amount greater than zero for voting purposes or otherwise included to determine acceptance of the Plan, shall be considered vacant, deemed eliminated from this Plan for purposes of voting to accept or reject this Plan, and disregarded for purposes of determining whether this Plan satisfies sections 1129(a)(8) and 1129(a)(10) of the Bankruptcy Code with respect to such Class.

### 3.5 *Voting Classes; Presumed Acceptance by Non-Voting Classes*.

With respect to each Debtor, if a Class contained Claims eligible to vote and no holder of Claims eligible to vote in such Class votes to accept or reject this Plan by the Voting Deadline, this Plan shall be presumed accepted by the holders of such Claims in such Class.

### 3.6 *Voting; Presumptions; Solicitation*.

(i) **Acceptance by Certain Impaired Classes**. Only holders of Claims in Class 3 and Class 4 are entitled to vote to accept or reject this Plan. An Impaired Class of Claims shall have accepted this Plan if (a) the holders of at least two-thirds (2/3) in amount of Claims actually voting in such Class have voted to accept this Plan and (b) the holders of more than one-half (1/2) in number of the Claims actually voting in such Class have voted to accept this Plan. Holders of Claims in Class 3 and Class 4 shall receive ballots containing detailed voting instructions.

(ii) **Deemed Acceptance by Unimpaired Classes**. Holders of Claims in Class 1, Class 2, Class 6 (if so treated), and Class 7 are conclusively presumed to have accepted this Plan pursuant to section 1126(f) of the Bankruptcy Code. Accordingly, such holders are not entitled to vote to accept or reject this Plan.

(iii) **Deemed Rejection by Certain Impaired Classes**. Holders of Claims and Interests in Class 5, Class 6 (if so treated), and Class 8 are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code. Accordingly, such holders are not entitled to vote to accept or reject this Plan.

(iv) **Individual Creditor Voting Rights**. Notwithstanding anything to the contrary in this Plan, the voting rights of holders of Claims in any Class shall be governed in all respects by the Solicitation Procedures Order. Each Talc Claim in Class 4 shall be fixed in the amount designated in the Solicitation Procedures Order, solely for voting purposes and not for allowance or Distribution purposes.

### 3.7 *Cramdown*.

If any Class of Claims is deemed to reject this Plan or is entitled to vote on this Plan and does not vote to accept this Plan, the Debtors may (i) seek confirmation of this Plan under section 1129(b) of the Bankruptcy Code or (ii) amend or modify this Plan in accordance with the terms hereof and the Bankruptcy Code. If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

### 3.8 *No Waiver*.

Nothing contained in this Plan shall be construed to waive a Debtor's or other Person's right to object on any basis to any Claim.

## ARTICLE IV    TREATMENT OF CLAIMS AND INTERESTS.

### 4.1 *Class 1: Other Priority Claims (All Debtors)*

(i) Treatment: The legal, equitable, and contractual rights of holders of Other Priority Claims are unaltered by this Plan. Except to the extent that a holder of an Allowed Other Priority Claim agrees to different treatment, on the Effective Date or as soon as reasonably practicable thereafter, each holder of an Allowed Other Priority Claim shall receive, on account of such Allowed Claim, (a) payment in full in Cash from the Priority Reserve or (b) such other treatment consistent with the provisions of section 1129(a)(9) of the Bankruptcy Code.

(ii) Impairment and Voting: Other Priority Claims are Unimpaired. Holders of Other Priority Claims are conclusively presumed to accept this Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, holders of Other Priority Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Other Priority Claims.

### 4.2 *Class 2: Secured Claims (All Debtors)*

(i) Classification: Class 2 consists of Secured Claims against the Debtors. To the extent that Secured Claims are secured by different collateral or different interests in the same collateral, such Claims shall be treated as separate subclasses of Class 2.

(ii) Treatment: The legal, equitable, and contractual rights of holders of Secured Claims are unaltered by this Plan. Except to the extent that a holder of an Allowed Secured Claim agrees to different treatment, on the later of the Effective Date and the date that is thirty (30) calendar days after the date such Secured Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter, each holder of an Allowed Secured Claim shall receive, on account of such Allowed Claim, (a) payment in full in Cash in accordance with section 506(a) of the Bankruptcy Code from the Priority Reserve, (b) the collateral securing its Allowed Secured Claim, or (c) such other treatment so as to render such holder's Allowed Secured Claim Unimpaired.

(iii)    Impairment and Voting: Secured Claims are Unimpaired.  Holders of Secured Claims are conclusively presumed to accept this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Secured Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Secured Claims.

### 4.3    *Class 3: General Unsecured Claims (All Debtors)*

(i)    Allowance: Unless otherwise Allowed or Disallowed as of the Effective Date, each General Unsecured Claim shall be Allowed or Disallowed pursuant to Article VII of this Plan; *provided*, *however*, that on the Effective Date, the Unsecured 2043 Notes Claims shall be Allowed in the total aggregate amount of $22,653,502.40.

(ii)    Treatment: Except to the extent that a holder of an Allowed General Unsecured Claim agrees to different treatment, in full and final satisfaction, settlement, release of, and in exchange for, such Allowed General Unsecured Claim, on the later of the Effective Date and the date that is thirty (30) calendar days after the date such General Unsecured Claim becomes an Allowed Claim, or as soon as reasonably practicable thereafter, each holder of an Allowed General Unsecured Claim shall receive such holder's Pro Rata share of the GUC Recovery Fund, unless such holder elects on a timely received ballot to have its claim treated as an Electing General Unsecured Claim, forgo its recovery from the GUC Recovery Fund, and instead receive such holder's share of the ALT Recovery Fund in accordance with the Trust Distribution Procedures.  For the avoidance of doubt, any holder of an Allowed General Unsecured Claim that fails to make an election on a timely submitted ballot to have its claim treated as an Electing General Unsecured Claim shall have its claim treated as a Non-Electing General Unsecured Claim and receive such holder's Pro Rata share of the GUC Recovery Fund.

(iii)    Impairment and Voting: General Unsecured Claims are Impaired. Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

### 4.4    *Class 4: Talc Claims (All Debtors)*

(i)    Allowance: Unless otherwise Allowed or Disallowed as of the Effective Date, to the extent permitted by the Bankruptcy Code, each Talc Claim shall be Allowed or Disallowed pursuant to the Trust Distribution Procedures.

(ii)    Treatment: Pursuant to this Plan and the Trust Distribution Procedures, on the Effective Date, liability for all Talc Claims shall be permanently assumed by the Avon Liquidation Trust without further act or deed and shall be resolved in accordance with the Trust Distribution Procedures.  Except to the extent that a holder of an Allowed Talc Claim agrees to different treatment, in full and final satisfaction, settlement, release of, and exchange for an Allowed Talc Claim, each such holder shall receive, from the Avon Liquidation Trust, such holder's share of the ALT Recovery Fund in accordance with the Trust Distribution Procedures.

(iii)    Impairment and Voting: Talc Claims are Impaired.  Holders of Talc Claims are entitled to vote to accept or reject the Plan.

**4.5**     *Class 5: Subordinated Claims (All Debtors)*

(i)     Treatment: Subordinated Claims are subordinated pursuant to this Plan and section 510 of the Bankruptcy Code.  Subordinated Claims shall be deemed expunged, released, and extinguished without further action by or order of the Bankruptcy Court, and shall be of no further force or effect.

(ii)     Impairment and Voting: Subordinated Claims are Impaired. Holders of Subordinated Claims are deemed to have rejected this Plan pursuant to section 1126(g) of the Bankruptcy Code.  Therefore, holders of Subordinated Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Subordinated Claims.

**4.6**     *Class 6: Intercompany Claims (All Debtors)*

(i)     Treatment: On or after the Effective Date, all Intercompany Claims shall be either reinstated or cancelled and released at the option of the Debtors or the Liquidating Debtors, as applicable, or otherwise treated as determined by the Liquidating Trustee; *provided*, *however*, that no Distributions shall be made on account of such Intercompany Claims on the Effective Date.

(ii)     Impairment and Voting: Intercompany Claims are either (a) Unimpaired and such holders are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code or (b) Impaired and such holders are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.  Holders of Intercompany Claims are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Claims.

**4.7**     *Class 7: Intercompany Interests (All Debtors Other than API)*

(i)     Treatment: On the Effective Date, Intercompany Interests shall receive no recovery or distribution and be reinstated solely to maintain the Debtors' corporate structure and facilitate the orderly administration of the winding up and dissolution of the Debtors, as necessary.

(ii)     Impairment and Voting: Intercompany Interests are Unimpaired. Holders of Intercompany Interests are conclusively presumed to accept this Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, holders of Intercompany Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Intercompany Interests.

**4.8**     *Class 8: Parent Interests (API)*

(i)     Treatment: As of the Effective Date, (a) all Parent Interests shall be cancelled and shall be of no further force or effect and (b) the New Parent Interest shall be issued to the Avon Liquidation Trust, in each case without further action by any Person or order of the Bankruptcy Court.  From and after the Effective Date, the Avon Liquidation Trust shall own the New Parent Interest solely for purposes of facilitating the orderly administration of the winding

up and dissolution of Liquidating API and the other Liquidating Debtors. Holders of Parent Interests shall not receive or retain any property or Distributions under this Plan on account of such Interests.

(ii)   Impairment and Voting: Parent Interests are Impaired. Holders of Parent Interests are deemed to reject this Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, holders of Parent Interests are not entitled to vote to accept or reject the Plan, and the votes of such holders will not be solicited with respect to such Parent Interests.

### 4.9   *Debtors' Rights with Respect to Unimpaired Claims*.

Except as otherwise provided in this Plan, nothing under the Plan shall affect the rights of the Liquidating Debtors or the Liquidating Trustee with respect to an Unimpaired Claim, including all rights with respect to legal and equitable defenses to, or setoffs or recoupments against, any such Unimpaired Claims.

### 4.10   *Treatment of Vacant Classes*.

Any Claim or Interest in a Class that is considered vacant under Section 3.4 of this Plan shall receive no Distribution.

## ARTICLE V   MEANS FOR IMPLEMENTATION.

### 5.1   *No Substantive Consolidation*.

The Plan is being proposed as a joint plan of liquidation of the Debtors for administrative purposes only and constitutes a separate chapter 11 plan for each Debtor. The Plan is not premised on, and does not provide for, the substantive consolidation of the Debtors with respect to the Classes of Claims or Interests set forth in the Plan, or otherwise.

### 5.2   *Cancellation of Notes, Interests, Instruments, Certificates, and Other Documents*.

Except as otherwise provided herein, on and after the Effective Date, all Interests and all notes, instruments, certificates, agreements, indentures, mortgages, security documents, and other documents evidencing Claims against or Interests in the Debtors or obligations of the Debtors thereunder or in any way related to the foregoing, including the Natura Secured Credit Documents, the Natura Unsecured Promissory Note, and the Unsecured 2043 Notes Documents, shall be deemed cancelled, satisfied in full, surrendered and of no further force and effect without any need for further action or approval of the Bankruptcy Court; *provided, however*, that the Unsecured 2043 Notes Documents shall continue solely to (i) preserve the Bond Trustee's rights thereunder (including, without limitation, its rights to assert, pursue, and be paid with respect to any lien, expense reimbursement, indemnification or similar amounts) and (ii) permit the Unsecured 2043 Noteholders to receive their Distributions. Upon the Effective Date, the obligations of the Bond Trustee under the Unsecured 2043 Notes Documents shall be discharged and its duties thereunder shall be deemed fully satisfied, except to the extent necessary to facilitate the Distribution provided in the Plan to Unsecured 2043 Noteholders. For the avoidance of doubt, nothing contained in the Plan or the Confirmation Order shall in any way limit

or affect the standing of the Bond Trustee to appear and be heard in the Chapter 11 Cases on and after the Effective Date.

### 5.3    *Liquidating Trustee.*

(i)    **Appointment and Role of Liquidating Trustee**.    The Liquidating Trustee will be selected by the Debtors [with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld, delayed, or conditioned.]  The appointment of the Liquidating Trustee shall be approved in the Confirmation Order, and such appointment shall be effective as of the Effective Date, except to the extent set forth in the applicable ALT Documents.  In accordance with the ALT Documents, and in furtherance of and consistent with the purposes of the Avon Liquidation Trust and this Plan, the Liquidating Trustee shall have the power and authority to act as trustee of the Avon Liquidation Trust and, subject to the oversight of the ALT Board, perform the Authorized Acts through the earlier of (a) the ALT Termination Date and (b) the date such Liquidating Trustee resigns, is terminated, or is otherwise unable to serve for any reason, as determined by the Liquidating Trustee.

(ii)    **Liquidating Trustee's Tax Power for Debtors**.  Subject to the Sale Order and the Stock and Asset Purchase Agreement, the Liquidating Trustee, in its capacity as the trustee of the Avon Liquidation Trust, shall have full and exclusive authority and responsibility with respect to all taxes of the Debtors (including as the common parent or other agent of any consolidated, combined, or unitary tax group of which the Debtors were the agent), other than any such taxes that are "Assumed Liabilities" under the Stock and Asset Purchase Agreement, to the same extent as if the Liquidating Trustee were the debtor-in-possession. Without limiting the foregoing, each of the Debtors shall execute, on or prior to the Effective Date, a power of attorney authorizing the Liquidating Trustee, in its capacity as the trustee of the Avon Liquidation Trust, to correspond with any taxing authority on behalf of such Debtor and to sign, collect, negotiate, settle, and administer tax payments and tax returns.  In furtherance of the foregoing:

(a)    Following the Effective Date, the Liquidating Trustee shall prepare and file (or cause to be prepared and filed), on behalf of the Debtors, all tax returns required to be filed or that the Liquidating Trustee otherwise deems appropriate, including the filing of amended tax returns or requests for refunds for all taxable periods.

(b)    Subject to the Sale Order and the Stock and Asset Purchase Agreement, the Avon Liquidation Trust shall be entitled to all tax refunds of the Debtors (other than such refunds in respect of any taxes that are "Assumed Liabilities" under the Stock and Asset Purchase Agreement), and the Avon Liquidation Trust shall bear responsibility for all tax liabilities of the Debtors for all taxable years, to the extent not assumed by Natura pursuant to the Sale Order and the Stock and Asset Purchase Agreement or satisfied or otherwise released by the Plan.

(iii)    **Boards of Directors and Officers**.    Upon the Effective Date: (a) the officers and directors of the Debtors existing prior to the Effective Date shall be removed and relieved of any and all duties with respect to the Debtors without any further action and without the need to obtain any approvals, authorizations, or consents; (b) the Liquidating Trustee shall be the sole officer, director, or manager, as applicable, of each of the Debtors without any further action and without the need to obtain any approvals, authorizations, or consents; and (c) the charters, by-laws, and other organizational documents of the Debtors shall be deemed amended to give effect to subsections (a) and (b) of this Section 5.3(iii) of the Plan.

(iv)    **Retention of Professionals by Liquidating Trustee**.    The Liquidating Trustee may retain and reasonably compensate counsel and other professionals, including any counsel or professional who represented parties in interest in the Chapter 11 Cases, to assist in its duties as Liquidating Trustee on such terms as the Liquidating Trustee deems appropriate without Bankruptcy Court approval, subject to the provisions of the ALT Documents. All fees and expenses incurred in connection with the foregoing shall be payable from the ALT Operating Reserve, subject to the terms of the ALT Documents.

(v)    **Claim Determination**.    In furtherance of, and consistent with, the purpose of the Avon Liquidation Trust and this Plan, the Liquidating Trustee shall have the power and authority to determine the eligibility, amount, and allowance of Talc Claims pursuant to this Plan and the Trust Distribution Procedures, as applicable.    The Liquidating Trustee's determination of eligibility, amount, and allowance of each Talc Claim shall be final and binding, and shall not be subject to any challenge or review of any kind, by any court or other person or entity, except as set forth in this Plan and the Trust Distribution Procedures, as applicable.    The allowance of General Unsecured Claims shall be determined according to Article VII of this Plan.

5.4    *Avon Liquidation Trust*.

(i)    **Establishment of Avon Liquidation Trust**.    On or before the Effective Date, the Debtors, the Liquidating Debtors, and the Liquidating Trustee, as applicable, shall take all necessary steps to establish the Avon Liquidation Trust for the benefit of holders of General Unsecured Claims and Talc Claims.  The Avon Liquidation Trust shall be established on the Effective Date upon the execution of the ALT Agreement by the parties thereto.

(ii)    **Purpose of Avon Liquidation Trust**.    The Avon Liquidation Trust shall be established for the purposes described in this Plan in accordance with Treasury Regulations Section 301.7701-4(d), including to allow the Liquidating Trustee to carry out the Authorized Acts.  The Avon Liquidation Trust shall retain all rights to commence and pursue all Retained Causes of Action.  The Avon Liquidation Trust shall have no objective to continue or engage in the conduct of a trade or business.

The Avon Liquidation Trust shall administer, process, settle, resolve, liquidate, satisfy, and pay (from the designated fund therefor), as applicable, Claims against the Debtors, subject to the terms of the ALT Documents, this Plan, and the Confirmation Order.  The Avon Liquidation Trust shall be administered and implemented by the Liquidating Trustee with the oversight of the ALT Board as provided in the ALT Documents; *provided, however*, that, for the avoidance of doubt, the approval of the ALT Board shall be required for the Liquidating

29

Trustee to (a) enter into any Insurance Settlement Agreement and (b) settle any dispute regarding the Insurance Rights or Retained Causes of Action; *provided*, *further*, that notwithstanding the foregoing, the Liquidating Trustee shall have the exclusive authority to reconcile General Unsecured Claims and Talc Claims and determine and make Distributions on account thereof, pursuant to the Plan and the Trust Distribution Procedures, as applicable, without the approval of the ALT Board.

For the avoidance of doubt, the Avon Liquidation Trust, in its capacity as the assignee of the "Seller Parties" under the Stock and Asset Purchase Agreement, shall be bound by the terms and provisions of the Stock and Asset Purchase Agreement to the same extent as the "Seller Parties" are bound, including such terms and provisions relating to the "Deferred Closing" of each "Deferred Entity" under the Stock and Asset Purchase Agreement.

(iii)    **Transfer of ALT Assets to Avon Liquidation Trust**.  On the Effective Date, the ALT Assets will be transferred to and vest in the Avon Liquidation Trust in accordance with the terms set forth herein (including Section 5.4(iv) below) and the ALT Documents; *provided*, *however*, that to the extent certain ALT Assets cannot be transferred to, vested in, and assumed by the Avon Liquidation Trust on such date or otherwise are not available to be so transferred until after such date, such Assets shall be automatically, and without further act or deed by any Person or Entity, transferred to, vested in, or assumed by the Avon Liquidation Trust as soon as reasonably practicable after such date.  Notwithstanding anything in this Plan to the contrary, no ALT Asset shall be used for any purpose other than as contemplated by, and in accordance with, the Plan and the ALT Documents.  Such transfer of the ALT Assets shall be free and clear of all Claims, Interests, Liens, other encumbrances, and liabilities of any kind.

(iv)    **Insurance Rights Transfer**.  In furtherance of the purpose of the Avon Liquidation Trust:

(a)    On the Effective Date, the Liquidating Debtors shall irrevocably transfer, grant, and assign to the Avon Liquidation Trust, and the Avon Liquidation Trust shall receive and accept the Debtors' Insurance Rights.

(b)    The Insurance Rights Transfer is made free and clear of all Claims, Liens, encumbrances, or Causes of Action of any nature whatsoever, except available limits of liability for coverage of certain types of Claims under one or more Insurance Policies that may have been reduced by certain prepetition payments made by an Insurance Company to, or on behalf of, one or more of the Debtors.

(c)    The Avon Liquidation Trust shall satisfy, to the extent required under applicable law, any premiums, deductibles, or self-insured retentions, and any other amounts arising in any way out of the receipt of any payment from any Insurance Company and in connection with any Allowed

General Unsecured Claims and Allowed Talc Claims under any Insurance Policy.

(d)     The Insurance Rights Transfer is made to the maximum extent possible under applicable law.

(e)     The Insurance Rights Transfer is absolute and does not require any further action by the Debtors, the Liquidating Debtors, the Avon Liquidation Trust, the Bankruptcy Court, or any other Entity.

(f)     The Insurance Rights Transfer shall be governed by, and construed in accordance with, the Bankruptcy Code and the other applicable laws governing the Insurance Policies.

(v)     **Funding of ALT Operating Reserve**.  The Debtors or the Liquidating Debtors, as applicable, shall transfer (a) on the Effective Date or, as soon as practicable thereafter, Cash in the amount of the ALT Operating Reserve Cash Amount and (b) on or after the Effective Date, the Remaining Rabbi Trust Receivable Proceeds, in each case to an account of the Avon Liquidation Trust to fund the ALT Operating Reserve.  The Liquidating Trustee shall, in the name of the Avon Liquidation Trust, establish a separate account for the ALT Operating Reserve. Periodically, until the ALT Termination Date, the Liquidating Trustee will replenish the ALT Operating Reserve in accordance with Section 5.10 of this Plan to the extent deemed necessary by the Liquidating Trustee to satisfy and pay estimated future ALT Operating Expenses.

(vi)     **Administrative Obligations and Assumption of Liabilities**.  In furtherance of the purposes of the Avon Liquidation Trust, and subject to the ALT Documents, the Avon Liquidation Trust shall expressly (a) assume all responsibility and liability for all (1) Professional Fee Claims, (2) Administrative Expense Claims, Secured Claims, and Priority Claims, (3) Non-Electing General Unsecured Claims, (4) Electing General Unsecured Claims and Talc Claims, and (5) ALT Operating Expenses, and (b) undertake to administer and pay the foregoing with funds designated to (1) the Professional Fee Escrow Account, (2) the Priority Reserve, (3) the GUC Recovery Fund, (4) the ALT Recovery Fund, and (5) the ALT Operating Reserve, respectively.  In addition, the Avon Liquidation Trust shall, as of the Effective Date, assume sole and exclusive responsibility and liability for all liabilities of the Liquidating Debtors arising after the Effective Date, and such liabilities shall be liquidated, resolved, or paid by the Avon Liquidation Trust from the ALT Operating Reserve.  The Avon Liquidation Trust shall have all defenses, cross-claims, offsets, and recoupments regarding Claims or post-Effective Date liabilities that the Debtors or the Liquidating Debtors have, or would have had, under applicable law; *provided*, *however*, that no such claims, defenses, or rights may be asserted against the Debtors or the Liquidating Debtors.

(vii)     **Payment to Holders of Talc Claims**.  Talc Claims will be administered and liquidated pursuant to the Plan and the Trust Distribution Procedures, as applicable.  After such Claims are Allowed by the Liquidating Trustee, the Liquidating Trustee shall make Distributions to each holder of an Allowed Talc Claim from the ALT Recovery Fund, at such time as determined by the Liquidating Trustee in its sole discretion, in accordance with the

treatments set forth in this Plan and the Trust Distribution Procedures. Distributions from the ALT Recovery Fund shall be the sole source of recovery for holders of Allowed Talc Claims on account of such Claims, and no holder of a Talc Claim shall have any further recourse from the Avon Liquidation Trust, the Debtors, the Liquidating Debtors, or their Estates.

(viii) **ALT Board**. The composition of the ALT Board will be set forth in the Plan Supplement. The ALT Board shall have three (3) members, initially selected by the Debtors [with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld, delayed, or conditioned,] by the Plan Supplement Filing Deadline and, thereafter, pursuant to the ALT Documents.

The ALT Board shall have such rights and powers relating to the supervision of the Avon Liquidation Trust as set forth in the ALT Documents, which rights and powers shall include consent rights over (a) any Insurance Settlement Agreement and (b) any settlement of Retained Causes of Action.

(ix) **Reporting to ALT Board**. To the extent reasonably requested by the ALT Board, the Liquidating Trustee shall provide the following reporting to the ALT Board: (a) the status of the claims reconciliation process; (b) the determination and any re-determination, as applicable, of the total amounts of Cash in each of the Priority Reserve, the GUC Recovery Fund, the ALT Recovery Fund, and the ALT Operating Reserve; and (c) such other reasonable information supporting the determinations and re-determination, as applicable, described in subsection (b).

(x) **Institution and Maintenance of Legal and Other Proceedings**. As of the Effective Date, the Avon Liquidation Trust shall be empowered to initiate, prosecute, defend, and resolve all legal actions and other proceedings related to any ALT Asset or liability of the Avon Liquidation Trust. The Avon Liquidation Trust shall be empowered to initiate, prosecute, defend, and resolve all such actions in the name of the Debtors or the Liquidating Debtors, as applicable, if deemed necessary or appropriate by the Liquidating Trustee. The Avon Liquidation Trust shall be responsible for the payment of all damages, awards, judgments, settlements, expenses, costs, fees, and other charges incurred subsequent to the Effective Date arising from, or associated with, any legal action or other proceeding brought pursuant to this Section 5.4 of the Plan and shall pay or reimburse all deductibles, retrospective premium adjustments, or other charges which may arise from the receipt of any Insurance Proceeds by the Avon Liquidation Trust (to the extent required under applicable law and the Insurance Policies). For the avoidance of doubt, the Avon Liquidation Trust, pursuant to section 1123(b)(3)(B) of the Bankruptcy Code and applicable state corporate law, is appointed as the successor-in-interest to, and representative of, the Debtors and their Estates for the retention, enforcement, settlement, or adjustment of all Claims, including General Unsecured Claims and Talc Claims.

(xi) **GUC Administration Completion Date**. Upon the GUC Administration Completion Date, (a) any Cash remaining in the GUC Recovery Fund (which, for the avoidance of doubt, shall equal the portion of the GUC Recovery Fund allocable to Allowed Electing General Unsecured Claims on a Pro Rata basis) shall be deemed Post-Effective Date Available Cash and (b) the GUC Recovery Fund shall be dissolved.

(xii) **Dissolution**.  The Avon Liquidation Trust shall be dissolved, and the Liquidating Trustee and the ALT Board shall be discharged from their duties with respect to the Avon Liquidation Trust, on the ALT Termination Date, upon completion of their duties as set forth in this Plan and the ALT Documents.  For the avoidance of doubt, the ALT Termination Date shall be no earlier than the GUC Administration Completion Date and the date on which (a) all Disputed Talc Claims have been resolved, (b) all ALT Assets have been liquidated, and (c) all Distributions from the Avon Liquidation Trust required to be made by the Liquidating Trustee under the Plan and the ALT Documents have been made, unless dissolution on an earlier date is authorized pursuant to a Final Order of the Bankruptcy Court.  Upon the ALT Termination Date, any Cash remaining in the ALT Operating Reserve shall be allocated to the ALT Recovery Fund, and any Cash remaining in the ALT Recovery Fund shall be distributed to holders of Allowed Talc Claims and Allowed Electing General Unsecured Claims in accordance with the Plan and the Trust Distribution Procedures.

(xiii) **United States Federal Income Tax Treatment of Avon Liquidation Trust**.  In furtherance of this <u>Section 5.4</u> of the Plan: (a) the Avon Liquidation Trust shall be structured to qualify as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d) and in compliance with Revenue Procedure 94-45, 1994-2 C.B. 684 and, thus, as a "grantor trust" within the meaning of sections 671 through 679 of the Internal Revenue Code to the holders of beneficial interests in the Avon Liquidation Trust, consistent with the terms of the Plan; (b) the sole purpose of the Avon Liquidation Trust shall be the liquidation and distribution of the ALT Assets in accordance with Treasury Regulation Section 301.7701-4(d), including the resolution of Claims in accordance with this Plan, with no objective to continue or engage in the conduct of a trade or business; (c) all parties (including the Debtors, their Estates, the Liquidating Debtors, holders of beneficial interests in the Avon Liquidation Trust, and the Liquidating Trustee) shall report consistently with such treatment (including the deemed receipt of the underlying assets, subject to applicable liabilities and obligations, by the holders of beneficial interests in the Avon Liquidation Trust, followed by the deemed transfer of such Assets to the Avon Liquidation Trust); (d) all parties shall report consistently with the valuation of the ALT Assets transferred to the Avon Liquidation Trust as determined by the Liquidating Trustee (or its designee); (e) the Liquidating Trustee shall be responsible for filing returns for the Avon Liquidation Trust as a grantor trust pursuant to Treasury Regulation Section 1.671-4(a); and (f) the Liquidating Trustee shall annually send to each holder of beneficial interests in the Avon Liquidation Trust a separate statement regarding the receipts and expenditures of the Avon Liquidation Trust as relevant for United States federal income tax purposes.

(xiv) Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary (including the receipt by the Liquidating Trustee of a private letter ruling if the Liquidating Trustee so requests one, or the receipt of an adverse determination by the IRS upon audit if not contested by the Liquidating Trustee), the Liquidating Trustee may (a) timely elect to treat any portion of the Avon Liquidation Trust allocable to Disputed Claims as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9 (and make any appropriate elections), (b) file such tax returns (including the filing of a separate federal tax return for the "disputed ownership fund") and pay such taxes as may be required consistent with such treatment, and (c) to the extent permitted by applicable law, report consistently with the foregoing for state and local income tax purposes.  If a "disputed ownership fund" election is made, all parties (including the Debtors, their Estates, the Liquidating Debtors, holders of beneficial interests in the

Avon Liquidation Trust, and the Liquidating Trustee) shall report for United States federal, state, and local income tax purposes consistently with the foregoing. The Liquidating Trustee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all returns filed for or on behalf of the Avon Liquidation Trust for all taxable periods through the date on which final distributions are made.

(xv)   The ALT Recovery Fund is intended to be treated, and shall be reported, as a "qualified settlement fund" for United States federal income tax purposes and shall be treated consistently for state and local tax purposes, to the extent applicable. Notwithstanding the preceding paragraphs, in addition to the ALT Recovery Fund, all or part of the Avon Liquidation Trust may be treated (now or in the future) as a "qualified settlement fund" within the meaning of, and as required by, Treasury Regulation Section 1.468B-1. If the Avon Liquidation Trust or any portion thereof is treated as a qualified settlement fund, it shall be treated consistently for state and local tax purposes, to the extent applicable and the Liquidating Trustee and all holders of beneficial interests in the Avon Liquidation Trust shall report consistently with the foregoing. The Liquidating Trustee shall be the "administrator," within the meaning of Treasury Regulation Section 1.468B-2(k)(3), of such qualified settlement fund. The Liquidating Trustee shall be responsible for filing all tax returns of the qualified settlement fund and the payment, out of the assets of the qualified settlement fund, of any taxes due with respect to trust assets or otherwise imposed on the qualified settlement fund (including any tax liability arising in connection with the distribution of trust assets), and shall be permitted to sell any assets of the qualified settlement fund to the extent necessary to satisfy such tax liability (including any tax liability arising in connection with such sale).

(xvi) **Expedited Determination of Taxes**. The Liquidating Trustee may request an expedited determination of taxes under section 505(b) of the Bankruptcy Code for all tax returns filed by or on behalf of the Avon Liquidation Trust through the ALT Termination Date, and for all tax returns filed by or on behalf of the Debtors or the Liquidating Debtors for all taxable periods of the Debtors and the Liquidating Debtors.

## 5.5     _Section 1145 Exemption; Non-Transferability of Rights_.

(i)     The issuance of the New Parent Interest to the Avon Liquidation Trust pursuant to this Plan shall be exempt, pursuant to section 1145 of the Bankruptcy Code, without further act or actions by any Person, from registration under the Securities Act, and all rules and regulations promulgated thereunder, and any other applicable securities laws, to the fullest extent permitted by section 1145 of the Bankruptcy Code.

(ii)     Any right to receive a Distribution from the Avon Liquidation Trust will not, and is not intended to, constitute "securities" and, accordingly, will not be registered pursuant to the Securities Act or any applicable state or local securities law. However, if it should be determined that any such right to receive such Distributions constitute "securities," the exemption provisions of section 1145 of the Bankruptcy Code will be satisfied and the offer and sale under the Plan of such right will be exempt from registration under the Securities Act, all rules and regulations promulgated thereunder, and all applicable state and local securities laws and regulations. Any such right to receive such Distributions (and the underlying Claim giving rise thereto) shall not: (a) be voluntarily or involuntarily, directly or indirectly, assigned, conveyed,

hypothecated, pledged, or otherwise transferred or traded; (b) be evidenced by a certificate or other instrument; and (c) possess any voting rights with respect to the Avon Liquidation Trust or otherwise.

### 5.6    *Insurance Provisions*.

(i)    Except for the transfer of rights to the Avon Liquidation Trust pursuant to the Insurance Rights Transfer, or as otherwise provided by the Bankruptcy Code, applicable law, the findings made by the Bankruptcy Court in the Confirmation Order, or otherwise, nothing in the Plan shall modify, amend, or supplement, or be interpreted as modifying, amending, or supplementing, the terms of any Insurance Policy issued by any Insurance Company, or the rights or obligations under any such Insurance Policy to the extent such rights and obligations are otherwise available under applicable law, and the rights and obligations, if any, of any Non-Settling Insurance Company relating to or arising out of the Plan Documents, including the Plan, the Confirmation Order, or any provision thereof, shall be determined pursuant to the terms and provisions of the Insurance Policies and applicable law.

(ii)    No provision of the Plan, other than those provisions contained in the applicable injunctions contained in Article X of the Plan, shall be interpreted to affect or limit the protections afforded to any Settling Insurance Company by the Plan Injunction and the Insurance Entity Injunction.

(iii)    Nothing in this Section 5.6 of the Plan is intended or shall be construed to preclude otherwise applicable principles of res judicata or collateral estoppel from being applied against any Person.

### 5.7    *Indemnification of Liquidating Trustee*.

The Liquidating Trustee shall be entitled to indemnification and reimbursement for fees and expenses in defending any and all of its actions or inactions in its capacity as, or on behalf of, the Liquidating Trustee, the Avon Liquidation Trust, or the Liquidating Debtors, except for any actions or inactions found by Final Order to be arising out of its willful misconduct, bad faith, gross negligence, or fraud.  Any valid indemnification claim of the Liquidating Trustee shall be satisfied from the ALT Operating Reserve.

### 5.8    *Cooperation; Privilege; Access to Books and Records*.

(i)    To investigate, prosecute, compromise, and/or settle the Insurance Rights and Retained Causes of Action on behalf of the Avon Liquidation Trust, on or prior to the Effective Date, subject to the Sale Order and the Stock and Asset Purchase Agreement, the following information or documents in the possession of the Debtors or the Liquidating Debtors, as applicable, as of the Effective Date shall be deemed transferred and assigned by the Liquidating Debtors to the Liquidating Trustee: (a) copies of all Insurance Policies; (b) information and copies of documents, including books and records of the Debtors that reasonably relate to any claims previously noticed, tendered or submitted or paid by any Insurance Company under the Insurance Policies to the extent that they (1) relate to periods ending on or before the Effective Date and (2) reasonably necessary to enable the Liquidating Trustee to perform its duties; and (c) other information and copies of all other documents, including books and records of the Debtors that are

reasonably necessary to preserve, secure or obtain the benefit of the Insurance Rights Transfer. Prior to the Effective Date, the Debtors and the Creditors' Committee shall coordinate in good faith to determine a process for obtaining information or documents specified in the preceding sentence from the Debtors' current and former insurance coverage counsel and transfer and assign such information or documents to the Liquidating Trustee by the Effective Date.

(ii)    The Liquidating Trustee, on behalf of the Avon Liquidation Trust, shall succeed to the Debtors as parties to any transition services agreement executed by the Debtors in connection with the Sale Order and the Stock and Asset Purchase Agreement.

(iii)    The transfer of documents and production of information to the Liquidating Trustee in accordance with this Section 5.8 of the Plan shall not result in the destruction or waiver of any applicable Privileges held by the Debtors or the Liquidating Debtors as of the Effective Date. Further, with respect to any such Privileges: (a) they are extended solely to the Liquidating Trustee and its counsel, retained professionals, and representatives for the limited purpose of allowing the Liquidating Trustee to perform its duties to administer the Avon Liquidation Trust and for no other reason; (b) they are not extended to the Avon Liquidation Trust, the ALT Board, or any other Person, committee, or subcomponent of the Avon Liquidation Trust, or any other Person (including counsel and other professionals) who has been engaged by, represents, or has represented any holder of a Claim or any Person that alleges or may allege a Claim, directly or indirectly, relating to, or arising from, the Debtors' Products or operations; and (c) they shall be preserved and not waived (except the Liquidating Trustee may elect to waive such Privileges held by the Liquidating Trustee). For the avoidance of doubt, (1) any such extension of Privileges shall have no effect on any right, Claim, or Privilege of any Person other than the Debtors or the Liquidating Debtors (including the board of directors or any committee of the board of directors of any of the Debtors or Liquidating Debtors), (2) no information subject to a Privilege shall be publicly disclosed by the Liquidating Trustee or communicated to any Person not entitled to receive such information or in a manner that would diminish the protected status of any such information, except following a waiver of such Privilege pursuant to subsection (c) above, and (3) nothing in this Plan or any order of the Bankruptcy Court shall prevent a waiver by the Liquidating Trustee of Privileges to the extent held by the Liquidating Trustee. Notwithstanding the foregoing, nothing herein shall preclude the Liquidating Trustee from providing (x) information received pursuant to this Section 5.8 of the Plan to any applicable Insurance Company as necessary to preserve, secure, or obtain the benefit of the applicable Insurance Rights and (y) Privileged documents and information to the ALT Board as reasonably necessary to allow the ALT Board to exercise its consent rights under Section 5.4(viii) of the Plan; *provided*, *however*, that the provision of any such documents and information to the ALT Board shall not result in any waiver or destruction of any Privilege.

### 5.9    *Releases of Liabilities to Holders of Claims*.

Except as provided in this Plan, the transfer to, vesting in, and assumption by the Avon Liquidation Trust of the ALT Assets as contemplated by this Plan shall, as of the date of such transfer and assumption, bar recovery or any action against the Debtors, the Liquidating Debtors, and the Debtors' Estates, affiliates, and subsidiaries, for, or with respect to, all Claims.

**5.10** *__Available Cash__*.

(i)     **Effective Date Available Cash**.  On the Effective Date, Effective Date Available Cash shall be allocated to: (a) the Professional Fee Escrow Account in an amount necessary to satisfy Professional Fee Claims in accordance with <u>Section 2.4</u> of this Plan; (b) the Priority Reserve to satisfy estimated Allowed (1) Administrative Expense Claims (excluding Professional Fee Claims), (2) Secured Claims, and (3) Priority Claims; (c) the GUC Recovery Fund in an amount equal to the GUC Recovery Fund Cash Amount; and (d) the ALT Operating Reserve in the ALT Operating Reserve Cash Amount.  Any remaining Cash following the allocations described in the foregoing sentence shall become Excess Effective Date Available Cash and shall be allocated to the ALT Recovery Fund.

(ii)     **Post-Effective Date Available Cash**.  Post-Effective Date Available Cash shall be allocated to: (a) first, the Priority Reserve to the extent necessary, in the sole discretion of the Liquidating Trustee, to satisfy Allowed (1) Administrative Expense Claims (excluding Professional Fee Claims), (2) Secured Claims, and (3) Priority Claims; (b) second, the ALT Operating Reserve to the extent necessary, in the sole discretion of the Liquidating Trustee, to satisfy estimated ALT Operating Expenses; and (c) third, the ALT Recovery Fund.

**5.11** *__Rabbi Trust Receivable Proceeds__*.

Any Rabbi Trust Receivable Proceeds received on or after the Effective Date shall be allocated to (i) first, the GUC Recovery Fund in the GUC Recovery Fund Receivable Amount and (ii) second, the ALT Operating Reserve as Remaining Rabbi Trust Receivable Proceeds.  For the avoidance of doubt, Rabbi Trust Receivable Proceeds shall not be deemed Effective Date Available Cash or Post-Effective Date Available Cash.

**5.12** *__Surplus Reserved Cash__*.

The Liquidating Trustee shall determine, on each six-month (6-month) anniversary of the Effective Date, whether the amounts available in the Priority Reserve and the ALT Operating Reserve are in excess of the amounts necessary to satisfy the purpose for which each such reserve was established, respectively.  If the Liquidating Trustee determines in its reasonable discretion that a surplus exists in the Priority Reserve or the ALT Operating Reserve, as of the date of such determination, such surplus Cash shall become Post-Effective Date Available Cash.  Following the dissolution of the Priority Reserve, any Cash that was held therein shall be deemed Post-Effective Date Available Cash.  Upon the ALT Termination Date, any Cash remaining in the ALT Operating Reserve shall be allocated to the ALT Recovery Fund and distributed to holders of Allowed Talc Claims and Allowed Electing General Unsecured Claims in accordance with the Plan and the Trust Distribution Procedures.

**5.13** *__Charters; By-Laws__*.

To the extent necessary or appropriate, the charters, by-laws, and other organizational documents of the Debtors shall be amended, or amended and restated as necessary, in a manner consistent with section 1123(a)(6) of the Bankruptcy Code, if applicable, and the terms of this Plan.

**5.14** ***Effectuating Documents; Further Transactions***.

(i)    On or as soon as practicable after the Effective Date, the Liquidating Trustee shall take such actions as may be or become necessary or appropriate to effect any transaction described in, approved by, contemplated by, or necessary to effectuate the Plan and the winding up and dissolution of the Liquidating Debtors, including: (a) the Trust Formation Transactions; (b) the execution and delivery of appropriate agreements or other documents of merger, consolidation, restructuring, financing, conversion, disposition, transfer, dissolution, transition services, or liquidation containing terms that are consistent with the terms of the Plan and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may determine; (c) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any Asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms to which the applicable parties agree; (d) the filing of appropriate certificates or articles of incorporation, reincorporation, merger, consolidation, conversion, or dissolution pursuant to applicable state law; (e) the issuance of securities, all of which shall be authorized and approved in all respects, in each case, without further action being required under applicable law, regulation, order, or rule; (f) the execution, delivery, or filing of contracts, instruments, releases, and other agreements to effectuate and implement the Plan without the need for any approvals, authorizations, actions, or consents; and (g) all other actions that the applicable Entities determine to be necessary or appropriate.

(ii)    Each officer, manager, or member of the board of directors of the Debtors is (and each officer, manager, or member of the board of directors of the Liquidating Trustee, if applicable, shall be) authorized and directed to issue, execute, deliver, file, or record such contracts, securities, instruments, releases, indentures, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan and the securities issued pursuant to the Plan in the name of, and on behalf of, the Avon Liquidation Trust, all of which shall be authorized and approved in all respects, in each case, without the need for any approvals, authorization, consents, or any further action required under applicable law, regulation, order, or rule (including any action by the stockholders or directors or managers of the Debtors, or the Avon Liquidation Trust) except for those expressly required pursuant to the Plan.

(iii)    All matters provided for herein involving the corporate structure of the Debtor or the Avon Liquidation Trust, to the extent applicable, or any corporate or related action required by the Debtors or the Avon Liquidation Trust in connection herewith shall be deemed to have occurred and shall be in effect, without any requirement of further action by the stockholders, members, or directors or managers of the Debtors and with like effect as though such action had been taken unanimously by the stockholders, members, directors, managers, or officers, as applicable, of the Debtors or the Avon Liquidation Trust.  For the avoidance of doubt, after the Effective Date, the Avon Liquidation Trust shall be responsible for terminating and winding down any remaining retirement benefit plans.

**5.15** ***Closing of Chapter 11 Cases***.

After a Debtor's or Liquidating Debtor's Estate has been fully administered, the Liquidating Trustee shall seek authority from the Bankruptcy Court to close the applicable Chapter 11 Case in accordance with the Bankruptcy Code and Bankruptcy Rules.

**5.16** ***Separability***.

Notwithstanding the combination of the separate plans of liquidation for the Debtors set forth in the Plan for purposes of economy and efficiency, the Plan constitutes a separate chapter 11 plan for each Debtor. Accordingly, if the Bankruptcy Court does not confirm the Plan with respect to one or more Debtors, it may still, subject to the consent of the applicable Debtors, confirm the Plan with respect to any other Debtor that satisfies the confirmation requirements of section 1129 of the Bankruptcy Code.

**ARTICLE VI    DISTRIBUTIONS.**

**6.1** ***Distributions Generally***.

The Disbursing Agent shall make all Distributions to the appropriate holders of Allowed Claims and in accordance with the terms of this Plan. Except as otherwise provided herein, Distributions under this Plan shall be made only to the holders of Allowed Claims.

**6.2** ***Distributions on Effective Date or as Soon as Reasonably Practicable Thereafter***.

The Disbursing Agent shall make Distributions, as applicable, on the Effective Date, or as soon as reasonably practicable thereafter, of Cash:

(i)    in the Professional Fee Escrow Account to holders of Professional Fee Claims in accordance with Section 2.4 of this Plan;

(ii)   in the Priority Reserve to holders of (a) Allowed Administrative Expense Claims (excluding Professional Fee Claims), (b) Allowed Secured Claims, and (c) Allowed Priority Claims, as applicable, to the extent Allowed as of the Effective Date; and

(iii)  in the GUC Recovery Fund to holders of Non-Electing General Unsecured Claims, to the extent Allowed as of the Effective Date, in accordance with Sections 4.3 and 5.10(i) of this Plan.

**6.3** **_Periodic Distributions from Priority Reserve, GUC Recovery Fund, and ALT Recovery Fund_**.

The Disbursing Agent shall make Distributions, as applicable, in the frequency determined in the Liquidating Trustee's discretion pursuant to this Plan and the Trust Distribution Procedures, as applicable, of Cash:

(i)     in the Priority Reserve to holders of (a) Allowed Administrative Expense Claims (excluding Professional Fee Claims), (b) Allowed Secured Claims, and (c) Allowed Priority Claims, as applicable, to the extent Allowed after the Effective Date;

(ii)    in the GUC Recovery Fund to (a) holders of Non-Electing General Unsecured Claims, to the extent Allowed after the Effective Date, in accordance with Section 4.3 of this Plan and (b) as Disputed General Unsecured Claims are resolved, resulting in additional funds being available in the GUC Recovery Fund for holders of Allowed General Unsecured Claims, to holders of previously Allowed Non-Electing General Unsecured Claims on account of their Pro Rata share of the GUC Recovery Fund in accordance with Section 4.3 of this Plan; and

(iii)   in the ALT Recovery Fund to holders of Allowed Talc Claims and Allowed Electing General Unsecured Claims in accordance with Sections 4.3 and 4.4 of this Plan and the Trust Distribution Procedures.

**6.4** **_Date of Distributions_**.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

**6.5** **_Disbursing Agent_**.

All Distributions under the Plan by the Avon Liquidation Trust shall be made by the Disbursing Agent on and after the Effective Date as provided herein. The Disbursing Agent shall be deemed to hold all property to be distributed under this Plan in trust for the Persons entitled to receive the same. The Disbursing Agent shall not hold an economic or beneficial interest in the property to be distributed under this Plan. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties.

**6.6** **_Rights and Powers of Disbursing Agent_**.

The Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, (ii) make all Distributions contemplated by the Plan, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions of the Plan.

The Disbursing Agent shall only be required to act and make Distributions in accordance with the terms of the Plan and the applicable ALT Documents and shall have no liability for actions taken in accordance with the Plan and the applicable ALT Documents or in reliance upon information provided to it in accordance with the Plan or obligation or liability for Distributions under the Plan to any party that does not hold an Allowed Claim at the time of Distribution or that does not otherwise comply with the terms of the Plan; *provided*, *however*, that the foregoing shall not affect the liability that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct, gross negligence, intentional fraud, or criminal conduct of any such Person.

### 6.7 *Expenses of Disbursing Agent*.

Except as otherwise ordered by the Bankruptcy Court, any reasonable fees and expenses incurred by the Disbursing Agent acting in such capacity on or after the Effective Date shall be paid in Cash by the Avon Liquidation Trust from the ALT Operating Reserve.

### 6.8 *Delivery of Distributions in General*.

Subject to Bankruptcy Rule 9010, all Distributions to any holder of an Allowed Claim shall be made at the address of such holder (i) as set forth on the Schedules filed with the Bankruptcy Court or (ii) on the books and records of the Debtors or their agents, as applicable, unless the Debtors (prior to the Effective Date) or the Liquidating Trustee (on or after the Effective Date) has been notified in writing of a change of address, including the filing of a proof of Claim by such holder that contains an address for such holder that is different than the address of such holder as set forth in the Schedules.

### 6.9 *Delivery of Distributions to Unsecured 2043 Noteholders*.

As soon as practicable after the Effective Date, following the claims reconciliation process for General Unsecured Claims, and subject to the Bond Trustee's rights under the Unsecured 2043 Notes Documents, including Sections 5.06 and 6.07 of the Unsecured 2043 Notes Indenture, the Debtors shall make all Distributions with respect to the Unsecured 2043 Notes and the Unsecured 2043 Notes Claims to the Bond Trustee, or to DTC upon the written consent of the Bond Trustee, which consent shall not be unreasonably withheld, delayed, or conditioned, for onward distribution to the applicable Unsecured 2043 Noteholders through DTC in exchange for the Unsecured 2043 Notes and any of their book entry positions relating to such notes. In connection with such Distribution, the Debtors, in consultation with the Bond Trustee, shall develop and implement a process consistent with DTC's policies and procedures to exclude any Unsecured 2043 Noteholders that are Electing General Unsecured Claims from receiving any portion of such Distribution and that permits the remaining Unsecured 2043 Noteholders to receive all Distributions contemplated by this Plan through DTC (the "**Distribution Process**"). The Bond Trustee shall be entitled to rely conclusively on the Distribution Process for all purposes, including in connection with any Distribution relating to the Unsecured 2043 Notes Documents, the Unsecured 2043 Notes Claims, or the Unsecured 2043 Noteholders.

As a condition precedent to the Distribution provided for in this subsection, but subject to the Distribution Process, the Unsecured 2043 Noteholders shall be deemed to have

surrendered their Unsecured 2043 Notes, book entry positions related to such notes and other documentation underlying such notes, and all such surrendered Unsecured 2043 Notes, book entry positions and other documents shall be deemed to be cancelled in accordance with <u>Section 5.2</u> of the Plan.  With respect to each Distribution to be made to the Unsecured 2043 Noteholders, the obligations of the Bond Trustee relating to such Distribution shall be discharged and deemed satisfied upon DTC's receipt of such Distribution.

### 6.10    <u>*Undeliverable and Unclaimed Distributions*</u>.

In the event that any Distribution to any holder of an Allowed Claim is returned as undeliverable, no Distribution to such holder shall be made unless and until the Disbursing Agent has been notified of the then-current address of such holder, at which time or as soon as reasonably practicable thereafter such Distribution shall be made to such holder without interest; *provided*, *however*, that all Distributions under the Plan that are unclaimed for a period of ninety (90) calendar days after the Distribution thereof shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code and revest in the Avon Liquidation Trust, and any entitlement of any holder of any Claims to such Distributions shall be extinguished and forever barred.

### 6.11    <u>*Time Bar to Cash Payments*</u>.

Checks issued by the Disbursing Agent in respect of Allowed Claims shall be null and void if not negotiated within one hundred and twenty (120) calendar days after the date of issuance thereof.  Thereafter, the amount represented by such voided check shall irrevocably revert to the Avon Liquidation Trust, and any Claim in respect of such voided check shall be forever barred, notwithstanding any federal or state escheat laws to the contrary.  Requests for re-issuance of any check shall be made to the Disbursing Agent by the holder of the Allowed Claim to whom such check was originally issued.

### 6.12    <u>*Distribution Record Date*</u>.

Subject to the terms of the Trust Distribution Procedures with respect to Talc Claims, as of the close of business on the Distribution Record Date, the Claims register shall be closed.  The Liquidating Trustee shall have no obligation to recognize any transfer of any such Claims occurring after the close of business on the Distribution Record Date and shall instead be entitled to recognize and deal, for all purposes under the Plan, with only those holders of record as of the close of business on the Distribution Record Date.

### 6.13    <u>*Manner of Payment Under Plan*</u>.

At the option of the Disbursing Agent, any Cash payment to be made pursuant to the Plan may be made by a check or wire transfer or as otherwise required or provided in the ALT Documents or customary practices of the Debtors.

### 6.14    <u>*Minimum Cash Distributions*</u>.

The Disbursing Agent shall not be required to make any Distributions of Cash less than $100, or such lower amount as determined by the Disbursing Agent in accordance

with the ALT Documents, to any holder of an Allowed Claim; *provided*, *however*, that if any Distribution is not made pursuant to this Section 6.14 of the Plan, such Distribution shall be added to any subsequent Distribution to be made on behalf of the holder's Allowed Claims. The Disbursing Agent shall not be required to make any final Distribution of Cash less than $25 to any holder of an Allowed Claim. If the amount of any final Distribution to any holder of Allowed Claims would be $25 or less, then such Distribution shall be made available for Distribution to all holders of Allowed Claims receiving final Distributions of at least $25.

### 6.15    *Setoffs and Recoupment*.

Subject to Section 2.2 and Sections 10.4 through 10.8 of the Plan, the Liquidating Trustee may, but shall not be required to, setoff against, or recoup from, any Claim and from any payments to be made pursuant to the Plan with respect to such Claim or any claims of any nature whatsoever (to the extent permitted by applicable law) that the Debtors or the Liquidating Debtors may have against the claimant, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtors, the Liquidating Debtors, or the Liquidating Trustee of any such Claim the Debtors, the Liquidating Debtors, or the Liquidating Trustee may have against such claimant.

### 6.16    *Distributions After Effective Date*.

Distributions made after the Effective Date to holders of Disputed Claims that are not Allowed Claims as of the Effective Date, but which later become Allowed Claims, shall be deemed to have been made on the Effective Date.

### 6.17    *Interest and Penalties on Claims*.

Unless otherwise provided for in the Plan, the Confirmation Order, or required by applicable bankruptcy law, no holder of a Claim shall be entitled to interest accruing on or after the Petition Date or penalties on any Claim. Any such interest or penalty component of any such Claims, if Allowed, shall be paid only in accordance with section 726(b) of the Bankruptcy Code.

### 6.18    *Allocation of Distributions Between Principal and Interest*.

Except as otherwise required by law (as reasonably determined by the Liquidating Trustee), Distributions with respect to any Allowed Claims shall be allocated first to the principal amount of such Allowed Claims (as determined for United States federal income tax purposes) and, thereafter, to the remaining portion of such Allowed Claim, if any.

### 6.19    *No Distribution in Excess of Amount of Allowed Claim*.

Notwithstanding anything to the contrary in this Plan, no holder of an Allowed Claim shall receive, on account of such Allowed Claim, Distributions in excess of the Allowed amount of such Claim when combined with amounts received by such holders from other sources.

**6.20**    *Satisfaction of Claims*.

Unless otherwise provided herein, the Distributions and deliveries to be made on account of Allowed Claims under this Plan shall, in the aggregate, be in complete and final satisfaction, settlement, and release of, and exchange for, such Allowed Claims.

**6.21**    *Withholding and Reporting Requirements*.

(i)    **Withholding Rights**.    In connection with the Plan, and all instruments or Interests issued in connection therewith and in consideration thereof, any party issuing any instrument or making any distribution described in the Plan shall comply with all applicable withholding and reporting requirements imposed by any federal, state, or local taxing authority, and all distributions pursuant to the Plan and all related agreements shall be subject to any such withholding or reporting requirements.    In the case of a non-Cash distribution that is subject to withholding, the distributing party may withhold an appropriate portion of such distributed property and either (a) sell such withheld property to generate Cash necessary to pay over the withholding tax (or reimburse the distributing party for any advance payment of the withholding tax) or (b) pay the withholding tax using its own funds and retain such withheld property.    Any amounts withheld pursuant to the preceding sentence shall be deemed to have been distributed to, and received by, the applicable recipient for all purposes of the Plan.    Notwithstanding the foregoing, each holder of an Allowed Claim or any other Person that receives a distribution pursuant to the Plan shall have responsibility for any taxes imposed by any Governmental Unit, including income, withholding, and other taxes, on account of such distribution.    In the event that any party issues any instrument or makes any non-Cash distribution pursuant to the Plan that is subject to withholding tax and such issuing or distributing party has not sold such withheld property to generate Cash to pay the withholding tax, or paid the withholding tax using its own funds and retains such withheld property as described above, such issuing or distributing party has the right, but not the obligation, to not make a distribution until such holder has made arrangements reasonably satisfactory to such issuing or disbursing party for payment of any such tax obligations.

(ii)    **Forms**.    Any party entitled to receive any property as an issuance or Distribution under the Plan shall, upon request, deliver to the Disbursing Agent or such other Person designated by the Liquidating Debtors or the Liquidating Trustee (which Person shall subsequently deliver to the Disbursing Agent or such other Person any applicable IRS Form W-8 or Form W-9 received) an appropriate Form W-9 or Form W-8, as applicable, and any other forms or documents reasonably requested by the Liquidating Debtors or the Liquidating Trustee to reduce or eliminate any withholding required by any federal, state, or local taxing authority.    If any such request is made by the Liquidating Debtors or the Liquidating Trustee, the Disbursing Agent, or such other Person designated by the Liquidating Debtors, the Liquidating Trustee, and the holder fails to comply before the date that is sixty (60) calendar days after the request is made, the amount of such Distribution shall irrevocably revert to the Avon Liquidation Trust and any Claim with respect to such Distribution shall be forever barred from assertion against the Avon Liquidation Trust or its property.

(iii)    **Obligation**.    Notwithstanding the above, each holder of an Allowed Claim that is to receive a Distribution under this Plan shall have the sole and exclusive

responsibility for the satisfaction and payment of any tax obligations imposed on such holder by any Governmental Unit, including income, withholding, and other tax obligations, on account of such Distribution.

## ARTICLE VII    PROCEDURES FOR DISPUTED CLAIMS.

### 7.1    *Disputed Claims*.

All Disputed Claims against the Debtors, other than Talc Claims and Administrative Expense Claims, shall be subject to the provisions of this Article VII.  All Talc Claims shall be resolved by the Avon Liquidation Trust in accordance with the Trust Distribution Procedures without further approval of the Bankruptcy Court.  All Administrative Expense Claims shall be determined pursuant to, and, if Allowed, paid in accordance with, Article II of the Plan.

### 7.2    *Claim Objections*.

On or after the Effective Date, except as otherwise provided herein, objections to Claims against the Debtors may be interposed and prosecuted only by the Liquidating Trustee.  Any objections to Claims shall be served on the respective Claim holder and filed with the Bankruptcy Court (i) on or before one-hundred eighty (180) calendar days following the later of (a) the Effective Date and (b) the date that a proof of Claim is filed or amended or a Claim is otherwise asserted or amended in writing by or on behalf of a holder of such Claim or (ii) on such later date as may be fixed by the Bankruptcy Court; *provided*, *however*, and notwithstanding anything herein or in the Confirmation Order to the contrary, objections to any Talc Claims shall be interposed, prosecuted, or otherwise administered solely pursuant to, and in accordance with, the Trust Distribution Procedures.

### 7.3    *No Distribution Pending Allowance*.

Notwithstanding any other provision in the Plan, if any portion of a Claim is Disputed, no payment or Distribution provided under the Plan shall be made on account of such Claim unless and until such Disputed Claim becomes an Allowed Claim.

### 7.4    *Estimation of Claims*.

The Liquidating Trustee may, at any time, request that the Bankruptcy Court estimate, pursuant to section 502(c) of the Bankruptcy Code, any Disputed Claim that the Bankruptcy Court has jurisdiction to estimate in accordance with the Bankruptcy Code or other applicable law regardless of whether an objection was previously filed with the Bankruptcy Court with respect to such Claim, or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction to estimate any Claim at any time during litigation concerning any objection to any Claim, including during the pendency of any appeal relating to any such objection.  If the Bankruptcy Court estimates a Disputed Claim, that estimated amount shall constitute either the Allowed amount of such Claim or a maximum limitation on such Claim, as determined by the Bankruptcy Court.  If the estimated amount constitutes a maximum limitation on such Claim, the Liquidating Trustee may elect to pursue any supplemental proceeding to object to any ultimate Distribution on account of such Claim.

### 7.5    *Distribution After Allowance*.

After such time as a Disputed Claim becomes, in whole or in part, an Allowed Claim, the holder thereof shall be entitled to Distributions, if any, to which such holder is then entitled as provided in this Plan on account of such Allowed Claim, without interest, as provided in Section 7.8 of this Plan.  Such Distributions shall be made as soon as practicable after the date that the order or judgment of the Bankruptcy Court allowing such Disputed Claim (or portion thereof) becomes a Final Order.

### 7.6    *Resolution of Claims*.

Except as expressly provided herein or in any order entered in the Chapter 11 Cases before the Effective Date, including the Confirmation Order, the Avon Liquidation Trust and the Liquidating Trustee (on or after the Effective Date) shall have and retain any and all rights and defenses held by the Debtors with respect to any Claim as of the Petition Date.  On and after the date(s) upon which the Avon Liquidation Trust are established, in accordance with the Plan and the applicable ALT Documents, the Liquidating Trustee shall have the authority to compromise, settle, otherwise resolve, or withdraw any objections to Claims against the Debtors and the Liquidating Debtors and to compromise, settle, or otherwise resolve any Disputed Claims without approval of the Bankruptcy Court.  If the Liquidating Trustee and a holder of a Disputed Claim are unable to reach a settlement on the Disputed Claim, such Disputed Claim shall be submitted to the Bankruptcy Court for resolution.

### 7.7    *Claims Resolution Procedures Cumulative*.

All of the objection, estimation, settlement, and resolution procedures set forth in this Plan are intended to be cumulative and not exclusive of one another.  Claims may be established and subsequently settled, compromised, withdrawn, or resolved in accordance with this Plan by any mechanism approved by the Bankruptcy Court.

### 7.8    *Interest*.

To the extent that a Disputed Claim becomes an Allowed Claim after the Effective Date, the holder of such Claim shall not be entitled to any interest that accrued thereon from and after the Effective Date, except as provided in Section 6.17 of this Plan.

## ARTICLE VIII   EXECUTORY CONTRACTS AND UNEXPIRED LEASES.

### 8.1    *Assumption and Rejection of Executory Contracts and Unexpired Leases*.

(i)    As of and subject to the occurrence of the Effective Date, except as otherwise provided in the Plan, each executory contract and unexpired lease of the Debtors not previously assumed, rejected, or assumed and assigned by the Debtors during the Chapter 11 Cases, shall be deemed automatically rejected pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such executory contract or unexpired lease (a) is listed on the Schedule of Assumed and Assigned Contracts or (b) as of the Effective Date, is subject to a pending motion to assume, reject, or assume and assign such executory contract or unexpired lease.

(ii)    Subject to the occurrence of the Effective Date, the payment of any applicable Cure Amount, and the resolution of any Cure Dispute, the entry of the Confirmation Order by the Bankruptcy Court shall constitute approval of the rejections, assumptions, and assumptions and assignments provided for in this Plan pursuant to sections 365(a) and 1123 of the Bankruptcy Code.  Unless otherwise indicated or provided in a separate order of the Bankruptcy Court or the Plan Supplement, rejections, assumptions, or assumptions and assignments of executory contracts and unexpired leases pursuant to this Plan are effective as of the Effective Date.  Unless otherwise indicated or provided in a separate order of the Bankruptcy Court or the Plan Supplement, each executory contract and unexpired lease assumed pursuant to this Plan or by order of the Bankruptcy Court shall be assigned to the Avon Liquidation Trust on the date such trust is established or as soon as reasonably practicable thereafter, and shall vest in, and be fully enforceable by, the Avon Liquidation Trust in accordance with its terms, except as modified by the provisions of this Plan, any order of the Bankruptcy Court authorizing and providing for its assumption, or applicable law.

(iii)    Unless otherwise provided herein or by separate order of the Bankruptcy Court, each executory contract and unexpired lease that is assumed or assumed and assigned shall include any and all modifications, amendments, supplements, restatements, or other agreements made directly or indirectly by any agreement, instrument, or other document that in any manner affects such executory contract or unexpired lease, without regard to whether such agreement, instrument, or other document is listed in the Schedule of Assumed and Assigned Contracts.

### 8.2    *Determination of Cure Disputes and Deemed Consent*.

(i)    The Debtors shall serve on all required parties, at least fourteen (14) calendar days before the deadline set to file objections to confirmation of this Plan, notices of assumption and assignment of the Assumed and Assigned Contracts, which shall set forth the associated Cure Claim for such contract proposed by the Debtors.  The Debtors shall file the Schedule of Assumed and Assigned Contracts with the Plan Supplement.

(ii)    Any counterparty to an executory contract or unexpired lease shall, within fourteen (14) calendar days of the service of notices of assumption and assignment of the Assumed and Assigned Contracts, or such shorter period as agreed to by the parties or authorized by the Bankruptcy Court, file, serve, and actually deliver objections to the Cure Claims listed on the notice and to adequate assurance of future performance by the Avon Liquidation Trust.

(iii)    To the extent a Cure Dispute is timely asserted in an objection filed in accordance with Section 8.2(ii) of this Plan and not resolved, such Cure Dispute shall be scheduled for a hearing before the Bankruptcy Court.  Following resolution of a Cure Dispute, the applicable contract or lease shall be deemed assumed effective as of the Effective Date; *provided*, *however*, that if any Claim subject to a Cure Dispute is Allowed in an amount greater than the Cure Amount for such Claim listed on the Schedule of Assumed and Assigned Contracts, the Debtors, the Liquidating Debtors, or the Liquidating Trustee, as applicable, reserve the right to reject such executory contract or unexpired lease for a period of seven (7) Business Days following entry of a Final Order of the Bankruptcy Court resolving the applicable Cure Dispute by filing a notice indicating such rejection with the Bankruptcy Court.

(iv)    To the extent any Cure Dispute with respect to an Assumed and Assigned Contract has not been resolved prior to the Effective Date, the Debtors may assume and/or assume and assign the applicable executory contract or unexpired lease prior to the resolution of such Cure Dispute; *provided*, *however*, that the Debtors, the Liquidating Debtors, or the Avon Liquidation Trust, as applicable, reserve Cash in an amount sufficient to pay the full amount reasonably asserted as the required cure payment by the counterparty to such executory contract or unexpired lease (or such smaller amount as may be fixed or estimated by the Bankruptcy Court or otherwise agreed to by such counterparty and the Debtors, the Liquidating Debtors, or the Avon Liquidation Trust, as applicable).

(v)    To the extent an objection is not timely filed and properly served on the Debtors with respect to a Cure Dispute, then the counterparty to the applicable contract or lease shall be deemed to have assented to (a) the Cure Amount proposed by the Debtors and (b) the assumption of such contract or lease, notwithstanding any provision thereof that (1) prohibits, restricts, or conditions the transfer or assignment of such contract or lease or (2) terminates or permits the termination of a contract or lease as a result of any direct or indirect transfer or assignment of the rights of the Debtors under such contract or lease or a change in the ownership or control as contemplated by the Plan, and shall forever be barred and enjoined from asserting such objection against the Debtors or terminating or modifying such contract or lease on account of transactions contemplated by the Plan.

(vi)    With respect to payment of any Cure Amounts or Cure Disputes, neither the Debtors, the Avon Liquidation Trust, nor the Disbursing Agent shall have any obligation to recognize or deal with any party other than the non-Debtor party to the applicable executory contract or unexpired lease, even if such non-Debtor party has sold, assigned, or otherwise transferred its Cure Claim.

### 8.3    *Payments Related to Assumption of Contracts and Leases*.

(i)    Subject to resolution of any Cure Dispute, any monetary amounts by which any Assumed and Assigned Contract is in default shall be satisfied, under section 365(b)(1) of the Bankruptcy Code, by the Debtors or the Avon Liquidation Trust, as the case may be, upon assumption thereof.

(ii)    Assumption and assignment of any Assumed and Assigned Contract pursuant to the Plan, or otherwise, shall result in the full release and satisfaction of any Claims or defaults, subject to satisfaction of the Cure Amount, whether monetary or nonmonetary, including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults, arising under any assumed executory contract or unexpired lease at any time before the effective date of assumption and/or assignment.  Any proofs of Claim filed with respect to an executory contract or unexpired lease that has been assumed shall be deemed Disallowed and expunged, without further notice, or action, order or approval of the Bankruptcy Court or any other Person.

**8.4**     *__Rejection Damage Claims__*.

In the event that the rejection of an executory contract or unexpired lease by any of the Debtors herein results in damages to the other party or parties to such contract or lease, any Claim for such damages, if not heretofore evidenced by a timely filed proof of Claim, shall be forever barred and shall not be enforceable against the Debtors or their Estates, properties or interests in property, unless a proof of Claim is filed with the Bankruptcy Court and served upon the Debtors no later than thirty (30) calendar days after the later of (i) the Effective Date and (ii) the effective date of the rejection of such executory contract or unexpired lease.  Any such Claims, to the extent Allowed, shall be classified as General Unsecured Claims.  The Confirmation Order shall constitute the Bankruptcy Court's approval of the rejection of all the leases and contracts that are rejected as of the Effective Date.

**8.5**     *__Compensation and Benefit Plans__*.

Except with respect to any benefit plans, policies, or programs (i) assumed by Natura pursuant to the Natura Settlement Order and the Natura Settlement Agreement or assumed by the Debtors and assigned to Natura pursuant to the Sale Order and the Stock and Asset Purchase Agreement, (ii) for which the Debtors have received approval of the Bankruptcy Court to reject or terminate on or before the Effective Date, or (iii) that are subject to a pending motion to reject or terminate as of the Effective Date, all employment and severance policies, and all compensation and benefit plans, policies, and programs of the Debtors applicable to their respective employees, and non-employee directors, including all savings plans, retirement plans, healthcare plans, disability plans, severance benefit plans, incentive and bonus plans, and life and accidental death and dismemberment insurance plans, are deemed to be, and shall be treated as, executory contracts under this Plan and, on the Effective Date, shall be rejected by the Debtors pursuant to sections 365 and 1123 of the Bankruptcy Code.

Any (a) employment and severance policies, (b) compensation and benefit plans, policies, and programs, or (c) life and accidental death and dismemberment insurance plans relating or provided to a former employee of the Debtors who is retired as of the Effective Date shall be rejected with respect to such former employee except to the extent prohibited by section 1114 of the Bankruptcy Code.

**8.6**     *__Insurance Policies__*.

On and after the Effective Date, all Insurance Policies shall be considered non-executory contracts and shall neither be assumed nor rejected by the Debtors.

**8.7**     *__Reservation of Rights__*.

(i)    Neither the exclusion nor the inclusion by the Debtors of any contract or lease on any exhibit, schedule, or other annex to this Plan or in the Plan Supplement, nor anything contained in this Plan, shall constitute an admission by the Debtors that any such contract or lease is or is not an executory contract or unexpired lease or that the Debtors have any liability thereunder.

(ii)     Except as explicitly provided in this Plan, nothing herein shall waive, excuse, limit, diminish, or otherwise alter any of the defenses, claims, Causes of Action, or other rights of the Debtors under any executory or non-executory contract or unexpired lease.

(iii)    Nothing in this Plan shall increase, augment, or add to any of the duties, obligations, responsibilities, or liabilities of the Debtors under any executory or non-executory contract or unexpired or expired lease, including the Insurance Policies.

(iv)    If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of its assumption under this Plan, the Debtors shall have thirty (30) calendar days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease.

## ARTICLE IX   CONDITIONS PRECEDENT TO CONFIRMATION OF PLAN AND OCCURRENCE OF EFFECTIVE DATE.

### 9.1     *Conditions Precedent to Effective Date*.

The Effective Date shall not occur unless all of the following conditions precedent have been satisfied:

(i)      entry of the Confirmation Order by the Bankruptcy Court and such Confirmation Order has not been stayed, modified, or vacated on appeal;

(ii)     all conditions precedent to the consummation of the Trust Formation Transactions (other than effectiveness of the Plan) have been satisfied or waived by the party or parties entitled to waive them in accordance with the terms of the ALT Trust Agreement;

(iii)    the ALT Trust Agreement shall become effective in accordance with the terms of this Plan;

(iv)    the Professional Fee Escrow Account and the Priority Reserve shall be fully funded;

(v)     the GUC Recovery Fund shall be funded in the GUC Recovery Fund Cash Amount and with any Rabbi Trust Receivable Proceeds received by the Debtors prior to the Effective Date in the GUC Recovery Fund Receivable Amount;

(vi)    the ALT Operating Reserve shall be funded in the ALT Operating Reserve Cash Amount and with any available Remaining Rabbi Trust Receivable Proceeds to the extent received by the Debtors prior to the Effective Date;

(vii)   the Debtors shall have obtained all authorizations, consents, regulatory approvals, or ruling from applicable Governmental Units that are necessary to implement and effectuate this Plan;

(viii)  all actions, documents, and agreements necessary to implement and effectuate this Plan shall have been effected or executed;

(ix)    the Bankruptcy Court shall have authorized the Insurance Rights Transfer as provided in this Plan, notwithstanding any terms or any policies or provisions of non-bankruptcy law that prohibit the delegation, assignment, or other transfer of the Insurance Rights, and the Bankruptcy Court shall have determined that the Avon Liquidation Trust is a proper defendant for all applicable Claims against the Debtors to assert liability of the Debtors or the Liquidating Debtors, as applicable;

(x)    the Bankruptcy Court shall have made the following findings:

(a)    The Allowed amount of any Talc Claim shall be the amount determined under the Trust Distribution Procedures.    Allowed Talc Claims under the Trust Distribution Procedures shall be legally enforceable against the Avon Liquidation Trust.  The amount of any installment payments, initial payments, or payments based on payment percentages established under the Trust Distribution Procedures, as determined or as actually paid by the Avon Liquidation Trust, are not the equivalent of any claimant's Allowed amount of their Talc Claim.  For the avoidance of doubt, nothing herein determines whether any Insurance Company is obligated to pay the amount of any Allowed Talc Claim as determined under the Trust Distribution Procedures for an Allowed Talc Claim;

(b)    The terms of the Insurance Entity Injunction, including any provisions barring actions against third parties, are set out in conspicuous language in the Plan and in the Disclosure Statement;

(c)    The injunctions set forth in the Plan, including the Plan Injunction and Insurance Entity Injunction, are essential to the Plan, appropriately tailored to implement the applicable provisions of the Plan, and consistent with all applicable provisions of the Bankruptcy Code;

(d)    The Plan's transfer of rights under Insurance Policies is authorized and permissible notwithstanding any terms of any policies or provisions of applicable law that are argued to prohibit the assignment or transfer of such rights;

(e)    The Avon Liquidating Trust's rights under any Insurance Policies issued by Non-Settling Insurance Companies, including the effect of any failure to satisfy conditions precedent or obligations under such policies (other than, in the case of the Insurance Policies, the terms of any policies or provisions of applicable law that are argued to prohibit the assignment or transfer of such rights), shall be

51

determined under the law, including Bankruptcy law, applicable to each such policy in subsequent litigation;

(f)     The proceeds of any sale of any Insurance Policies, including the full settlement amount, shall be contributed to the Avon Liquidation Trust "free and clear" of all liens, claims, encumbrances, any other rights of any nature, whether at law or in equity, and other "interest," under sections 363 and 1141 of the Bankruptcy Code, of any additional insured or any other person or Entity in such Insurance Policies. Notwithstanding anything to the contrary and for the avoidance of doubt, any Insurance Policies sold by the Debtors to the applicable Settling Insurance Companies shall be sold free and clear of all liens, claims, encumbrances, interests, or other rights on the Effective Date on the terms and as provided in any applicable Insurance Settlement Agreement;

(g)     The Plan, the Plan Documents, and the Confirmation Order are binding on all parties-in-interest to the extent provided therein; and

(h)     [The proposed governance for the Avon Liquidation Trust is appropriate and the Trust Distribution Procedures are fair and reasonable based on the evidentiary record offered to the Bankruptcy Court and are proposed in good faith];

(xi)     all professional fees and expenses approved by the Bankruptcy Court shall have been paid in full or amounts sufficient to pay such fees and expenses after the Effective Date shall have been placed in the Professional Fee Escrow Account, pending approval by the Bankruptcy Court; and

(xii)     [the Unsecured 2043 Notes Fees and Expenses invoiced at least 5 (five) Business Days prior to the Effective Date have been paid in full.]

**9.2     _Waiver of Conditions Precedent_.**

(i)     Each of the conditions precedent to confirmation of the Plan and the occurrence of the Effective Date may be waived in writing by the Debtors [with the consent of the Creditors' Committee [(and with respect to Section 9.1(xii), the Bond Trustee)], which consent shall not be unreasonably withheld, delayed, or conditioned,] without leave of or order of the Bankruptcy Court. If any such condition precedent is waived pursuant to this Section 9.2 of the Plan and the Effective Date occurs, each party agreeing to waive such condition precedent shall be estopped from withdrawing such waiver after the Effective Date or otherwise challenging the occurrence of the Effective Date on the basis that such condition was not satisfied, and the waiver of such condition precedent shall benefit from the "equitable mootness" doctrine.

(ii) The stay of the Confirmation Order pursuant to Bankruptcy Rule 3020(e) shall be deemed waived by and upon entry of the Confirmation Order, and the Confirmation Order shall take effect immediately upon its entry.

## ARTICLE X       EFFECT OF CONFIRMATION.

### 10.1   *Binding Effect*.

Confirmation of the Plan does not provide the Debtors with a discharge under section 1141 of the Bankruptcy Code because the Plan is a liquidating chapter 11 plan. Except as otherwise provided in section 1141(d)(3) of the Bankruptcy Code, and subject to the occurrence of the Effective Date, on and after the entry of the Confirmation Order, the provisions of this Plan shall bind all parties in interest, including every holder of a Claim against or Interest in any Debtor and inure to the benefit of, and be binding on, such holder's respective successors and assigns, regardless of whether the Claim or Interest of such holder is Impaired under this Plan and whether such holder has accepted this Plan.

### 10.2   *Pre-Confirmation Injunctions and Stays*.

Unless otherwise provided in this Plan, all injunctions and stays arising under or entered during the Chapter 11 Cases, whether under sections 105 or 362 of the Bankruptcy Code or otherwise, and in existence on the date of entry of the Confirmation Order, shall remain in full force and effect until the later of the Effective Date and the date indicated in the order providing for such injunction or stay.

### 10.3   *Injunction Against Interference with Plan*.

Upon entry of the Confirmation Order, all holders of Claims and Interests and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, shall be enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim or Interest extinguished, released, or treated pursuant to the Plan.

### 10.4   *Plan Injunction*.

(i)  **Except as otherwise provided in this Plan or in the Confirmation Order, as of the entry of the Confirmation Order but subject to the occurrence of the Effective Date, to the maximum extent permitted under applicable law, all Persons who have held, hold, or may hold Claims or Interests (whether proof of such Claims or Interests has been filed or not and whether or not such Entities vote in favor of, against or abstain from voting on the Plan or are presumed to have accepted or deemed to have rejected the Plan) and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, are forever barred, estopped, and permanently enjoined after the entry of the Confirmation Order from: (a) commencing, conducting, or continuing in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including any proceeding in a judicial, arbitral, administrative, or other forum) against or affecting, directly or indirectly, a Debtor or an Estate or the property of any of the foregoing, or any direct or indirect transferee of any property of, or direct or**

indirect successor in interest to, any of the foregoing parties mentioned in this subsection (a) or any property of any such transferee or successor; (b) enforcing, levying, attaching (including any prejudgment attachment), collecting, or otherwise recovering in any manner or by any means, whether directly or indirectly, any judgment, award, decree, or order against any of the Debtors, the Liquidating Debtors, the Estates, the Avon Liquidation Trust, or the Liquidating Trustee, as applicable, or the property of any of the Debtors, the Liquidating Debtors, the Estates, the Avon Liquidation Trust, or the Liquidating Trustee, as applicable, or any direct or indirect transferee of any property of, or direct or indirect successor in interest to, any of the foregoing parties mentioned in this subsection (b) or any property of any such transferee or successor; (c) creating, perfecting, or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against any of the Debtors, the Liquidating Debtors, the Estates, the Avon Liquidation Trust, the Liquidating Trustee, as applicable, or the property of any of the Debtors, the Liquidating Debtors, the Estates, the Avon Liquidation Trust, the Liquidating Trustee, as applicable, or any direct or indirect transferee of any property of, or successor in interest to, any of the foregoing Persons mentioned in this subsection (c) or any property of any such transferee or successor; (d) asserting any right of setoff, directly or indirectly, against any obligation due from any of the Debtors, the Liquidating Debtors, the Estates, the Avon Liquidation Trust, or the Liquidating Trustee, as applicable, or against the property or interests in property of any of the Debtors, the Liquidating Debtors, the Estates, the Avon Liquidation Trust, or the Liquidating Trustee, as applicable, except (1) as contemplated or Allowed by the Plan or (2) to the extent asserted in a timely filed proof of Claim or timely filed objection to the confirmation of the Plan; and (e) acting or proceeding in any manner, in any place whatsoever, that does not conform to, does not comply with, or is inconsistent with the provisions of this Plan; *provided*, *however*, that nothing contained herein shall preclude such parties who have held, hold, or may hold Claims against or Interests in a Debtor or an Estate from exercising their rights, or obtaining benefits, pursuant to, and consistent with, the terms of this Plan and the Plan Documents.

(ii)    All Persons and other parties in interest, along with their respective present or former employees, agents, officers, directors, principals, and affiliates, holding Claims, Liens, Interests, charges, encumbrances, or other interests of any kind or nature whatsoever, including rights or Claims based on any successor or transferee liability, against the Debtors, the Liquidating Debtors, the Avon Liquidation Trust, or the Assets transferred thereto (whether legal or equitable, secured or unsecured, matured or unmatured, contingent, or noncontingent, known or unknown), arising under or out of, in connection with, or in any way relating to the Debtors, the Liquidating Debtors, the Estates' Assets, the operation of the Estates' Assets prior to the Effective Date, or the Trust Formation Transactions, shall be forever barred, estopped, and permanently enjoined from taking any actions to interfere with the implementation or consummation of the Plan in relation to any Claim extinguished or released pursuant to the Plan.

(iii)    By accepting Distributions pursuant to this Plan, each holder of an Allowed Claim or Allowed Interest shall be bound by this Plan, including the injunctions set forth in this <u>Section 10.4</u> of the Plan.

**10.5**    ***Insurance Entity Injunction***

(i)    **Purpose.  To facilitate the Insurance Rights Transfer, protect the Avon Liquidation Trust, and preserve its Insurance Rights, pursuant to the equitable jurisdiction and power of the Bankruptcy Court, the Bankruptcy Court shall issue the injunction set forth in this <u>Section 10.5</u> of the Plan; *provided*, *however*, that the Insurance Entity Injunction is not issued for the benefit of any Non-Settling Insurance Company, and no Non-Settling Insurance Company is a third-party beneficiary of the Insurance Entity Injunction, except as otherwise specifically provided in any Insurance Settlement Agreement.**

(ii)    **Terms Regarding Claims Against Insurance Companies.  All Persons that have held or asserted, that hold or assert, or that may in the future hold or assert any Claim, demand, or Cause of Action against any Insurance Company based upon, attributable to, arising out of, or in any way connected with any Insurance Policy, whether in the United States of America or anywhere else in the world, whether sounding in tort, contract, warranty, or any other theory of law, equity, or admiralty, shall be stayed, restrained, and enjoined from taking any action for the purpose of directly or indirectly collecting, recovering, or receiving payment, satisfaction, or recovery with respect to any such Claim, demand, or Cause of Action including:**

(a)    **commencing, conducting, or continuing, in any manner, directly or indirectly, any suit, action, or other proceeding of any kind (including a judicial, arbitration, administrative, or other proceeding) in any forum with respect to any such Claim, demand, or Cause of Action against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or Cause of Action;**

(b)    **enforcing, levying, attaching, collecting, or otherwise recovering, by any means or in any manner, whether directly or indirectly, any judgment, award, decree, or other order against any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or Cause of Action;**

(c)    **creating, perfecting, or enforcing in any manner, directly or indirectly, any encumbrance against any Insurance Company, or the property of any Insurance Company, with respect to any such Claim, demand, or Cause of Action; and**

(d)    **except as otherwise specifically provided in the Plan, asserting or accomplishing any setoff, right of subrogation, indemnity, contribution, or recoupment of any kind, directly or indirectly, against any**

55

obligation of any Insurance Company, or against the property of any Insurance Company, with respect to any such Claim, demand, or Cause of Action;

*provided*, *however*, that (x) the injunction set forth in this <u>Section 10.5(ii)</u> of the Plan shall not impair in any way any actions brought by the Avon Liquidation Trust against any Non-Settling Insurance Company and (y) the Avon Liquidation Trust shall have the sole and exclusive authority at any time to terminate, or reduce, or limit the scope of the injunction set forth in this <u>Section 10.5</u> of the Plan with respect to any Non-Settling Insurance Company upon express written notice to such Non-Settling Insurance Company.

(iii)   Reservations.   Notwithstanding anything to the contrary above, this Insurance Entity Injunction shall not enjoin:

(a)   the rights of any Person to the treatment or other rights accorded them under the Plan, as applicable, including the rights of holders of Talc Claims to assert such Claims, as applicable, in accordance with the Trust Distribution Procedures;

(b)   the rights of any Person to assert any Claim, debt, obligation, Cause of Action, or liability for payment of ALT Operating Expenses;

(c)   the rights of the Avon Liquidation Trust to prosecute any action based on or arising from the Insurance Policies;

(d)   the rights of the Avon Liquidation Trust to assert any Claim, debt, obligation, Cause of Action or liability for payment against an Insurance Company based on or arising from the Insurance Policies, except to the extent otherwise released;

(e)   the rights of any Insurance Company to assert (1) any Claim, debt, obligation, Cause of Action, or liability for payment against any Non-Settling Insurance Company or (2) any Claim for reinsurance under reinsurance contracts or any Claim under retrocessional contracts among the Settling Insurance Companies and any Non-Settling Insurance Company; or

(f)   the rights of any Insurance Company, in accordance with the Trust Distribution Procedures, to assert any Claim for contribution, subrogation, indemnification or other similar Cause of Action against the Avon Liquidation Trust for the Settling Insurance Companies' alleged share or equitable share, or to

56

**enforce subrogation rights, if any, of the defense and/or indemnity obligation for any Talc Claim or for any Cause of Action released in any Insurance Settlement Agreement.**

(iv)    **Judgment Reduction for Insurer Contribution Claims Against Settling Insurers.  If a Non-Settling Insurance Company obtains a final and non-appealable judicial determination or binding arbitration award that it would have been entitled to recover a sum certain on its right, Claim, or Cause of Action against a Settling Insurance Company for contribution, subrogation, equitable subrogation, indemnification, allocation, reimbursement, or offset relating to one or more Claims assumed by the Avon Liquidation Trust, or agrees to such entitlement to such sum certain, then the liability for such determination, award, or agreement shall be satisfied solely by the Avon Liquidation Trust reducing or limiting any Claim, Cause of Action, or judgment it has against the Non-Settling Insurance Company for recovery on any such assumed Claim that gave rise to such right, Claim, or Cause of Action for contribution, subrogation, equitable subrogation, indemnification, allocation, reimbursement, or offset.  The Avon Liquidation Trust shall not seek to enforce any judicial determination or binding arbitration award it has obtained against an Insurance Company that is seeking such reduction until the Avon Liquidation Trust's judgment or award becomes final and non-appealable.  Post-judgment interest shall not accrue with respect to the portion of any such Claim that is so reduced by a Final Order as a result of a Claim for contribution, subrogation, equitable subrogation, indemnification, allocation, reimbursement, or offset relating to one or more assumed Claims.**

10.6    _Releases_.

As of the Effective Date, except for the right to enforce the Plan or any right or obligation arising under the Plan Documents, for good and valuable consideration, the adequacy of which is hereby confirmed, including the service of the Released Parties before and during the Chapter 11 Cases to facilitate the liquidation of the Debtors and the implementation of the Trust Formation Transactions, and except as otherwise explicitly provided in the Plan or in the Confirmation Order, on and after the Effective Date, the Released Parties shall be deemed conclusively, absolutely, unconditionally, irrevocably, and forever released, to the maximum extent permitted by law, as such law may be extended subsequent to the Effective Date, by the Debtors, the Liquidating Debtors, the Estates and any Person seeking to exercise the rights of the Estates, and any successors to the Debtors or any Estate representative appointed or selected pursuant to section 1123(b)(3) of the Bankruptcy Code, from any and all Claims, counterclaims, disputes, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, Liens, remedies, losses, contributions, indemnities, costs, liabilities, attorneys' fees and expenses whatsoever, including any derivative claims, asserted or assertable on behalf of the Debtors, the Liquidating Debtors, or their Estates (including any Causes of Action arising under chapter 5 of the Bankruptcy Code), whether liquidated or unliquidated, fixed or contingent, matured or unmatured, known or unknown, foreseen or unforeseen, asserted or unasserted, accrued or unaccrued, existing or hereinafter arising, whether in law or equity, whether sounding in tort or contract, whether arising under federal or state statutory or common law, or any other applicable international, foreign, or domestic law, rule, statute, regulation, treaty,

**right, duty, requirement or otherwise, that the Debtors, the Liquidating Debtors, or their Estates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the holder of any Claim or Interest or other Person, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, their Estates, the conduct of the Company's businesses, the Chapter 11 Cases, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party (including the exercise of any common law or contractual rights of setoff or recoupment by any Released Party at any time on or prior to the Effective Date), the DIP Documents, the Natura Secured Credit Documents, the Natura Unsecured Promissory Notes, the Natura Settlement Agreement, the Sale, the Stock and Asset Purchase Agreement, the Trust Formation Transactions, the ALT Documents, the restructuring of any Claim or Interest before or during the Chapter 11 Cases, the Disclosure Statement, the Plan, and related agreements, instruments, and other documents, and the negotiation, formulation, preparation or implementation thereof, the solicitation of votes with respect to the Plan, or any other act or omission; *provided*, *however*, that the Debtors do not release, and the Avon Liquidation Trust shall retain, Claims or Causes of Action arising out of, or related to, any act or omission of a Released Party that is determined in a Final Order by a court of competent jurisdiction to constitute a criminal act, fraud, gross negligence, or willful misconduct.  The Debtors, the Liquidating Debtors, the Avon Liquidation Trust, and any other entities formed pursuant to the Plan shall be bound, to the same extent the Debtors and the Estates are bound, by the releases set forth in this <u>Section 10.6</u> of the Plan.**

### 10.7    *<u>Exculpation</u>*.

Notwithstanding anything herein to the contrary, and to the maximum extent permitted by applicable law, no Exculpated Party shall have or incur, and each Exculpated Party is hereby exculpated from, any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss, and liability for any act or omission taken on or after the Petition Date and prior to or on the Effective Date relating to, in any way, or arising out of: the Chapter 11 Cases; the negotiation, formulation, preparation, dissemination, implementation, administration, confirmation, consummation, and pursuit of the Disclosure Statement (including any information provided, or statements made, in the Disclosure Statement or omitted therefrom), the Trust Formation Transactions, the ALT Documents, the Plan (including the Plan Supplement), and the solicitation of votes for, and confirmation of, the Plan; the funding or consummation of the Plan (including the Plan Supplement); the occurrence of the Effective Date; the DIP Documents, the Natura Secured Credit Documents, the Natura Unsecured Promissory Notes, the Natura Settlement Agreement, the Sale, the Stock and Asset Purchase Agreement, and negotiations regarding or concerning any of the foregoing; the administration of the Plan and the property to be distributed under the Plan; the wind-down of the Debtors or the Liquidating Debtors, as applicable; the offer, issuance, and distribution of any securities under or in connection with the Plan; and the transactions in furtherance of any of the foregoing.  This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such Exculpated Parties from liability.  Notwithstanding the foregoing, this <u>Section 10.7</u> of the Plan shall not exculpate any Exculpated Party with respect to any act or

omission of such Exculpated Party that is determined in a Final Order by a court of competent jurisdiction to constitute a criminal act, fraud, gross negligence, or willful misconduct.

### 10.8    *Injunction Related to Releases and Exculpation*.

To the maximum extent permitted under applicable law, no party may commence, continue, amend, pursue, join in, or otherwise support any other party commencing, continuing, amending, or pursuing, whether directly, derivatively, or otherwise, of any Claims, including Interests, Liens, charges, encumbrances, obligations, suits, judgments, damages, demands, debts, rights, Causes of Action, and liabilities, against the Debtors, the Liquidating Debtors, the Exculpated Parties, or the Released Parties that relate to, or are reasonably likely to relate to, such Claims released or exculpated in this Plan, without first: (i) requesting a determination from the Bankruptcy Court (which request must attach to the complaint or petition proposed to be filed by the requesting party), after notice and a hearing, that such Claim (a) represents a colorable claim against a Debtor, Liquidating Debtor, Exculpated Party, or Released Party and (b) was not released, enjoined, or otherwise prohibited under this Plan; and (ii) obtaining from the Bankruptcy Court the foregoing determination as well as specific authorization for such party to bring such Claim against any such Debtor, Liquidating Debtor, Exculpated Party, or Released Party.  For the avoidance of doubt, any party that obtains such determination and authorization and subsequently wishes to amend the authorized complaint or petition to add any Claim not explicitly included in the authorized complaint or petition must obtain authorization from the Bankruptcy Court before filing any such amendment in the court where such complaint or petition is pending.  The Bankruptcy Court will have sole and exclusive jurisdiction to determine whether a Claim constitutes a direct or derivative claim, is colorable and, only to the extent legally permissible, will have jurisdiction to adjudicate the underlying colorable Claim.

### 10.9    *Subordinated Claims*.

The allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments thereof under this Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, sections 509(c), 510(a), 510(b), or 510(c) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors reserve the right to reclassify any Allowed Claim or Allowed Interest in accordance with any contractual, legal, or equitable subordination relating thereto.

### 10.10    *Preservation of Causes of Action and Reservation of Rights*.

The Avon Liquidation Trust shall have the right to prosecute any and all Retained Causes of Action.  Pursuant to section 1123(b) of the Bankruptcy Code, except as provided in Sections 10.4 through 10.8 of this Plan, nothing contained in this Plan or the Confirmation Order shall be deemed to be a waiver or relinquishment of any rights, Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses that the Debtors had immediately before the Effective Date on behalf of the Estates or of themselves in accordance with any provision of the Bankruptcy Code or any applicable non-bankruptcy law, including any actions

specifically enumerated in the Schedule of Retained Causes of Action to be filed as part of the Plan Supplement.  Subject to <u>Sections 10.4</u> through <u>10.8</u> of this Plan, all such Claims, Causes of Action, rights of setoff or recoupment, or other legal or equitable defenses shall be transferred to the Avon Liquidation Trust which shall have, retain, reserve, and be entitled to assert all such Claims, Causes of Action, rights of setoff, or recoupment, and other legal or equitable defenses as fully as if the Chapter 11 Cases had not been commenced, and all of the Debtors' and the Liquidating Debtors' legal and equitable rights with respect to any Claim or Interest may be asserted after the Effective Date to the same extent as if the Chapter 11 Cases had not been commenced.

### 10.11  *Ipso Facto and Similar Provisions Ineffective*.

Any term of any policy, contract, or other obligation applicable to a Debtor shall be void and of no further force or effect with respect to any Debtor to the extent such policy, contract, or other obligation is conditioned on, creates an obligation of the Debtor as a result of, or gives rise to a right of any Person based on any of the following: (i) the insolvency or financial condition of a Debtor; (ii) the commencement of the Chapter 11 Cases; (iii) the confirmation or consummation of this Plan, including any change of control that shall occur as a result of such consummation; or (iv) the Trust Formation Transactions.

### 10.12  *Solicitation of Plan*.

As of and subject to the occurrence of the Confirmation Date: (i) the Debtors shall be deemed to have solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code, including sections 1125(a) and (e) of the Bankruptcy Code, and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with such solicitation and (ii) the Debtors and each of their respective directors, officers, employees, affiliates, agents, financial advisors, investment bankers, professionals, accountants, and attorneys shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance, and solicitation shall not be, liable at any time for any violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of any securities under the Plan.

### 10.13  *Corporate Action*.

Upon the Effective Date, by virtue of the solicitation of votes in favor of this Plan and entry of the Confirmation Order, all actions contemplated by this Plan (including any action to be undertaken by the Avon Liquidation Trust and/or the Liquidating Trustee) shall be deemed authorized, approved, and, to the extent taken prior to the Effective Date, ratified without any requirement for further action by holders of Claims or Interests, the Debtors, or any other Entity or Person.  All matters provided for in this Plan involving the corporate structure of the Debtors, and any corporate action required by the Debtors in connection therewith, shall be deemed to have occurred on the Effective Date and shall be in effect, without any requirement of further action by the Debtors or the Estates.

### 10.14   *No Successor Liability*.

Except as otherwise expressly provided in this Plan and the Confirmation Order, the Avon Liquidation Trust: (i) is not, and shall not be deemed to assume, agree to perform, pay, or otherwise have any responsibilities for any liabilities or obligations of the Debtors or any other Person relating to or arising out of the operations or the assets of the Debtors on or prior to the Effective Date; (ii) is not, and shall not be, a successor to the Debtors by reason of any theory of law or equity or responsible for the knowledge or conduct of any Debtor prior to the Effective Date; and (iii) shall not have any successor or transferee liability of any kind or character.

### 10.15   *Provision Related to Natura Settlement*.

For the avoidance of doubt, neither Natura nor its non-Debtor affiliates shall be a "Released Party" under this Plan. Nothing in this Plan, including the injunction, releases, or exculpation provided herein, shall, or shall be deemed to, expand or otherwise affect the releases granted to Natura or its non-Debtor affiliates pursuant to the Natura Settlement Order and the Natura Settlement Agreement.

## ARTICLE XI    RETENTION OF JURISDICTION.

### 11.1   *Retention of Jurisdiction*.

(i)    Without limiting or modifying the Bankruptcy Court's exclusive jurisdiction, if any, under applicable law, the Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)    to hear and determine applications for the assumption or rejection of executory contracts or unexpired leases and any disputes over Cure Amounts resulting therefrom;

(b)    to determine any motion, adversary proceeding, application, contested matter, and other litigated matter pending on, or commenced after, entry of the Confirmation Order;

(c)    to hear and resolve any disputes arising from or related to (1) any orders of the Bankruptcy Court granting relief under Bankruptcy Rule 2004 or (2) any protective orders entered by the Bankruptcy Court in connection with the foregoing;

(d)    to ensure that Distributions to holders of Allowed Claims are accomplished as provided in this Plan and the Confirmation Order;

(e)    to consider Claims or the allowance, classification, priority, compromise, estimation, or payment of any Claim, including any Administrative Expense Claim;

(f)    to enter, implement, or enforce such orders as may be appropriate in the event that the Confirmation Order is, for any reason, stayed, reversed, revoked, modified, or vacated;

(g)    to issue and enforce injunctions, enter and implement other orders, and take such other actions as may be necessary or appropriate to restrain interference by any Person with the consummation, implementation, or enforcement of this Plan, the Confirmation Order, or any other order of the Bankruptcy Court;

(h)    to hear and determine any application to modify this Plan in accordance with section 1127 of the Bankruptcy Code to remedy any defect or omission or reconcile any inconsistency in this Plan, the Disclosure Statement, or any order of the Bankruptcy Court, including the Confirmation Order, in such a manner as may be necessary to carry out the purposes and effects thereof;

(i)    to hear and determine all Professional Fee Claims;

(j)    to resolve disputes concerning Disputed Claims or the administration thereof;

(k)    to hear and resolve disputes related to the Insurance Rights Transfer and/or the Insurance Rights, to the extent permitted under applicable law;

(l)    to hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of this Plan, the Confirmation Order, any transactions or payments in furtherance of either, or any agreement, instrument, or other document governing, or related to, any of the foregoing;

(m)    to take any action and issue such orders, including any such action or orders as may be necessary after entry of the Confirmation Order or the occurrence of the Effective Date, as may be necessary to construe, enforce, implement, execute, and consummate this Plan, including any release, exculpation, or injunction provisions set forth in this Plan, or to maintain the integrity of this Plan following the occurrence of the Effective Date;

(n)     to determine such other matters, and for such other purposes, as may be provided in the Confirmation Order;

(o)     to hear and determine any other matters related to the Chapter 11 Cases and not inconsistent with the Bankruptcy Code or title 28 of the United States Code;

(p)     to resolve any disputes concerning whether a Person had sufficient notice of the Chapter 11 Cases, the Disclosure Statement, any solicitation conducted in connection with the Chapter 11 Cases, any bar date established in the Chapter 11 Cases, or any deadline for responding or objecting to a Cure Amount, in each case, for the purpose of determining whether a Claim or Interest is released or treated hereunder or for any other purpose;

(q)     to recover all Assets of the Debtors and property of the Estates, wherever located; and

(r)     to enter a final decree closing each of the Chapter 11 Cases.

(ii)    The Bankruptcy Court shall retain jurisdiction of all matters arising under, arising out of, or related to the Chapter 11 Cases and the Plan to, among other things, hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code (including the expedited determination of taxes under section 505(b) of the Bankruptcy Code).

(iii)    Notwithstanding Section 11.1(i)(k) of this Plan, and except in connection with Section 5.4(iv), nothing contained herein concerning the retention of jurisdiction by the Bankruptcy Court shall be deemed to be a finding or conclusion that (a) the Bankruptcy Court in fact has jurisdiction with respect to any Insurance Rights or (b) any such jurisdiction is exclusive with respect to any Insurance Rights.  Any court other than the Bankruptcy Court that has jurisdiction over an action involving the Insurance Policies shall have the right to exercise such jurisdiction.

(iv)    To the extent that the Bankruptcy Court is not permitted under applicable law to preside over any of the foregoing matters, the reference to the "Bankruptcy Court" in this Section 11.1 of the Plan shall be deemed to be replaced by the "District Court." Notwithstanding anything in this Section 11.1 of the Plan to the contrary, the resolution of Talc Claims against the Debtors and the forum in which such resolution shall be determined shall be governed by, and in accordance with, the ALT Documents.  Nothing contained in this Section 11.1 of the Plan shall expand the exclusive jurisdiction of the Bankruptcy Court beyond that provided by applicable law.

## ARTICLE XII    MISCELLANEOUS PROVISIONS.

### 12.1    *Exemption from Certain Transfer Taxes*.

To the maximum extent permitted pursuant to section 1146(a) of the Bankruptcy Code, the assignment or surrender of any lease or sublease, or the delivery of any deed or other instrument of transfer under, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments, or assignments executed in connection with any disposition of assets contemplated by the Plan (including transfers of assets to and by the Avon Liquidation Trust) shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, real estate transfer tax, sales or use tax, mortgage recording tax, or other similar tax or governmental assessment.

### 12.2    *Dates of Actions to Implement Plan*.

In the event that any payment or act under this Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

### 12.3    *Amendments*.

(i)    **Plan Modifications**.  This Plan and the Plan Supplement may be amended, modified, or supplemented by the Debtors, [with the consent of the Creditors' Committee, which consent shall not be unreasonably withheld, delayed, or conditioned,] in the manner provided for by section 1127 of the Bankruptcy Code or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, except as otherwise ordered by the Bankruptcy Court.  In addition, after the Confirmation Date, as long as such action does not materially and adversely affect the treatment of holders of Allowed Claims pursuant to this Plan, the Debtors may remedy any defect or omission or reconcile any inconsistencies in this Plan or the Confirmation Order with respect to such matters as may be necessary to carry out the purposes or effects of this Plan, and any holder of a Claim or Interest that has accepted this Plan shall be deemed to have accepted this Plan as amended, modified, or supplemented.

(ii)    **Certain Technical Amendments**.  Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to this Plan and the documents contained in the Plan Supplement without further order or approval of the Bankruptcy Court; *provided*, *however*, that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims or Interests under this Plan.

### 12.4    *Revocation or Withdrawal of Plan*.

The Debtors reserve the right to revoke or withdraw this Plan prior to the Effective Date as to any or all of the Debtors.  If, with respect to a Debtor, this Plan has been revoked or withdrawn prior to the Effective Date, or if confirmation or the occurrence of the Effective Date as to such Debtor does not occur on the Effective Date, then, with respect to such Debtor: (i) this Plan shall be null and void in all respects; (ii) any settlement or compromise

embodied in this Plan (including the fixing or limiting to an amount any Claim or Interest or Class of Claims or Interests), assumption or rejection of executory contracts or unexpired leases affected by this Plan, and any document or agreement executed pursuant to this Plan shall be deemed null and void; and (iii) nothing contained in this Plan shall (a) constitute a waiver or release of any Claim by or against, or any Interest in, such Debtor or any other Person, (b) prejudice in any manner the rights of such Debtor or any other Person, or (c) constitute an admission of any sort by any Debtor or any other Person.

### 12.5    *Payment of Statutory Fees*.

All Statutory Fees that are due and payable for each Debtor's Chapter 11 Case shall be paid by the Debtors on the Effective Date.  After the Effective Date, the Debtors, the Liquidating Debtors, and the Avon Liquidation Trust shall be jointly and severally liable to pay any and all Statutory Fees when due and payable.  The Debtors shall file all monthly operating reports due prior to the Effective Date when they become due, using UST Form 11-MOR.  After the Effective Date, the Debtors, the Liquidating Debtors, and the Avon Liquidation Trust shall file with the Bankruptcy Court separate UST Form 11-PCR reports when they become due. Notwithstanding anything called for in the Plan to the contrary, the Debtors, the Liquidating Debtors, and the Avon Liquidation Trust, shall remain obligated to pay Statutory Fees to the U.S. Trustee and make such reports until the earliest of that particular Debtor's case being closed, dismissed, or converted to a case under chapter 7 of the Bankruptcy Code.  The U.S. Trustee shall not be required to file any Administrative Expense Claim in these cases and shall not be treated as providing any release under the Plan.  The obligations under this Section 12.5 of the Plan shall remain for each Debtor until such time as a final decree is entered closing the Chapter 11 Case for such Debtor, a Final Order converting such Debtor's Chapter 11 Case to a case under chapter 7 of the Bankruptcy Code is entered, or a Final Order dismissing such Debtor's Chapter 11 Case is entered.

### 12.6    *Substantial Consummation*.

On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127(b) of the Bankruptcy Code.

### 12.7    *Severability*.

If, prior to entry of the Confirmation Order, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void, or unenforceable, the Bankruptcy Court, at the request of the Debtors, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void, or unenforceable, and such term or provision shall then be applicable as altered or interpreted.  Notwithstanding any such holding, alteration, or interpretation by the Bankruptcy Court, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding, alteration, or interpretation.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may have been altered or interpreted in accordance with this Section 12.7 of the Plan, is valid and enforceable pursuant to its terms.

**12.8**    *Governing Law*.

Except to the extent that the Bankruptcy Code or other federal law is applicable, or to the extent that a Plan Document provides otherwise, the rights, duties, and obligations arising under this Plan and the Plan Documents shall be governed by, and construed and enforced in accordance with, the internal laws of the State of Delaware, without giving effect to the principles of conflicts of laws thereof.

**12.9**    *Immediate Binding Effect*.

Notwithstanding Bankruptcy Rules 3020(e), 6004(h), 7062, or otherwise, upon the occurrence of the Effective Date, the terms of this Plan and the Plan Documents shall be immediately effective and enforceable and deemed binding upon and inure to the benefit of the Debtors, the Liquidating Debtors, the holders of Claims and Interests, the Released Parties, the Exculpated Parties, and each of their respective successors and assigns, including the Liquidating Trustee.

**12.10**    *Successors and Assigns*.

The rights, benefits, and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor, or permitted assign, if any, of each such Person.

**12.11**    *Entire Agreement*.

On the Effective Date, this Plan, the Plan Supplement, and the Confirmation Order shall supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations concerning such documents, all of which have become merged and integrated into this Plan.

**12.12**    *Computing Time*.

In computing any period of time prescribed or allowed by this Plan, unless otherwise set forth in this Plan or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

**12.13**    *Exhibits to Plan*.

All exhibits, schedules, supplements, and appendices to this Plan (including the Plan Supplement) are incorporated into and are part of this Plan as if set forth in full herein.

**12.14**    *Notices*.

All notices, requests, and demands to or upon the Debtors or the Liquidating Debtors, as applicable, shall be in writing (including by facsimile transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

       (i)    If to the Debtors, prior to the Effective Date:

Avon Products, Inc.
4 International Drive
Suite 110
Rye Brook, NY 10573
Attn:   Lisa Siders (lisa.siders@avon.com)
       Philip Gund (philip.gund@ankura.com)

– and –

WEIL, GOTSHAL & MANGES LLP
767 Fifth Avenue
New York, New York 10153
Attn:   Ronit J. Berkovich (ronit.berkovich@weil.com)
       Matthew P. Goren (matthew.goren@weil.com)
       Alejandro Bascoy (alejandro.bascoy@weil.com)
       Jiaheng Zhang (john.zhang@weil.com)
Telephone:    (212) 310-8000
Facsimile:    (212) 310-8007

– and –

RICHARDS, LAYTON & FINGER, P.A.
One Rodney Square
920 North King Street
Wilmington, Delaware 19801
Attn:   Mark D. Collins (collins@rlf.com)
       Michael J. Merchant (merchant@rlf.com)
       Zachary I. Shapiro (shapiro@rlf.com)
       David T. Queroli (queroli@rlf.com)
Telephone:    (302) 651-7700
Facsimile:    (302) 651-7701

       (ii)   If to the Liquidating Debtors, after the Effective Date:

An address to be identified in the Plan Supplement.

       All notices, requests, and demands to or upon the Creditors' Committee, shall be in writing (including by facsimile transmission) and, unless otherwise provided herein, shall be deemed to have been duly given or made only when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

       COOLEY LLP
       55 Hudson Yards
       New York, N.Y. 10001
       Attn:  Cullen D. Speckhart

Michael Klein
Paul J. Springer
Telephone: (212) 479-6000
Facsimile: (212) 479-6275
cspeckhart@cooley.com
mklein@cooley.com
pspringer@cooley.com

– and –

CAPLIN & DRYSDALE, CHARTERED
1200 New Hampshire Ave NW, 8th Floor
Washington, D.C. 20036
Attn:   Kevin C. Maclay
         Todd E. Phillips
         Kevin M. Davis
Telephone: (202) 862-5000
Facsimile: (202) 429-3301
kmaclay@capdale.com
tphillips@capdale.com
kdavis@capdale.com

– and –

A. M. SACCULLO LEGAL, LLC
27 Crimson King Drive
Bear, DE 19701
Attn:   Anthony M. Saccullo
         Mark T. Hurford
Telephone: (302) 836-8877
Facsimile: (302) 836-8787
ams@saccullolegal.com
mark@saccullolegal.com

After the occurrence of the Effective Date, the Liquidating Debtors and the Liquidating Trustee have authority to send a notice to entities providing that to continue to receive documents pursuant to Bankruptcy Rule 2002, such entities must file a renewed request to receive documents pursuant to Bankruptcy Rule 2002; *provided*, *however*, that the U.S. Trustee need not file such a renewed request and shall continue to receive documents without any further action being necessary.  After the occurrence of the Effective Date, the Debtors and the Liquidating Trustee are authorized to limit the list of entities receiving documents pursuant to Bankruptcy Rule 2002 to the U.S. Trustee and those entities that have filed such renewed requests.

### 12.15 *Dissolution of Creditors' Committee*.

On the Effective Date, the Creditors' Committee will dissolve; *provided*, *however*, that following the Effective Date, the Creditors' Committee shall continue in existence

and have standing and a right to be heard for the limited purpose of filing applications, and any relief related thereto, for compensation by Professional Persons.  Upon the dissolution of the Creditors' Committee, the Creditors' Committee and its respective Professional Persons will cease to have any duty, obligation, or role arising from, or related to, the Chapter 11 Cases and shall be released and discharged from all rights and duties from, or related to, the Chapter 11 Cases.

### 12.16  *Reservation of Rights*.

Except as otherwise provided herein, this Plan shall be of no force or effect unless the Bankruptcy Court enters the Confirmation Order.  None of the filing of this Plan, any statement or provisions of this Plan, or the taking of any action by the Debtors with respect to this Plan shall be, or deemed to be, an admission or waiver of any rights of the Debtors with respect to any Claim or Interests prior to the Effective Date.

Dated: February 28, 2025

By:    */s/ Philip J. Gund*
Name: Philip J. Gund
Title:  Chief Restructuring Officer and Treasurer

**AIO US, INC.**
**AVON PRODUCTS, INC.**
**MI HOLDINGS, INC.**
**AVON CAPITAL CORPORATION**
**SURREY LEASING, LTD.**
**AVON AMERICAS, LTD.**
**AVON COMPONENT MANUFACTURING, INC.**
**AVON COSMETICS DE, INC.**
**AVON HOLDINGS LLC**
**AVON-LOMALINDA, INC.**
**AVON NA HOLDINGS LLC**
**AVON OVERSEAS CAPITAL CORPORATION**
**AVON PACIFIC, INC.**
**AVON (WINDSOR) LIMITED**
**CALIFORNIA PERFUME COMPANY, INC.**
**MANILA MANUFACTURING COMPANY**
**RETIREMENT INNS OF AMERICA, INC.**
**SILPADA DESIGNS LLC**
**SURREY PRODUCTS, INC.**
**VIVA PANAMA HOLDINGS LLC**

## Exhibit A

**Trust Distribution Procedures**

**[To Come]**