# Weil, Gotshal & Manges LLP

767 Fifth Avenue
New York, NY 10153-0119
+1 212 310 8000 tel
+1 212 310 8007 fax

**Jessica L. Falk**
+1 (212) 310-8511
jessica.falk@weil.com

July 2, 2025

Hon. Craig T. Goldblatt
United States Bankruptcy Court
District of Delaware
824 North Market Street
3rd Floor, Courtroom 7
Wilmington, DE 19801

Re: *In re AIO US, Inc., et al.*, Case No. 24-11836 (CTG)

Dear Judge Goldblatt:

    Weil, Gotshal & Manges LLP ("**Weil**") is counsel to the debtors (collectively, the "**Debtors**") in the above-referenced chapter 11 cases. The purpose of this letter is to respectfully request the Court's assistance in protecting the Debtors from irrelevant and disproportional discovery and expert testimony in connection with the upcoming hearing on confirmation of the Debtors' *Second Amended Joint Chapter 11 Plan of Liquidation of AIO US, Inc. and Its Debtor Affiliates* [Docket No. 1048] (as may be amended, modified, or supplemented, the "**Plan**").[1] Specifically, the Debtors request that the Court (i) quash, in part, the deposition notice served on the Debtors, on June 25, 2025, (the "**Notice**") pursuant to Federal Rule of Civil Procedure 30(b)(6) ("**Rule 30(b)(6)**") by Certain London Market Insurers[2] and certain other insurers[3] (collectively, "**Certain Insurers**") and (ii) exclude any and all expert testimony from Certain Insurers in connection with confirmation of the Plan.

---

[1]    Capitalized terms used but not herein defined have the meanings ascribed to them in the Plan.

[2]    Certain London Market Insurers includes: Certain Underwriters at Lloyds, London, Tenecom Limited, f/k/a The Yasuda Fire & Marine Ins. Co. of Europe, Ltd., Tenecom Limited, f/k/a Winterthur Swiss Insurance Company, Cavello Bay Reinsurance Limited (as successor in interest to; i) Brittany Insurance Company Limited; and ii) Harper Insurance Limited (f/k/a Turegurn Insurance Company), River Thames Insurance Company Limited (as successor in interest to Unionamerica Insurance Company Limited, which was in turn successor in interest to certain business of St Katherine Insurance Company Limited), and Accredited Insurance Europe Limited (as successor in interest to Ancon (UK) Insurance Company Limited).

[3]    The other insurers comprising the Certain Insurers are: Wellfleet New York Insurance Company, formerly known as Atlanta International Insurance Company, as successor to Drake Insurance Company of New York ("**AIIC**"); AIG-affiliated underwriting companies including Lexington Insurance Company, AIU Insurance Company, and Granite State Insurance Company; and Starr Indemnity & Liability Company, as successor in interest to Republic Insurance Company.

Judge Goldblatt
July 2, 2025
Page 2

**Weil, Gotshal & Manges LLP**

Given the exigent circumstances, including but not limited to a fast approaching 30(b)(6) Deposition (July 11, 2025), a close of discovery deadline (which is July 14, 2025) and confirmation hearing (which is scheduled to commence on July 21, 2025), the Debtors request, if the Court believes that a hearing on this letter and any response thereto is necessary, that it schedule a Zoom discovery conference on or about July 9 or 10, 2025, with responses, if any, due one (1) calendar day prior to the conference.[4]

Certain Insurers' discovery request is not only overbroad and irrelevant to Plan confirmation under section 1129 of the Bankruptcy Code, but it is also costly and time-consuming, and a drain on the limited remaining resources that comprise the Debtors' Estates. The Notice's Rule 30(b)(6) Topics ("**Topics**") 1 through 6 seek testimony on the merits of underlying Talc Claims, including information relating to (i) historical patterns and trends involving Talc Claims, (ii) the sources of talc used in the Debtors' products, (iii) prepetition Talc settlement and verdict histories, (iv) prior defenses asserted by the Debtors in response to Talc Claims, (v) prior testimony concerning the presence or absence of asbestos in the Debtors' products, and (vi) expert evidence submitted by the Debtors in Talc Claims before the Petition Date— none of which, as the Court already noted at prior hearings, has any bearing on the Plan's satisfaction of the section 1129 confirmation standards. Topic 7 inappropriately seeks, via Rule 30(b)(6), testimony on the identity, qualifications, and opinions of potential expert witnesses.

As explained in connection with last week's hearing, the Debtors' Plan does not value the total amount of Talc Claim liabilities or allow any Talc Claims in whole or in part, nor does the Plan determine any insurer's liability for Talc Claims. The Debtors are not requesting this Court make any findings on the reasonableness or propriety of Talc Claim amounts to be paid by the Avon Liquidation Trust, and, as the Debtors confirmed on the record at the hearing last week, the Debtors do not intend to prejudice or impair the insurers' rights or defenses under their policies with respect to any future coverage litigation. On the contrary, the Plan provides that "[f]or the avoidance of doubt, nothing herein determines whether any Insurance Company is obligated to pay the amount of any Allowed Talc Claim as determined under the Trust Distribution Procedures for an Allowed Talc Claim[.]" Plan § 9.1(x)(a).

Accordingly, there is no need for any expert testimony or Rule 30(b)(6) testimony on Topics 1-7 for Certain Insurers to adequately participate in Plan confirmation.

---

[4] The Debtors are available at the Court's request and can certainly appear before the Court in advance of July 10th. The Debtors have only suggested July 10th in order to allow Certain Insurers to submit their response letter after the July 4th holiday weekend.

Judge Goldblatt
July 2, 2025
Page 3

**Weil, Gotshal & Manges LLP**

## I. Background

Throughout these chapter 11 cases, the Debtors have been extremely responsive and proactive in seeking confirmation of their Plan in the face of Certain Insurers' discovery requests. Conversely, Certain Insurers have, without any legitimate basis to do so, sought to force an elongated confirmation timeline that has twice now been rejected by the Court. *See* May 19, 2025 Hr'g Tr. 55:9-56:3; June 26, 2025 Hr'g Tr. 21:25-22:19. Certain Insurers did not serve any discovery requests until May 22, 2025,[5] two days after the Debtors submitted their amended Plan to the Court [Docket No. 1048]. Once served, it was immediately apparent to the Debtors that these requests could and should have been sought earlier as the majority of the requests pertained to pre-petition Talc Claims, which mirrored ones served by the Creditors' Committee and filed with the Court on September 20, 2024 [Docket No. 132]. This delay was even more avoidable given that, six (6) weeks prior to Certain Insurers serving their document requests, the Debtors addressed all insurers requesting any anticipated discovery requests ahead of the amended Plan submission. Instead of raising their hand then, Certain Insurers waited a month to express an interest in seeking discovery from the Debtors.[6] Once Certain Insurers expressed an interest in discovery, the Debtors' counsel immediately contacted their counsel to discuss the scope of any forthcoming discovery request to ensure a timely production of materials. *See* Debtors' Objection at 3. Only after a few additional weeks of outreach from the Debtors' counsel did Certain Insurers serve discovery requests.

To date, the Debtors have produced approximately 12,000 documents to Certain Insurers, the first wave of which were produced within a week of being served with Certain Insurers' discovery requests.[7] This first production not only contained the majority of the documents ultimately produced to Certain Insurers (11,150 documents), but were responsive to the Talc-related topics (Topics 1-6) they now raise in the Notice. Certain Insurers have never taken issue with the completeness of the production nor indicated a need for further explanation on its contents.

Certain Insurers served the Notice[8] on the Debtors on June 25, 2025, the night before the hearing before the Court on Certain Insurers' Motion to Modify Plan Confirmation Schedule [Docket No. 1137]. Given the timing of service, the Debtors waited until after the conclusion of the hearing on June 26 to schedule a meet and confer on the Notice and its Topics.[9] Only one of the Certain Insurers' counsel

---

[5] Certain Insurers served both interrogatories and requests for production of documents on May 22, 2025.

[6] *See* Debtors' Objection to Certain Insurers' Motion to Reconsider Prior Ruling and Modify Plan Confirmation Schedule [Docket No. 1168] (the "**Debtors' Objection**"), at 4.

[7] Additionally, the Debtors responded to Certain Insurers' interrogatories on June 20, 2025.

[8] Attached as **Exhibit A** hereto.

[9] *See* Email dated June 26, 2025 from D. Burdo to S. Ross, *et al.* (representing that "the Debtors do not believe expert testimony or a 30(b)(6) deposition is relevant or necessary to resolve any of the issues raised by the insurers relating to the

Judge Goldblatt  
July 2, 2025  
Page 4

Weil, Gotshal & Manges LLP

responded that day with their availability; the remaining counsel did not respond with availability until further prompting from the Debtors three days later. *See* Ex. B.

On July 1, 2025, counsel for the Debtors and Certain Insurers met and conferred on the Notice and the expert discovery issue. The Debtors informed Certain Insurers that they would not object to, and would put forth a witness to testify on, Topics 8 and 12. As to Topics 9, 10, and 11, during the meet and confer, the Debtors' counsel explained that they already provided interrogatory responses to these exact Topics 9 and 11 and that an interrogatory was more appropriate for Topic 10. After the call, via e-mail, Certain Insurers represented that they were not agreeable to accepting interrogatory responses for those Topics.[10] The Debtors, therefore, are prepared to abstain from objecting to Topics 9 and 11, and instead will have any corporate witness read the corresponding interrogatory responses into the record, and will also provide testimony on Topic 10. The Debtors and Certain Insurers reached an impasse on Topics 1-7. Accordingly, the Debtors filed this letter with the Court.

## II. Legal Standards

Pursuant to Rule 26 of the Federal Rules of Civil Procedure— made applicable to this proceeding by Rules 7026 and 9014 of the Federal Rules of Bankruptcy Procedure— parties can *only* obtain discovery that is (i) "relevant" to any party's claim or defense and (ii) "proportional" to the needs of the case considering, among other things, the "importance of the discovery in resolving the issues" and "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). A court must limit discovery if, among other things, "the proposed discovery is outside the scope permitted by Rule 26(b)(1)" or "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]" Fed. R. Civ. P. 26(b)(2)(C).

Certain Insurers, as proponents of the expert testimony, "bear the burden of demonstrating by a preponderance of the evidence that the testimony is admissible." *In re Nellson Nutraceutical, Inc.*, 356 B.R. 364, 372 (Bankr. D. Del. 2006) (citing *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 591 (1993)). Federal Rule of Evidence 702 governs the admissibility of qualified expert testimony. *See* Fed. R. Evid. 702; *Daubert*, 509 U.S. at 588. In order to be admissible, evidence must first be relevant, meaning

---

Plan's language protecting and preserving the insurers' rights and defenses with respect to any future coverage litigation" but "are willing to meet and confer to discuss"), attached as **Exhibit B** hereto.

[10] *See* Email dated July 1, 2025 from N. Reinhardt to P. Springer, *et al.* (representing that the Certain Insurers "are not agreeable to interrogatories being submitted by the Debtors or Committee in lieu of pursuing the topics of examination at deposition"), attached as **Exhibit C** hereto.

Judge Goldblatt  
July 2, 2025  
Page 5

**Weil, Gotshal & Manges LLP**

it "helps the trier of fact to understand the evidence or to determine a fact in issue." *In re Nellson Nutraceutical*, 356 B.R. at 37 (quoting *Oddi v. Ford Motor Co.*, 234 F.3d 136, 145 n.12 (3d Cir. 2000)).

### III. Motion to Quash Topics 1-7 of the Rule 30(b)(6) Notice

#### a. Topics 1-6

Topics 1-6 should be quashed because they seek testimony on information that is wholly irrelevant to the Plan's confirmation under section 1129 of the Bankruptcy Code. These Topics concern information related to the underlying validity, allowance, merits, and defenses of individual Talc Claims[11]— none of which is at issue or needs to be assessed in connection with confirmation of the Debtors' Plan, and all of which were previously requested by Certain Insurers through their document requests. Certain Insurers' own Objection even confirms that they are only pursuing this discovery to litigate the merits of the Talc Claims. *See Insurers' Objection to the Debtors' Plan of Reorganization* [Docket No. 1233] (the "**Insurers' Objection**"), at 15, 21 (asserting that the insurers will put forth evidence that talc does not cause mesothelioma, ovarian cancer, or other diseases).

But debating the science of the Talc Claims is not warranted where, as here, the Debtors' Plan does not estimate or allow any Talc Claims, individually or in the aggregate. Rather, the Plan simply

---

[11] Topic 1 seeks testimony on "[t]he Talc Claims against the Debtors, including the number, nature, scope, allegations, patterns, trends, and categories of such claims." Notice at 7.

Topic 2 seeks testimony on "[t]he source of talc used in the Debtors' products." *Id*.

Topic 3 seeks testimony on "[t]he Debtors' Talc Claims settlement and verdict history, including: (a) all settlements; judgments, verdicts, and resolutions; (b) amounts paid or agreed to be paid; (c) factual and legal bases for resolutions; (d) patterns and trends in settlement and verdict amounts; (e) criteria used to evaluate and resolve claims; and (f) statistical analyses, reports, or summaries concerning claim resolution history." *Id*.

Topic 4 seeks testimony on "[t]he defenses asserted by the Debtors in response to the Talc Claims, including: (a) all affirmative defenses, counterclaims, and third-party claims; (b) factual and legal bases for such defenses; (c) defensive strategies employed; (d) changes in defensive strategies over time; (e) effectiveness of defenses; and (f) Documents or Communications concerning defensive strategy development, implementation, or modification." *Id*.

Topic 5 seeks testimony on "[a]ny testimony concerning the presence or absence of asbestos in the Debtors' products, including: (a) testimony by current or former officers, directors, employees, agents, or representatives of the Debtors; (b) third-party testimony on behalf of the Debtors; (c) substance and content of such testimony; (d) witness preparation; (e) related Documents or Communications; and (f) contradictions, inconsistencies, or changes in testimony over time." *Id*.

Topic 6 seeks testimony on "[e]xpert evidence submitted by the Debtors in Talc Claims before the Petition Date, including: (a) expert witness reports, opinions, and testimony; (b) selection and retention of experts; (c) preparation and content of expert opinions and reports; (d) expert qualifications and credentials; (e) fees and expenses paid to experts; (f) challenges to or exclusion of expert evidence; (g) related Documents or Communications; and (h) changes in expert opinions or testimony over time." *Id*. at 7-8.

Judge Goldblatt
July 2, 2025
Page 6

**Weil, Gotshal & Manges LLP**

proposes to establish Trust Distribution Procedures ("**TDP**") that assess the validity of Talc Claims, the allowed amount, if any, of such claims, and the process and procedure for making distributions on any allowed claims thereafter. Because the Debtors' Plan does not operate to determine or allow the amount of any Talc Claims, as part of a settlement or otherwise, without scrutiny, the history and merits of the individual Talc Claims have no bearing on whether the Plan satisfies the confirmation standards under section 1129 of the Bankruptcy Code.

Relatedly, the Debtors are not asking this Court, in confirming the Plan, to make a finding that any Talc Claim value in the TDP is appropriate or binding on any insurer. To the contrary, in section 9.1 of the Plan, the Debtors provide that nothing therein "determines whether any Insurance Company is obligated to pay the amount of any Allowed Talc Claim as determined under the Trust Distribution Procedures for an Allowed Talc Claim." Debtors' Plan § 9.1(x)(a); *see also* Debtors' Plan § 5.6. Accordingly, because the merits or ultimate value of any Talc Claim is being set or allowed under the Plan, the values of Talc Claims are irrelevant to confirmation of the Debtors' Plan under section 1129.

This Court has made clear that extensive discovery on this topic is not necessary to confirmation of the Plan. At the hearing on approval of the Debtors' Disclosure Statement and solicitation procedures, the Court noted extensive discovery is not necessary where a plan appropriately preserves the rights and defenses of insurers with respect to any future coverage litigation. Specifically, the Court stated:

> I think [insurance neutrality] language like that does affect the scope of the discovery that you'd be entitled to get in the bankruptcy case because it certainly— if the bankruptcy neither expands nor contracts the insurance, then your basis to come in and— sort of come in and poke at every— you know, at everything you can in order to prevent something terrible from happening to you, we view it differently, if it really is as neutral as we can make it and doesn't prejudice your rights with respect to whatever coverage defenses you have. . . . If I had evidence that you're being set up, I would have a very different view of your right to look under every stone, but in a world in which I'm satisfied— that there's nothing in front of me that looks like you are and I trust my own ability, to the extent that comes in, to protect you from that, then can't we get this company in and out— or this estate in and out of bankruptcy expeditiously?

May 19, 2025 Hr'g Tr. at 54:4-55:2. The Court reiterated this again at the hearing last week when it denied the Certain Insurers' motion to extend the Plan confirmation timeline. *See* June 26, 2025 Hr'g Tr. at 16:4-11 (when the Court noted that if it was being asked to confirm a Plan that adequately protects and preserves the rights of insurers then it does not "make[] sense to permit the process to be held up in order to establish that the claims amounts are larger than they might have been in the tort system or that the settlement amounts might incur the filing of claims that might not have been filed."); *see also id.* at 21:25-22:12 ("[M]y intent is to allow this to move on the existing schedule, but to the extent there's any issue with the language in the confirmation order, to ensure that the language of whatever order I enter reflects

Judge Goldblatt  
July 2, 2025  
Page 7

**Weil, Gotshal & Manges LLP**

my intention, and it's the— it's based on the representations made by the debtor and the Committee that that's the kind of Plan they intend to be confirming and the schedule that I'm setting is appropriate only in light of that intent, and we're going to proceed that way which means that, to the extent there are issues with language, I view all of that as matters that I can resolve through the confirmation order or any supplemental writing that may be necessary to make clear what we are and aren't doing in confirming the Plan.").

Furthermore, seeking testimony on Topics 1-6 is also unduly burdensome, and unduly cumulative and duplicative. The Debtors have provided information responsive to these Topics in its document productions to Certain Insurers, which Certain Insurers have had for a month. The majority of the Debtors' 12,000 document production is responsive to these Topics. The legal fees associated with preparing a corporate representative to be versed on and have sufficient knowledge of this information in order to provide testimony on the documents Certain Insurers already have in their possession is an unreasonable waste of the Estates' resources.

### b. Topic 7

Topic 7 concerns the identity, qualifications, and other information related to potential expert witnesses and their testimony.[12] Topic 7 should be quashed because such information is not appropriately sought through Rule 30(b)(6) testimony and, as has been relayed to the Court (and Certain Insurers multiple times), expert testimony is unnecessary in connection with plan confirmation. The purpose of a Rule 30(b)(6) deposition is to allow a party to take the depositions of organizations in a manner that prevents organizations from "bandying," or putting up a series of individual witnesses who each claim to lack knowledge of facts known by the corporation. Fed. R. Civ. P. 30(b)(6) Advisory Comm. n. to 1970 Amendments. It is not to seek discovery of topics impermissible in a standard fact witness deposition. Furthermore, as discussed below, any expert testimony is irrelevant to Plan confirmation and should be excluded. However, if Certain Insurers are permitted to proceed with expert witnesses, the Debtors reserve all rights to produce a rebuttal expert.

### IV. Motion *in Limine* to Exclude Expert Testimony

By this letter, the Debtors also seek to preclude and exclude any expert testimony proffered by Certain Insurers as wholly irrelevant to the confirmation of the Debtors' Plan under section 1129 of the Bankruptcy Code. Certain Insurers have represented that they intend to introduce expert testimony at confirmation that, Certain Insurers believe, will establish that the prevailing scientific consensus is that

---

[12] Topic 7 seeks testimony on "[e]xpert witnesses and/or rebuttal experts that the Debtors intend to use at the Confirmation Hearing, including: (a) the identity and qualifications of such experts; (b) the subject matter and scope of their expected testimony; (c) the opinions to be offered; and (d) the basis and methodology for such opinions." Notice at 8.

RLF1 33234517v.1

Judge Goldblatt
July 2, 2025
Page 8

**Weil, Gotshal & Manges LLP**

talc does not cause mesothelioma and, therefore, the Plan overinflates the proposed values for Talc Claims. *See* Insurers' Objection at 15.

As stated above, the Plan does not estimate or allow any Talc Claims, individually or in the aggregate, and therefore the validity or merits of any Talc Claims is not at issue in connection with confirmation of the Debtors' Plan. The value of Talc Claims is not set in the Plan or the TDP, and the Debtors have not asked the Court to make a finding on the same. The TDP states clearly that no provision within it determines whether any Insurance Company is obligated— "for any reason"— to pay the amount of any allowed Talc Claims. Trust Distribution Procedures § 2.3. Even the Debtors' Disclosure Statement states clearly the Debtors' Talc Claims liability is undetermined because such claims will be reconciled after the Effective Date in accordance with the Trust Distribution Procedures. Disclosure Statement §§ 1.2, 1.4. At no point in this process have the Debtors either (i) valued the total amount of Talc Claim liability or (ii) estimated an absolute dollar amount of proceeds that may be received on account of the Talc Claims or their Insurance Policies. Instead, the TDP allows for claim-specific review.

Additionally, contrary to Certain Insurers' assertions otherwise, the Debtors have not contended that talc causes mesothelioma. *See* Debtors' Objection. Thus, expert testimony on the appropriate value of Talc Claims or any connection between the Debtors' talc products and mesothelioma is not relevant here as it will not help this Court to understand or determine a fact at issue at Confirmation. *See In re Nellson Nutraceutical*, 356 B.R. at 37. This aligns with the Court's most recent holdings in the hearing on June 26, 2025, that "appropriate language can protect the insurers." Hr'g Tr. at 21:21-22. Immediately following that same hearing, as suggested by the Court, the Debtors contacted the Certain Insurers and provided them with drafts of the Plan and the proposed Confirmation Order, and asked for the Certain Insurers' feedback on how the Plan and Confirmation Order could incorporate such language to potentially resolve any outstanding issues regarding insurance neutrality. Despite this, not one of the Certain Insurers responded with any proposed language.

Furthermore, allowing Certain Insurers to present expert testimony would be unduly burdensome to the Estates. Should any expert testimony or evidence be permitted at Confirmation, the Debtors will need to depose the experts in advance,[13] prepare for their cross-examination at Confirmation, and potentially, as indicated above, call rebuttal expert witness(es). This is a waste of resources and will only serve to deplete the Estates' limited resources and further diminish recoveries for the Debtors' creditors. All for a frolic-and-detour that has no bearing on whether confirmation is appropriate under section 1129 of the Bankruptcy Code.

---

[13] The Debtors are still awaiting confirmation from the Certain Insurers that their experts will be available for deposition between the date of their report submission and the Confirmation Hearing. If they are unavailable for such deposition, that is an independent basis to exclude such testimony at the Confirmation Hearing.

Judge Goldblatt  
July 2, 2025  
Page 9

**Weil, Gotshal & Manges LLP**

Accordingly, as the expert testimony Certain Insurers seeks is not relevant to the confirmation of the Debtors' Plan under section 1129 and would only unduly burden the Estates, any expert testimony should be excluded from this proceeding.

### V. Conclusion

The Court should quash Topics 1-7 of the Notice and exclude any of the requested expert testimony. The information sought Topics 1-7, as well as the testimony Certain Insurers plan to offer through their experts, is wholly irrelevant to the assessment of whether the Debtors' Plan satisfies the confirmation standard of section 1129 of the Bankruptcy Code. Moreover, requiring the Debtors to engage in this irrelevant, overly burdensome, cumulative discovery serves no appropriate aim, and only serves to deplete even more of the Estates' limited resources before a plan is confirmed. Accordingly, we respectfully request that the Court quash, in part, the Notice and exclude any expert testimony in connection with confirmation of the Debtors' Plan.

Respectfully submitted,

*/s/ Jessica L. Falk*

Jessica L. Falk