## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| AIO US, INC, *et al.*, | Case No. 24-11836 (CTG) |
| Debtors. | (Jointly Administered) |
| | **Related Docket No. 1587** |

## <u>MEMORANDUM OPINION</u>

In July 2025 this Court held a two-day hearing on confirmation of the debtors' plan of reorganization. On August 21, 2025, the Court issued an extensive Memorandum Opinion that largely overruled the various objections interposed by the objecting parties but noted that certain of the objections would require modifications to the plan.[1] The parties then worked on making those changes to the plan necessary to conform to the Court's opinion. After a further hearing focused on those changes, the Court issued an order confirming the plan on September 24, 2025.[2]

On October 7, 2025, the plan became effective.[3] On October 8, 2025, Certain Insurers filed a notice of appeal and motion for a stay pending appeal. That motion was set for a hearing on October 30, 2025.[4] When counsel for the Certain Insurers

---

[1] D.I. 1442.

[2] D.I. 1550.

[3] D.I. 1577.

[4] D.I. 1585 (notice of appeal); D.I. 1587 (motion for stay pending appeal). Certain Insurers are: Certain Underwriters at Lloyds, London, Tenecom Limited, f/k/a The Yasuda Fire & Marine Ins. Co. of Europe, Ltd., Tenecom Limited, f/k/a Winterthur Swiss Insurance Company, Cavello Bay Reinsurance Limited (as successor-in-interest to: (i) Brittany Insurance Company Limited; and (ii) Harper Insurance Limited (f/k/a Turegurn Insurance Company)), River Thames Insurance Company Limited (as successor-in-interest to

indicated that they were not available to participate in the October 30 hearing, the Court indicated on the docket that based on its review of the papers, the Court was prepared to resolve the motion on the papers without requiring argument.[5]

The motion for a stay will be denied. As to success on the merits, the Court considers it unlikely but not impossible that the Certain Insurers will prevail on appeal. Their argument for a stay falters, however, on the required showing of irreparable injury. As evidence of an irreparable injury, Certain Insurers argue primarily that they face the that without a stay their appeal may be deemed to be equitably moot. While this Court agrees that the equitable mooting of an otherwise meritorious appeal would count as irreparable injury, the problem with the Certain Insurers' argument is that they allowed the plan to become effective before even *asking* for a stay pending appeal.

Accordingly, by the time they sought a stay pending appeal, the risk of equitable mootness already existed, and a stay pending appeal would simply freeze things where they are – it cannot and will not operate to turn back the hands of time. As such, the Certain Insurers make no showing at all that a stay pending appeal will operate to prevent them from suffering any irreparable injury that they have not

---

Unionamerica Insurance Company Limited, which was in turn successor-in-interest to certain business of St. Katherine Insurance Company Limited), Accredited Insurance Europe Limited (as successor-in-interest to Ancon (UK) Insurance Company Limited), Wellfleet New York Insurance Company, f/k/a Atlanta International Insurance Company, as successor to Drake Insurance Company of New York, AIG-affiliated underwriting companies including Lexington Insurance Company, AIU Insurance Company, and Granite State Insurance Company, and Starr Indemnity & Liability Company, as successor-in-interest to Republic Insurance Company.

[5] D.I. 1670.

already suffered.  And as the caselaw teaches, without being able to make a showing of irreparable injury, the Certain Insurers have not met their burden of demonstrating that the confirmation order should be stayed pending appeal.

### Factual and procedural background

The broader factual background of these bankruptcy cases is set forth in detail in the Court's August 21, 2025 Memorandum Opinion and will not be repeated here. As noted, the Court entered the confirmation order on September 24, 2025.

Bankruptcy Rules 3020(e) and 6004(h) provide that orders confirming a plan and providing for the sale of assets are automatically stayed for 14 days unless the court orders otherwise.  The debtors asked that this Court waive that stay.  In its August Memorandum Opinion, the Court indicated that the point of this 14-day stay is to give the objecting party a reasonable opportunity to seek a stay pending appeal and to give a reviewing court a fair opportunity to consider such a request.  For that reason, the Court's Memorandum Opinion noted that the Court would only waive the 14-day stay if no party in interest represented to the Court that it intended to seek a stay pending appeal.[6]

At a hearing focused on the changes that the debtors had made to conform the plan and proposed confirmation order to the Court's opinion, counsel for the Certain Insurers objected to the language in the proposed confirmation order that would waive the stay provided by the rules.  Consistent with the Memorandum Opinion, the

---

[6] D.I. 1442 at 70.

Court asked counsel for the Certain Insurers if he was prepared to represent that the Certain Insurers intended to appeal and seek a stay pending appeal.

> My concern about waiving the stay here is – I believe that the purpose of the stay is, essentially, a courtesy to the District Court that would, otherwise, be facing an emergency motion for a stay pending appeal. So, if you're going to tell me, Mr. Roten, that you intend to appeal and to seek a stay pending appeal, and that if I waive the stay I am jamming the District Court, then I'm going to take it out. But unless you are prepared to tell me that, then I think waiving it is appropriate. So, this falls, sort of, in your court. The question is, are you prepared to represent that you intend, if I enter the confirmation order … to both appeal it and seek a stay pending appeal from the District Court?[7]

Counsel responded by saying that his "clients have [not] decided whether they want to appeal" because they "actually just wanted to see what the final order says before making a decision."[8]  Because the Certain Insurers did not make the representation that the Court said in its opinion it would require in order to leave the 14-day stay in place, the Court entered the order in the form proposed by the debtors. That form of order waived the 14-day stay.

Notwithstanding that waiver, which would have permitted the plan to become effective immediately upon the entry of the confirmation order, the plan did not become effective until October 7, 2025 – 13 days after the entry of the confirmation order.  But even so, the Certain Insurers did not appeal the confirmation order or seek a stay in the period before the plan became effective.  Rather, the notice of appeal and motion for a stay pending appeal were both filed *after* the debtors filed their notice that the plan had become effective.  Certain insurers filed a "supplement" to

---

[7] Sept. 22, 2025 Hr'g Tr. at 40 (cleaned up).

[8] *Id.* at 40-41.

that motion on October 10, 2025.[9]  The trust (that was formed under the confirmed plan) and the trust's advisory committee opposed the motion for a stay.[10]

## Jurisdiction

The Court has subject-matter jurisdiction to consider the motion for a stay pending appeal for the same reason the Court had subject-matter jurisdiction over the request to enter the confirmation order – that this is a matter that arises under the Bankruptcy Code.[11]

## Analysis

In considering a motion for stay pending appeal, courts apply a four-factor test: (1) whether the appellant has made a strong showing that they are likely to succeed on the merits; (2) whether the appellant will be irreparably injured absent a stay; (3) whether the stay will substantially harm other interested parties in the litigation; and (4) whether the stay is in the interest of the public.[12]  Both the Supreme Court and the Third Circuit have noted that the most critical factors are success on the merits and possibility of irreparable injury.[13]  If a movant does not make a showing on both of the first two factors, however, "the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further

---

[9] D.I. 1600.

[10] D.I. 1624.

[11] *See* 28 U.S.C. § 1334(b); D.I. 1442 at 28-29.

[12] *In re Revel AC, Inc.*, 802 F.3d 558, 565 (3d Cir. 2015). *See also Republic of Philippines v. Westinghouse Elec. Corp.*, 949 F.2d 653, 658 (3d Cir. 1991).

[13] *Revel,* 802 F.3d at 568; *Nken v. Holder*, 556 U.S. 418, 434 (2009).

analysis."[14]  If the movant does make a sufficient showing on each of the first two factors, courts then employ a "sliding-scale" approach in balancing all four of the factors.[15]

## I.    The Certain Insurers are unlikely to succeed on the merits.

The first prong of the test asks whether insurers have "a reasonable chance, or probability of winning."[16]  This Court noted in a previous decision involving a motion for a stay pending appeal that courts "that issue decisions necessarily believe that their own decisions are correct. There is accordingly good reason why appeals are heard by a different court. Judges, as humans, are unlikely to be impartial arbiters of the correctness of their own decisions."[17]  The Court accordingly believes it appropriate for trial courts to bring a healthy dose of modesty to bear when asked to assess whether a party appealing one of the court's own decisions is likely to succeed on appeal.  But even after endeavoring to discount for one's natural instinct to believe one's own decisions are correct, the Court concludes that the Certain Insurers' are rather unlikely to succeed on the merits of their appeal.

The Certain Insurers make two principal merits arguments.  *First*, they contend that the plan improperly cuts off inter-insurer contribution claims, which the Certain Insurers argue is a form of non-consensual third-party release prohibited by

---

[14] *In re Revel AC*, 802 F.3d at 571 (cleaned up).

[15] *Id.* at 567-568.

[16] *S.S. Body Armor I, Inc. v. Carter Ledyard & Milburn LLP*, 927 F.3d 763, 772 (3d Cir. 2019). *See also Singer Mgmt. Consultants, Inc. v. Milgram*, 650 F.3d 223, 229 (3d Cir. 2011).

[17] *In re MTE Holdings, LLC*, No. 19-12269, 2021 WL 4203339, at *3 (Bankr. D. Del. Sept. 15, 2021).

the Supreme Court's decision in *Purdue Pharma*.[18]   It is true that outside of bankruptcy, there are circumstances in which multiple insurers may have potential responsibility for the same claim.  If one insurer settles for an amount that pays less than its fair share of the potential claim, the non-settling insurer may be forced to bear more than its share of the liability to the insured.  And in those circumstances, the non-settling insurer may have claims against the settling insurer, for contribution or otherwise.[19]   In its recent decision in *Boy Scouts*, the Third Circuit held that the manner in which the plan addressed such claims improperly prejudiced the non-settling insurer and required revisions to the confirmation order to remedy that defect.[20]

While the parties disagree about whether the mechanism provided in the plan here complies with the Third Circuit's decision in *Boy Scouts*, the Certain Insurers are unlikely to succeed on this argument for a different reason.  The argument was never presented to this Court.  The appellate court is thus overwhelmingly likely to conclude on appeal that this argument was waived.

The Third Circuit has repeatedly explained that arguments that are not fairly presented to a trial court in a timely manner cannot be raised for the first time on appeal.[21]   *Garza v. Citigroup Inc.* explains that to "preserve a matter for appellate

---

[18] *See Harrington v. Purdue Pharma, L.P.,* 603 U.S. 204 (2024).

[19] *See McDermott, Inc. v. AmClyde*, 511 U.S. 202, 215 (1994).

[20] *In re Boy Scouts of America*, 137 F.4th 126, 168-169 (3d Cir. 2025).

[21] *See DIRECTV Inc. v. Seijas*, 508 F.3d 123, 125 n.1 (3d Cir. 2007) ("It is well established that arguments not raised before the District Court are waived on appeal."); *In re Kaiser Group Int'l Inc.*, 399 F.3d 558, 565 (3d Cir. 2005) ("when a party fails to raise an issue in the

review, a party must unequivocally put its position before the trial court at a point and in a manner that permits the court to consider its merits. It is well established that arguments not raised before the District Court are waived on appeal."[22] Moreover, arguments need to be fairly presented – a drive-by reference is insufficient to preserve an argument for appeal. "[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived."[23]

The Certain Insurers' objection to confirmation never even refers to § 10.5(iii)(g) of the plan.[24] Indeed, the objection contains no reference to *any* portion of § 10.5. Whatever the potential merits of the insurers' objection may or may not be, it simply comes too late. This is a paradigmatic application of the principle of waiver.[25] Certain Insurers are accordingly highly unlikely to succeed on appeal based on an argument that they forfeited in this Court.

*Second*, Certain Insurers argue that the Court improperly entered a solicitation order that permitted the holders of talc claimants to vote without having filed proofs of claim.[26] Here, the Certain Insurers do have a colorable argument that

---

bankruptcy court, the issue is waived and may not be considered by the district court on appeal."); *Mirtech, Inc. v. Agrofresh, Inc.*, No. 20-1170, 2023 WL 3996618, at *6 (D. Del. June 14, 2023) (argument made for the first time on motion for reargument is "too late" and will not be considered).

[22] 881 F.3d 277, 284 (3d Cir. 2018) (internal citations and quotations omitted).

[23] *Id.*

[24] D.I. 1233.

[25] More recent caselaw tends to use the term "forfeited" rather than "waived." *See United States v. Dowdell*, 70 F.4th 134, 140-141 (3d Cir. 2023) (describing forfeiture of arguments made for the first time on appeal). Regardless of the terminology, however, the substantive point is the same.

[26] *See* D.I. 1125 at 27-28.

the Bankruptcy Code by its terms seems to contemplate that the creditors who vote on a plan will be those who have filed proofs of claim.[27]  At the same time, the trust correctly observes that it has become commonplace in mass tort cases for bankruptcy courts to enter orders, as the Court did here, that do not require mass tort claimants (whose claims will be addressed by post-confirmation trusts) to file proofs of claim. Instead, these courts provide, under Bankruptcy Rule 3018, for the temporary allowance of tort creditor claims, based on information provided in the ballot, solely for the purpose of voting.[28]

At the hearing on the proposed solicitation procedures, this Court overruled the Certain Insurers' objection to the debtors' request to permit tort creditors to vote on the plan without having filed proofs of claim.[29]  The heart of the Court's reasoning was that – in addition to the fact that temporary allowance for voting purposes has become standard in mass tort bankruptcy cases – the Court had separately required that the form of ballots be amended so that those ballots would contain nearly all of the information that is otherwise provided in a proof of claim.  The Court accordingly concluded that the Certain Insurers' insistence that the form of the piece of paper

---

[27] *See* D.I. 1587 at 8-11.

[28] The trust's stay opposition contains a long list of such cases.  *See* D.I. 1624 at 16-17 n. 18.

[29] D.I. 1125.  That order was an interlocutory one that accordingly merges into the confirmation order, which is a final order, for purposes of appealability.  Otherwise put, Certain Insurers could not have appealed the solicitation order at the time it was entered. The proper time to challenge that order on appeal is now – in an appeal from the confirmation order.  *See In re Westinghouse Sec. Litig.*, 90 F.3d 696, 706 (3d Cir. 1996) ("Under the 'merger rule,' prior interlocutory orders merge with the final judgment in a case, and the interlocutory orders (to the extent that they affect the final judgment) may be reviewed on appeal from the final order.").

submitted by the claimants be called a "proof of claim" rather than being called a "ballot" elevated form over substance and thus overruled the objection.

In their motion for a stay pending appeal, Certain Insurers do not identify any substantive information of which they were deprived for purposes of plan confirmation by virtue of the fact that the voting tort claimants executed a document called a "ballot" rather than one called a "proof of claim." So, while the Court recognizes that the standard practice of not requiring tort claimants to file proofs of claim in mass tort cases is a *procedural* departure from the process that was likely contemplated by the drafters of the Bankruptcy Code and Rules, the Court believes that this development in the practice provides all of the *substantive* information that the Code and Rules require. In view of the command of Bankruptcy Rule 1001(a), that the Bankruptcy Rules be construed "to secure the just, speedy, and inexpensive determination of every case and proceeding," as well as the directive of Bankruptcy Rule 9005 that "any error or defect … that does not affect a substantial right" are to be disregarded, the Court believes it quite unlikely that the confirmation order will be reversed on appeal on this ground.

The standard for the satisfaction of this first prong, however, does not require the movant to show that it is more likely than not that it will prevail on appeal.[30] A showing that a party's likelihood of success is merely "better than negligible," however, is not enough.[31] The Court views the question whether the Certain Insurers'

---

[30] *In re Revel AC*, 802 F.3d at 568.

[31] *Id.* at 569.

have a sufficient likelihood of success to pass this first prong to be a close question. While, for the reasons set forth above, the Court considers it quite unlikely that the Certain Insurers will prevail on appeal, the Court is cognizant of the need for modesty in asking whether one's own decision is likely to be determined to be correct. So while the Court harbors doubt that the Certain Insurers have satisfied the first factor, the Court nevertheless believes it appropriate to go on to address the Certain Insurers' satisfaction of the second factor.

## II.    Certain Insurers have failed to show irreparable injury.

The only factor that the Certain Insurers have identified as a basis for a claim of irreparable injury is the risk that their appeal would be deemed equitably moot. In response, the trust points to a number of cases that suggest that the loss of one's right to bring an appeal (through the doctrine of equitable mootness) does not count as irreparable injury.[32]

It is true that there are cases that say that equitable mootness would not itself count as irreparable injury. But if there is any colorable showing that an appeal might be meritorious, it is very hard to see (simply as a commonsense matter) how the disappearance of one's right to a remedy on appeal would not count as irreparable injury. This Court has said as much in the context of statutory (not equitable) mootness:

> [T]he reason that "irreparable injury" plays an important role in
> determining whether to grant a stay pending appeal is that there is no

---

[32] See D.I. 1624 at 21-22 (citing *In re W.R. Grace & Co.*, 475 B.R. 34, 208 n.2 (D. Del. 2012); *In re New Cent. TRS Holdings, Inc.*, No. 07-10416, 2009 WL 1833875, at *2 (D. Del. June 26, 2009).

reason for a court to invoke equitable powers if the affected party can obtain an adequate remedy if it prevails on appeal. The point of § 364(e), however, is to provide a measure of finality to orders approving post-petition financing by limiting a court's ability to grant remedies in the event the decision is reversed on appeal. At least in the context of this case, in which approval of the DIP would (on the objecting creditors' view of the world) allow hundreds of millions of dollars of debt to leapfrog them in priority, and where it does not appear that the subsequent reversal of that order on appeal would provide a basis to restore the prior scheme of priority, the Court believes that the objecting noteholders have a substantial case for irreparable injury.[33]

The district court reached the same conclusion on appeal. In view of the statutory mootness provision of § 364(e), that court held that it "does not appear that the subsequent reversal of the Order on appeal would provide a basis to restore [the appellants' rights]."[34] Because "it would be extremely difficult to fashion a remedy if the DIP loan is approved and Appellants are later successful on appeal," the district court concluded that the appellants had "carried their burden of establishing irreparable harm."

For these reasons, the Court rejects the trust's argument that the equitable mooting of an otherwise meritorious appeal would not count as irreparable injury. Even so, however, the Certain Insurers have not made a sufficient showing of irreparable injury here. For the purposes of the present motion, the Court sees no reason to offer a view about the likelihood that an appeal would or would not be deemed equitably moot. The only point necessary to decide for this purpose is that whatever risk the Certain Insurers face in that regard was realized when the plan

---

[33] *Bayside Capital Inc., et al. v. TPC Group Inc., et al.*, Bankr. D. Del. No. 22-50372 (CTG), Opinion Denying Motion for Stay (July 11, 2022) at 14-15.

[34] *In re TPC Group, Inc.*, No. 22-298, 2022 WL 2952518, *10 (D. Del. July 26, 2022).

became effective *before* the Certain Insurers even asked this Court for a stay. As a result, granting a stay pending appeal will not operate to protect the insurers against any risk that they would not face in any event. Moreover, beyond the risk that the plan will be consummated, the Certain Insurers (who have proffered no evidence at all in support of their motion) have not established that events are likely to transpire during the pendency of their appeal that will operate to prejudice their rights. For that reason, they have failed to carry their burden of demonstrating irreparable injury.[35]

\* \* \*

Under *Nken* and *Revel AC*, the failure to satisfy the requirement of a showing of irreparable injury ought to be the end of the matter. "If the movant does not make the requisite showings on *either* of these first two factors, the inquiry into the balance of harms and the public interest is unnecessary, and the stay should be denied without further analysis."[36] The Court notes, however, in the spirit of completeness, that the balance of the harms and the public interest do not counsel in favor of a stay. The Court would therefore, in any event, exercise its equitable discretion to deny the motion for a stay pending appeal.

---

[35] In a supplement, the Certain Insurers note that the trust has sued them on their insurance policies in a state court lawsuit. It is settled law, however, that the cost of defending against litigation typically does not constitute an irreparable injury. *See Renegotiation Bd. v. Bannercraft Clothing Co.*, 415 U.S. 1, 24 (1974) ("[m]ere litigation expense, even substantial and unrecoupable cost, does not constitute irreparable injury"); *In re Countrywide Home Loans, Inc.,* 387 B.R. 467, 474 (Bankr. W.D. Pa. 2008) (same).

[36] *In re Revel AC*, 802 F.3d at 571 (cleaned up and emphasis added).

**Conclusion**

For the foregoing reasons, the Certain Insurers' motion for a stay pending appeal will be denied.  The Court will issue a separate order so providing.

Dated: October 30, 2025

_____
CRAIG T. GOLDBLATT
UNITED STATES BANKRUPTCY JUDGE